## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                      **Case No. 8:20-mj-1518-T-60-AEP**

**MUHAMMED MOMTAZ AL-AZHARI**

_____/

### OBJECTION TO MAGISTRATE JUDGE'S PRELIMINARY HEARING DECISION

**NOW COMES** Defendant, Muhammed Momtaz Al-Azhari, by and through undersigned counsel, and objects under Fed. R. Crim. P. 59(b) to the magistrate judge's decision on Mr. Al-Alzhari's motion to reconsider her preliminary hearing decision.

### MEMORANDUM OF LAW

### BACKGROUND

The Government filed a criminal complaint in this case alleging that Mr. Al-Azhari attempted to provide material support to a foreign terrorist organization (FTO), in violation of 18 U.S.C. § 2339B.  Mr. Al-Azhari was arrested, and a magistrate judge held a preliminary hearing on May 27, 2020.  (Doc. 13).

The complaint is accompanied by a 62-page affidavit executed by Federal Bureau of Investigation (FBI) Special Agent Cynthia Hazel.

The evidence relied upon by the Government at the preliminary hearing, Agent Hazel's testimony, was largely redundant with the affidavit.  To summarize this testimony, the Islamic State in Iraq and al-Sham (ISIS) is a well-known FTO that has committed atrocities and terrorism.  Its propaganda encourages its followers who cannot join in its military operations overseas to engage in "lone wolf" attacks where they live.

Mr. Al-Azhari is a United States citizen.  According to the Government's multi-level hearsay evidence, while living in Saudi Arabia, Mr. Al-Azhari was convicted of "possessing extremist propaganda," "holding extremist views," and attempting to join an organization called Jaysh al-Islam.  (R. at 33-34) ("R." citations are to the transcript of the preliminary hearing).  Jaysh al-Islam is a rebel group fighting in the Syrian civil war against tyrant Bashar Assad's government forces.  (Doc. 18-1).  At least at the time of Mr. Al-Azhari's detention in Saudi Arabia, Jaysh al-Islam was supported by the U.S. State Department and the very country that detained Mr. Al-Azhari, Saudi Arabia.  (*Id*.).  Mr. Al-Azhari explained to the Pretrial Services

Officer that the Saudis tortured him while he was detained, a fact confirmed by a relative. (Pretrial Serv. Rep. at 3). Mr. Al-Azhari is 23 years old now; he was a child when he was first imprisoned and tortured. (*See id*. at 2).

The FBI began surveilling Mr. Al-Azhari from the moment he returned to the United States, after he was removed from Saudi Arabia, in 2018. (R. at 10). The Government's evidence included no evidence of anything of note until April 20, 2020. Then, the Government's evidence indicated Mr. Al-Azhari attempted to buy a legal gun part on Ebay. (Doc. 5, p. 1; R. at 10-11). The FBI posed as the seller and, for a time, discussed with him the sale and barter of firearms. After Mr. Al-Azhari was arrested for carrying a concealed pistol, he called off the deal. (Doc. 5, p. 21).

The Government offered that Mr. Al-Azhari made internet purchases it says are consistent with the creation of a silencer, and that he expressed unorthodox views to co-workers, including statements in support of the 9/11 attacks and Omar Mateen, who committed a mass shooting at the Pulse nightclub in Orlando, Florida. The Government

also offered that Mr. Al-Azhari drove to Honeymoon Island beach and local FBI headquarters to scout those locations as targets (so it says), and to the Pulse nightclub. The Government offered that Mr. Al-Azhari consumed ISIS propaganda and news, and made a video on his phone playacting a terrorist scene. (R. at 9, 16-18).

Lastly, the Government offered that it introduced Mr. Al-Azhari to a paid informant, who discussed ISIS and jihad with Mr. Al-Azhari. In speaking to this informant, on May 22, 2020, the Government offered that Mr. Al-Azhari said, "I want to be ISIS." (R. at 41). The Government also offered that, on May 23, 2020, Mr. Al-Azhari, in discussing jihadist beliefs with the informant, said, "I am ISIS." However, Agent Hazel agreed that Mr. Al-Azhari did not join ISIS "overnight." (R. at 41). The Government offered that the paid informant and Mr. Al-Azhari discussed a broad-ranging array of acts they could commit with guns, including robbing banks, killing police officers, and committing an attack similar to Mateen's. (R. at 63-64). Agent Hazel testified that the informant offered to facilitate the sale to

Mr. Al-Azhari of a pistol and silencer, and, when the sale was consummated, the FBI arrested Mr. Al-Azhari.  (R. at 23).

On cross-examination Agent Hazel admitted that Mr. Al-Azhari never attempted to provide any currency, monetary instruments, financial securities, lodging, training, expert advice or assistance, safe houses, false identification documents, communications equipment, facilities, weapons, lethal substances, explosives, or transportation to ISIS.  (R. at 36-39).  Agent Hazel testified that Mr. Al-Azhari attempted to provide only "personnel," in the form of himself, to ISIS.  (R. at 39).

However, Agent Hazel testified that Mr. Al-Azhari acted independently of ISIS:

> Q.  You describe Mr. Al-Azhari as a lone wolf terrorist, correct?
>
> A.  Yes.
>
> . . . .
>
> Q.  All right.  And what you mean by that, at least for example, is he wasn't sent here by ISIS, correct?
>
> A.  Correct.
>
> Q.  And he wasn't trained by ISIS?

5

A.  No.

Q.  He wasn't under ISIS's control?

A.  No.

Q.  He wasn't taking direction from ISIS?

A.  No.

Q.  He didn't organize anything for ISIS?

A.   Well, he – it appears he recruited [the informant] to help him in his attack on behalf of ISIS.

Q.  Okay.  But he didn't do that at the direction of anyone from ISIS, correct?

A.  Correct.

Q.  All right.  He didn't supervise anything for ISIS?

A.  No.

Q.  He didn't direct operations for ISIS?

A.  No.

Q.  And certainly you think he – he sympathized with ISIS, correct?

A.  Yes.

Q.   And you think he wanted to advance those goals, correct?

A.  Yes.

. . . .

Q.  All right.  And as a lone – but as a lone wolf, he -- he acted independently of ISIS, correct?

A.  Yes.

Q.  All right.  And he was just seeking to achieve their -- their goals on his own?

A.  Yes.

(R. at 39-41).

The magistrate judge found probable cause that Mr. Al-Azhari committed the offense of attempting to provide material support to an FTO.  (R. at 58-59).  However, she permitted the parties to file citations of authority (without briefing) in support of their positions.  (R. at 58-60).  The parties did so, and, in addition, on June 3, 2020, Mr. Al-Alzhari moved the magistrate judge to reconsider her preliminary-hearing finding.  (Doc. 19).  On June 8, 2020, the magistrate judge issued an order re-affirming her finding of probable cause, and on June 9, 2020, she denied the Defense motion to reconsider.  (Doc. 23-24).

# ARGUMENT

The magistrate judge erred in finding probable cause that Mr. Al-Azhari committed the offense of attempting to provide material support to an FTO because the Government presented no evidence in any form that Mr. Al-Azhari attempted to work under the direction or control of ISIS.  Generally, a magistrate judge must hold a preliminary hearing if a defendant is charged by complaint and has not yet been indicted.  *See* Fed. R. Crim. P. 5.1(a).  If the Government fails to show probable cause that the defendant committed the crime, the magistrate judge must dismiss the complaint and discharge the defendant.  Fed. R. Crim. P. 5.1(f).

A magistrate judge may be referred any "matter that may dispose of a charge or defense."  Fed. R. Crim. P. 59(b)(1).  Preliminary hearings under Rule 5.1 have been referred to magistrate judges in this district.  Local R. 6.01(c)(5).  A party may object to a magistrate judge's findings and recommendations within 14 days of their issuance.  Fed. R. Crim. P. 59(b)(2).[1]  Accordingly, the district court may review a magistrate

---

[1] The magistrate judge in this case did not issue a report and recommendation. However, a magistrate judge who finds no probable cause at a preliminary hearing is

judge's decision at a preliminary hearing.  Wright & Miller, *Federal Practice and Procedure:  Criminal* § 92 (4th ed. 2020); *cf. United States v. Brigham*, 569 F.3d 220, 226 (5th Cir. 2009) (affirming the district court's review of a magistrate judge's probable cause determination at a preliminary hearing under Fed. R. Crim. P. 32.1).  The district court must review the objections de novo.  Fed. R. Crim. P. 59(b)(3).

The statute under which Mr. Al-Alzhari is charged provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or life.  To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . ., that the organization has engaged or engages in terrorist activity . . ., or that the organization has engaged or engages in terrorism . . . .

18 U.S.C. § 2339B(a)(1).  "The term 'material support or resources' has the same meaning given that term in section 2339A (including the

---

directed to dismiss the complaint and discharge the defendant.  Fed. R. Crim. P. 5.1(f).  Such a hearing is therefore "dispositive" within the meaning of Rule 59 because it is a "matter which may dispose of a charge . . . ."  *See* Fed. R. Crim. P. 59(b)(1). Whatever form the magistrate judge's decision takes, review in this Court is de novo. *See* Fed. R. Crim. P. 59(b)(3).

definitions of 'training' and 'expert advice or assistance' in that section) . . . ." 18 U.S.C. § 2339B(g)(4).  Section 2339A, in turn, provides:

> (1)   the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, *personnel (1 or more individuals who may be or include oneself)*, and transportation, except medicine or religious materials;

> (2)   the term "training" means instruction or teaching designed to impart a specific skill, as opposed to general knowledge; and

> (3)  the term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge.

18 U.S.C. § 2339A(b) (emphasis added).

Section 2339B continues:

> **Provision of Personnel.** – No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may

10

be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2239B(h).[2]

Mr. Al-Azhari is charged with an attempt under this statute. "To establish an attempt as a crime, proof is required: (1) that the defendant intended to commit the underlying criminal offense with the requisite *mens rea*, and (2) that the defendant engaged in conduct which constituted a substantial step toward the commission of that crime and which strongly corroborates the defendant's criminal intent." *United States v. Rothenberg*, 610 F.3d 621, 626 (11th Cir. 2010) (citations omitted).

Applying the *Rothenberg* formulation to § 2339B, the Government had to show probable cause that (1) Mr. Al-Azhari intended to provide

---

[2] Subsection (h) does not provide an affirmative defense that must be proved by the defendant; the burden is the Government's. *United States v. Shafi*, 252 F. Supp. 3d 787, 792-93 (N.D. Cal. 2017); *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *11 (E.D.N.Y. 2015).

11

himself or someone else to work under ISIS's direction or control, or to

organize, manage, supervise, or otherwise direct the operations of ISIS,

knowing that ISIS is a designated FTO, engages in terrorist activity, or

engages in terrorism, and (2) Mr. Al-Azhari engaged in conduct that

constituted a substantial step toward providing himself or someone else

to work under ISIS's direction or control, or to organize, manage,

supervise, or otherwise direct the operation of ISIS, that strongly

corroborated his intent.  *See* 18 U.S.C. §§ 2339B(a)(1), (h), 2339A(b);

*Rothenberg*, 610 F.3d at 626.  Conversely, if there is no probable cause

that Mr. Al-Azhari intended to provide himself or someone else to work

under ISIS's direction or control, or took any step toward doing so, the

evidence is lacking, *even if* Mr. Al-Azhari sympathized with ISIS and

attempted to advance the organization's goals independently, through

attacks or otherwise.  *See* 18 U.S.C. § 2339B(h).

Eleventh Circuit cases considering § 2339B illustrate the point.

*See United States v. Suarez*, 893 F.3d 1330, 1334-35 (11th Cir. 2018);

*United States v. Augustin*, 661 F.3d 1105, 1119-22 (11th Cir. 2011).  In

*Suarez*, the defendant coordinated directly with individuals he believed

to be members of ISIS in order to acquire a bomb, and accepted the bomb while reiterating his plan to detonate it on a crowded beach. *Suarez*, 893 F.3d at 1334-35.  On these facts, the court held that the evidence was sufficient to sustain a conviction for attempting to violate § 2339B.  *Id.*  Suarez was guilty because he attempted to make himself "personnel" of ISIS by placing himself under the organization's direction and control to conduct an attack, and only failed to do so because the people with whom he was interacting were not really ISIS members.

Similarly, in *Augustin*, the defendants were charged with conspiracy to violate § 2339B.  They met with an FBI informant who was posing as an Al Qaeda operative and liaison to that organization. The defendants and the informant discussed various attacks they would commit for the organization, and conducted reconnaissance and intelligence gathering at planned targets.  At the informant's demand, the defendants took a prepared oath of allegiance to Al Qaeda in preparation for the attacks.  The court affirmed the convictions, but noted that the evidence was "far from overwhelming."  *Augustin*, 661 F.3d at 1119-22.

Thus, as *Suarez* and *Augustin* teach, to be guilty of an inchoate crime of attempt or conspiracy under § 2339B, the defendant must in some way endeavor to place himself or someone else under the FTO's direction and control.  Generally, this will involve some level of communication between the defendant and an agent or perceived agent of the FTO, as in *Suarez* and *Augustin*, or some thwarted effort to join the FTO on the battlefield overseas, *see, e.g., United States v. Mehanna*, 735 F.3d 32, 43-46 (1st Cir. 2013) (affirming conspiracy conviction where the defendant traveled to Yemen to join an al Qaeda training camp as a recruit); *United States v. Farhane*, 634 F.3d 127, 150 (2d Cir. 2011) (affirming conviction where the defendant took an oath to act as a battlefield doctor for the FTO).  Out-of-circuit cases are in accord on this point.[3]

Perhaps because of the clarity of subsection (h)'s plain language, *no* case has ever sanctioned a prosecution under § 2339B where the

---

[3] *See United States v. Wright*, 937 F.3d 8, 26-27 (1st Cir. 2019); *United States v. Kaizu*, 559 F.Appx. 32, 37 (2d Cir. 2014); *United States v. Hendricks*, 950 F.3d 348, 353 (6th Cir. 2020); *United States v. Jones*, 383 F.Supp.3d 810, 816 (N.D. Ill. 2019); *see also Hosseini v. Nielson*, 911 F.3d 366, 376 (6th Cir. 2018).

defendant allegedly planned an attack in the United States on the basis of sympathy to an FTO, but without any direction or control from the FTO.[4]  The Supreme Court upheld § 2339B against a constitutional vagueness challenge in part because of subsection (h)'s clarification that the statute does not capture independent acts done outside of the FTO's direction and control.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010).  Expanding on this point, the Court explained:

> "[S]ervice" similarly refers to concerted activity, not independent advocacy.  See Webster's Third New International Dictionary 2075 (1993) (defining "service" to mean "the performance of work commanded or paid for by another:  a servant's duty:  attendance on a superior"; or "an act done for the benefit or at the command of another").    Context confirms that ordinary meaning here.  The statute prohibits providing a service "*to* a foreign terrorist organization."  § 2339B(a)(1) (emphasis added).  The use of the word "to" indicates a connection between the service and

---

[4] When pressed for analogous cases by the magistrate judge, the Government mentioned four:  *United States v. Osmakac*, *United States v. Saipov*, *United States v. Al-Arian*, and the case of Omar Mateen.  (R. at 48-50).  Mr. Osmakac was not charged under § 2339B.  *United States v. Osmakac*, 868 F.3d 937, 947-48 (11th Cir. 2017).  The *Saipov* case is still pending trial.  *United States v. Saipov*, No. 1:17-cr-722-VSB (S.D.N.Y. 2017).  The defendants in *Al-Arian* were charged under § 2339B, but the jury was not charged that it could consider "personnel" as a basis for providing material support.  *United States v. Al-Arian*, No. 8:03-cr-77-T-30-TBM (Doc. 1431).  Omar Mateen was not prosecuted because he was killed.  Mr. Mateen's wife was prosecuted for her husband's attack, and was acquitted.  *United States v. Salman*, No. 6:17-cr-18-Orl-40KRS (Doc. 336).

the foreign group.  We think a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

*Id*. at 23-24.[5]  Thus, as subsection (h) makes abundantly clear, the provision of personnel "to" the FTO does not qualify as material support when it is undertaken independently and without concerted activity, and when done outside the direction and control of the FTO.

Consistent with these principles, at least one court has rejected a Government effort to prosecute a defendant for providing himself as "personnel" to conduct an attack outside of the organization's direction or control, albeit in a different, but closely related, context.  *See United*

_____

[5] While the Government disclaimed any allegation that Mr. Al-Azhari attempted to provide a "service" under § 2339B at the hearing, (R. at 47), like "personnel," "service" does not include independent activities.  *See Humanitarian Law Project*, 561 U.S. at 24 ("Moreover, if independent activity in support of a terrorist group could be characterized as a 'service,' the statute's specific exclusion of independent activity in the definition of 'personnel' would not make sense.  Congress would not have prohibited under 'service' what is specifically exempted from prohibition under 'personnel.'  The other types of material support listed in the statute, including 'lodging,' 'weapons,' 'explosives,' and 'transportation,' § 2339A(b)(1), are not forms of support that could be provided independently of a foreign terrorist organization.  We interpret 'service' along the same lines.  Thus, any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B.  On the other hand, a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.").

16

States v. Abu-Jihaad, 600 F. Supp. 2d 362 (D. Conn. 2009).  In *Abu-Jihaad*, the defendant consumed jihadist propaganda from an organization called Azzam.  The defendant even corresponded with the organization, discussing current events and his thoughts on jihad.  Azzam published a request to send resources to the Taliban, and exhorted its readers to assist in violent jihad.  Then, the defendant sent Azzam sensitive information about U.S. naval ship movements and ammunition.  However, there was no evidence that Azzam requested the information from Mr. Abu-Jihaad, or coordinated or directed him to provide it.  600 F. Supp. 2d at 366-75, 380-82, 401-02.

Mr. Abu-Jihaad was charged under § 2239B's companion statute, § 2239A.  That statute, which provides the definition of "material support" for § 2339B, does not include § 2339B(h)'s express limitation on the word "personnel."  The court explained that, "as an initial matter, the Court must decide whether the amended definition of 'personnel' in § 2339B applies to § 2339A as well, for even the Government concedes that if the amended definition in § 2339B applies to § 2339A, the evidence is wanting."  *Id*. at 399.  Deciding that the

17

subsection (h) clarification does not apply to § 2339A, the court adopted

a definition of "personnel" for § 2339A:  "one who makes resources in

the form of individuals (including himself) available, or furnishes

individuals (including himself), for the purpose of actively preparing for

or carrying out the crimes prohibited by the statute through some form

of coordinated action is guilty of violating § 2339A."  *Id*. at 400.

Conversely, "[e]ntirely independent action is not sufficient to qualify as

being at least 'active in' an organization as required by the definition of

personnel."  *Id*.

Applying this formulation to the facts before it, the court ruled

that the Government's evidence was insufficient.  *Id*. at 402.  Noting the

lack of any coordination between Azzam and the defendant, the court

explained:

> The Government recognizes this gap in the
> evidence and seeks to get around it by pointing to
> a general request by Azzam to its readership in
> November 2000, in which it sought aid for the
> Taliban by requesting money, gas masks, or
> battlefield medical services.  Of course, Azzam also
> exhorted its readers to assist in violent jihad.  But
> to build a *quid pro quo* or understanding from
> these generalized requests for assistance is more
> than the evidence will bear, even taking all

18

> reasonable inferences in the light most favorable
> to the Government.

*Id.* at 401-02.

Here, Agent Hazel's testimony narrowed the Government's theory to that of Mr. Al-Azhari attempting to provide "personnel" to ISIS. (R. at 36-39). Further, Agent Hazel testified that Mr. Al-Azhari did not attempt to place himself under ISIS's direction or control, and did not attempt to be an organizer, supervisor, or director of operations for ISIS. (R. at 39-41). There is no evidence, as there was in *Suarez* and *Augustin*, that Mr. Al-Azhari tried to join the FTO or work under its direction. Thus, even accepting at face value the Government's evidence as to the historical facts, a straightforward application of subsection (h) demonstrates that there is not probable cause to believe that Mr. Al-Azhari committed the offense charged in the complaint. He took no substantial step, nor any step at all, to place himself or anyone else under ISIS's direction and control, and did not intend to do so.

The Government's response at the hearing was that ISIS exhorted its followers to commit "lone wolf" attacks, and that is what Mr. Al-Azhari attempted to do:  he "affiliated himself" with ISIS, "consumed

[their] directives," and consumed their "propaganda telling people to carry out attacks." (R. at 54-55). But this understanding of § 2339B would render subsection (h) meaningless. As in *Abu-Jihaad*, a listener's consuming propaganda and exhortation does not place the listener under the speaker's "direction or control," even if the listener is persuaded to act. And, subsection (h) insulates from liability anyone who independently advances the FTO's goals and objectives. Congress did not simultaneously protect those who independently advance the FTO's goals and punish those who act knowing what the FTO's goals are. Accordingly, the magistrate judge erred by finding that there is probable cause to believe that Mr. Al-Azhari committed an attempted violation of § 2339B. This Court should therefore dismiss the complaint and discharge Mr. Al-Azhari. *See* Fed. R. Crim. P. 5.1(f)

**WHEREFORE** the Defendant, Mr. Al-Azhari, prays this Court will dismiss the complaint and discharge him.

DATED this 15th day of June 2020.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

/s *Samuel E. Landes*
Samuel E. Landes
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email:  Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th of June 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Patrick Scruggs.

/s *Samuel E. Landes*
Samuel E. Landes
Assistant Federal Defender

21