UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:20-cr-206-T-60AEP

MUHAMMED MOMTAZ ALAZHARI
_____/

MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE AND MULTIPLICITY

NOW COMES Defendant, Muhammed Momtaz Alazhari, by and through undersigned counsel, and moves this Court to dismiss the indictment for failure to state an offense and multiplicity, under Fed. R. Crim. P. 12(b)(3)(B)(ii) and (v). Mr. Alazhari requests a hearing on this motion.

MEMORANDUM OF LAW

BACKGROUND

Count One of the indictment charges that Mr. Alazhari "knowingly attempted to provide material support and resources, namely personnel (including himself) and services, to a foreign terrorist organization [FTO] . . ." in violation of 18 U.S.C. § 2339B. The indictment makes no allegation that he attempted to work under the FTO's direction or control, or to organize, manage, supervise, or otherwise direct the FTO's operations. Nor does the indictment allege that Mr. Alazhari attempted to provide anyone else to fulfill these roles.

Counts Two and Three of the indictment allege violations of the National Firearms Act (NFA). Both counts allege that on May 24, 2020, Mr. Alazhari knowingly received and possessed a specific "firearm," i.e., "a SilencerCo Osprey silencer bearing serial number OSP9M-5489 . . . ." Count 2 alleges that the silencer was "transferred to [Mr. Alazhari] in contravention of Chapter 53 of Title 26," i.e., the NFA. The statutory citation in Count Two is to

26 U.S.C. §§ 5812 and 5861(b).  Count Two does not allege that Mr. Alazhari knew that the silencer had been transferred to him in contravention of the NFA.

Count Three alleges that the silencer was "not registered to Mr. Alazhari in the National Firearms and Transfer Record," with a statutory citation to 26 U.S.C. §§ 5841 and 5861(d). (Both Count Two and Count Three contain a statutory citation to the NFA's general penalty provision, § 5871).  Count Three does not allege that Mr. Alazhari knew that the silencer was unregistered.

**ARGUMENT**

Count One fails to state an offense because it does not allege that Mr. Alazhari attempted to place himself under the FTO's direction and control, an essential fact required by 18 U.S.C. § 2339(h).  Counts Two and Three fail to state an offense because they do not allege Mr. Alazhari's mens rea with respect to his non-compliance with the NFA:  the indictment does not allege that he knew the silencer had been transferred to him in violation of the NFA, or that it was unregistered.  Lastly, Count Two and Count Three are multiplicitous because proof of the elements of Count Three would necessarily prove the elements of Count Two.

**I.  Count One fails to state an offense.**

A.  The indictment fails to allege the facts required by § 2339B(h).

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. P. 7(a).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418

2

U.S. 87, 117 (1974).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

The statute underlying Count One provides:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or life.  To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged in or engages in terrorism . . . .

18 U.S.C. § 2339B(a).  Subsection (g), entitled "Definitions," contains definitions of six terms, including "material support or resources," which definition merely cross-references the definition found in § 2339A.  18 U.S.C. § 2339B(g)(4).  Section 2339A, in turn, provides:

> the term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials;

18 U.S.C. § 2339A(b)(1).  The same subsection provides further definitions for the terms "training" and "expert advice and assistance."  18 U.S.C. § 2339A(b)(2)-(3).

Returning to § 2339B, a subsection entitled "Provision of personnel" provides:

> No person may be prosecuted under this section in connection with

3

the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operations of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h).[1] Another subsection, entitled "Rule of construction," requires the statute to be interpreted consistent with the First Amendment, 18 U.S.C. § 2339B(i), and a final subsection, entitled "Exception," provides an exception to liability for prosecutions based on "personnel," "training," or "expert advice or assistance" when the Secretary of State and Attorney General have approved the material support at issue, 18 U.S.C. § 2339B(j).

Here, the indictment alleges that Mr. Alazhari attempted to provide "personnel" to the FTO, but fails to allege the facts required by subsection (h). That is, the indictment does not allege that Mr. Alazhari attempted to provide himself or someone else to work under the direction and control of the FTO. Because of this, it fails to track the statutory language, and fails to plead every element of the offense. Count One therefore fails to state an offense, and this

---

[1] As the text of subsection (h) indicates, the Government may proceed under either a "direction and control" theory or a "managerial" theory. To the extent it shows any evidence relevant to subsection (h), the affidavit attached to the complaint suggests the Government will proceed on a "direction and control" theory in this case. This memorandum will refer only to subsection (h)'s "direction and control" aspect for brevity, though the arguments apply with the same force to both theories.

Court should dismiss it.[2]

B. <u>Subsection (h) does not provide an affirmative defense.</u>

Generally, "an indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere . . . ." *McKelvey v. United States*, 260 U.S. 353, 357 (1922). Under this rule, courts must determine whether the "distinct clause" provides a "defense," which need not be pled in the indictment, or an "element," which must be pled. *See United States v. Kloess*, 251 F.3d 941, 944-45 (11th Cir. 2001). In so doing, courts consider the three-part inquiry provided by *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997). *Kloess*, 251 F3d at 944.

> First, we look at the language and structure of the statute itself to determine whether the exception is part of the general statutory offense. Second, we look at the legislative history of the statute to determine whether Congress intended to make the exception an element of the crime. Finally, we look to see whether the government is well-situated to adduce evidence tending to provide the applicability of the exception. If the answers to these three questions are "yes," then the exception is an element of the offense.

---

[2] The indictment's reference to "personnel (including himself) *and* services" is essentially meaningless to this motion, for two reasons. First, "service," as used within § 2339B, is a broad, umbrella term that includes "personnel." The statute defines "material support or resources" as "any property . . . or service, *including* . . . personnel . . . ." 18 U.S.C. § 2339A(b)(1) (emphasis added). The word "including" links "personnel" to "service," and makes "personnel" a subspecies of "service." *Cf. Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 915 (11th Cir. 2013). Second, the Supreme Court interprets the word "service" with the same limitation Congress provided for "personnel": the service must be performed "in coordination with, or at the direction of," the FTO. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010). The Government cannot avoid subsection (h)'s limitation on prosecutions based on the provision of "personnel" through the subterfuge of styling the same conduct as "services." *See id.* ("Congress would not have prohibited under 'service' what is specifically exempted from prohibition under 'personnel.'"). Thus, because the indictment lacks any allegation of FTO "direction and control," the entire count should be dismissed, whether under a "services" theory or a "personnel" theory.

*Id*. (citing *McArthur*, 108 F.3d at 1353).

Here, each of the *McArthur* factors favors treating subsection (h) as providing an element of the core offense, not as an affirmative defense.  Further, the requirement found in subsection (h), by whatever name it is called, must be pled in the indictment.

> 1.  The language and structure of the statute demonstrate that the subsection (h) requirement is "part of the general statutory offense."

Looking to the statutory language, courts consider whether the provision at issue is a narrow exception to a general provision (favoring treatment as an affirmative defense), *McArthur*, 108 F.3d at 1353, or whether it "is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted," *United States v. English*, 139 F.2d 885, 886 (5th Cir. 1944).  Here, subsection (h) does not provide an exception at all, it provides a positive command:  if the Government relies on a "personnel" theory, it must prove more – that the defendant attempted to place himself under the FTO's direction and control.  Subsection (h) is written in the typical language Congress uses when defining the elements of an offense.  It provides an actus reus (providing, attempting to provide, or conspiring to provide one or more individuals to work under the FTO's direction and control) and a mens rea (knowingly).

Congress went so far as to state the Government's burden in the converse for clarity's sake in subsection (h)'s second sentence:  while those who attempt to work under the FTO's direction and control are subject to the statute, "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control."  18 U.S.C. § 2339B(h).  Subsection (h)'s language shows an element, not an affirmative defense – an "ingredient,"

without which the offense cannot be accurately defined.  *See English*, 139 F.2d at 886.

The statutory structure confirms subsection (h)'s elemental status.  Subsection (a) provides the basic offense.  Subsection (g) provides definitions.  Subsection (i) provides a rule of construction, and subsection (j) provides an exception, including an exception relating to prosecutions based on the provision of "personnel."  It follows that subsection (h) is not a definition, a rule of construction, or an exception.  Instead, subsection (h) narrows liability and increases the Government's burden by providing an additional fact the Government must prove, the defendant's attempt to work under the FTO's direction and control.  The provision is therefore "part of the general statutory offense."  *See Kloess*, 251 F.3d at 944.

2.  Subsection (h)'s legislative history shows it provides an element.

Subsection (h) was Congress's attempt to bring § 2339B into compliance with the First Amendment and the Due Process Clause.  The statute was originally enacted without subsection (h).  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, Title III, § 303(a), 110 Stat. 1214.  In 1998, a group of citizens and non-profit organizations sued, claiming that they wished to provide support for the humanitarian and political activities of two FTOs in the form of monetary contributions, other tangible aid, legal training, and political  advocacy, but that they could not do so for fear of prosecution under § 2339B.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 10 (2010).  The plaintiffs argued that § 2339B violated their freedoms of speech and association, and that it was unconstitutionally vague.  *Id*. at 10-11.  The plaintiffs substantially prevailed in the district court and Ninth Circuit, earning a panel opinion upholding an injunction against the government barring prosecution of them under "personnel" or "training" theories.  *Id*. at 11 (citing *Humanitarian Law Project v. U.S. Dep't of Justice*, 352 F.3d 382 (9th Cir. 2003)).

While this litigation remained pending, Congress responded with the Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), Pub. L. 108-458, § 6603(c), 118 Stat. 3762-64.[3] *Humanitarian Law Project*, 561 U.S. at 12.  In IRTPA, Congress added the term "service" to the definition of "material support or resources."  *Id*.  Congress also added subsection (h), limiting the scope of the term "personnel."  *Id*.  The litigation continued to the Supreme Court, and the Court rejected the plaintiffs' claims.  As to the plaintiffs' vagueness claim, the Court pointed to subsection (h) in holding that the statute is sufficiently definite.  *Id*. at 21, 23.  In so doing, the Court noted that subsection (h) would shield independent advocacy that seeks to advance the FTO's goals without working under the FTO's direction and control.  *Id*. at 23.  The Court similarly relied on the requirement of direction and control in rejecting the plaintiffs' First Amendment claim:

> Congress has not . . . sought to suppress ideas or opinions in the form of "pure political speech."  Rather, Congress has prohibited "material support," which most often does not take the form of speech at all.  And when it does, the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be a terrorist organization.

---

[3] The committee report that accompanied IRTPA indicates that the Act was a direct response to the Ninth Circuit's holding.  *See* House Rep. 109-174(I), 109th Cong., 1st Sess. 2005, 2005 WL 1705108, at *34.

*Id.* at 26 (footnote omitted).[4]

As this history demonstrates, Congress was well aware in enacting IRTPA that subsection (h) was no minor revision, and, indeed, the Court relied on its effect repeatedly in upholding the constitutionality of the statute. Much of what constitutional vagueness and free-speech doctrine seeks to accomplish is preventing the government from chilling speech through uncertain laws. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997). A would-be speaker can be chilled not only by the fear of conviction and punishment, but also by the fear of mere *prosecution*. *See United States v. Alvarez*, 567 U.S. 709, 736-37 (2012) (Breyer, J., concurring in judgment). To rule that the "direction and control" requirement is not an element would be to remove the issue from the grand jury, and place the burden of raising it on the defendant. IRTPA's history demonstrates that Congress sought to be more protective of First Amendment and due process rights by adding to the Government's burden. Thus, subsection (h) provides an element, not a defense.

3. The Government is best suited to provide evidence of FTO "direction and control."

Under the "ease of proof" factor, courts generally find against requiring a party to prove a negative. *See United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir. 1983) ("It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member

---

[4] *See also id.* at 31-32 ("The dissent argues that there is 'no natural stopping place' for the proposition that aiding a foreign terrorist organization's lawful activity promotes the terrorist organization as a whole. But Congress has settled on just such a natural stopping place: The statute reaches only material support coordinated with or under the direction of a designated foreign terrorist organization. Independent advocacy that might be viewed as promoting the group's legitimacy is not covered.") (citations and footnote omitted); *id.* at 36 ("Finally, and most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups.").

of a federally recognized tribe than it is for the Government to produce evidence that he is not a member of any one of the hundreds of such tribes.").  With subsection (h), if the burden of proof were placed on the defendant, he would have to prove a negative, that he was *not* working under the direction and control of the FTO.  As one court has put it, the defendant "would be forced to jump through a series of comically implausible hoops if subsection (h) was an affirmative defense for which he bore the burden of proof."  *United States v. Shafi*, 252 F. Supp. 3d 787, 795 (N.D. Cal. 2017).  This might involve such absurdities as attempting to call an FTO leader to testify that the defendant has never worked for the organization.  *See id*.  Thus, this factor favors subsection (h) as an element.

    C.  <u>"Direction and control" must be pled in the indictment.</u>

Three district courts have ruled that, while subsection (h) does not provide an affirmative defense, it is a "definition" rather than an element, and so need not be alleged in the indictment. *See id*. at 793; *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598, at *8 (E.D.N.Y. Dec. 21, 2015); *United States v. Ludke*, No. 16-CR-175, 2018 WL 2059556, at *2 (E.D. Wis. May 2, 2018).  But whatever label is applied to subsection (h) – whether it is an "element," a "definition," a "clarification," or an "exception" – it must be pled in the indictment.

A fact that "embodies the culpability of the offense," by whatever name, must be pled in the indictment to comply with the defendant's Fifth Amendment right to a grand jury.  *See United States v. Outler*, 659 F.2d 1306, 1309 (5th Cir. Unit B 1981), *overruled on other grounds*, *United States v. Steele*, 147 F.3d 1316 (11th Cir. 1998).  In *Outler*, the indictment charged a doctor with dispensing drugs, but did not allege that the prescriptions were without a legitimate medical reason, an implicit requirement under *United States v. Moore*, 423 U.S. 122 (1975).  The

court recognized that the *Moore* requirement is a statutory exception to the general offense, but explained:

> We note, however, that an essential element is not always expressed in the statutory definition of the offense, but actually may be the negation of an exception to the offense.  In rare instances, an exception can be so necessary to a true definition of the offense that the elements of the crime are not fully stated without the exception. We believe this to be the case whenever a physician is charged with prescribing drugs in violation of 21 U.S.C. § 841(a).

*Id*. at 1309 (citation omitted).

The *Outler* court explained that this requirement serves two purposes.  First, the Sixth Amendment requires that the defendant be informed of the nature of the accusation.  *Id*. at 1310. Second, the Fifth Amendment requires that the grand jury pass on the question of probable cause.  *Id*.  "A grand jury can perform its function of determining probable cause and returning a true bill only if all elements of the offense are contained in the indictment."  *Id*. (citations and footnote omitted).  The court explained that the missing negated exception in the indictment implicated the Fifth Amendment protection.  "Unless every element of an offense appears in the indictment, it is impossible to assure the defendant that a grand jury properly determined probable cause of the offense."  *Id*. at 1311 (citation omitted).

The Supreme Court's Fifth and Sixth Amendment jurisprudence similarly eschews tying constitutional consequences to the label applied to a requirement in a statute.  *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court explained that an "element" for constitutional purposes is any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum.  *Id*. at 490.  There, a New Jersey statute allowed an increased sentence if the judge found that the defendant committed the crime

with racial animus.  New Jersey argued that the bias finding was a "sentencing factor," rather than an "element."  *Id*. at 492.  The Court rejected this defense of the sentencing scheme "because labels do not afford an acceptable answer."  *Id*. at 494 (internal quotation and citation omitted).  Instead, "the relevant inquiry is not one of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  *Id*.[5]

Here, subsection (h)'s "direction and control" requirement is an essential fact that must be pled in the indictment, no matter the label that applies to it.  As construed by *Humanitarian Law Project*, the requirement of "direction and control" "embodies the culpability of the offense" and is "necessary to a true definition of the offense" under *Outler*.  Further, under the *Apprendi* test, a finding of "direction and control" is necessary to expose the defendant to *any* punishment.  Omitting subsection (h) from the indictment removes the crucial factual issue from the grand jury, and deprives the defendant of the right to have the grand jury pass on the question of probable cause for each element of the offense.

If the Fifth Amendment were to permit the Government to omit "direction and control" from the indictment, the First Amendment protections the Court assumed would be available in *Humanitarian Law Project* would be severely restricted.  The Government would be permitted to indict an independent blogger or journalist who publishes a piece advocating for the peaceful goals of the FTO without presenting any evidence of direction and control by the FTO to the

---

[5] *Apprendi* was decided on Sixth Amendment jury trial grounds, not Fifth Amendment indictment grounds.  *Apprendi*, 530 U.S. at 477 n.3.  Nonetheless, courts treat the question of whether a required fact is an "element" identically.  *See id.* at 487-88 (considering a case about the Fifth Amendment right in construing the Sixth Amendment right); *United States v. Smith*, 775 F.3d 1262, 1265-66 (11th Cir. 2014) (considering the two rights under the same analysis).

grand jury, and the indictment would be sufficient to make him face trial on the merits.  *See United States v. Williams*, 504 U.S. 36, 54 (1992).  Such an approach would severely chill the First Amendment rights the Court supposed subsection (h) would protect.

IRTPA's effect on § 2339B is similar to the effect of the Foreign Trade Antitrust Improvements Act (FTAIA) on the Sherman Act.  *See* 15 U.S.C. § 6a.  As with the material support statute, the Sherman Act sets out a general prohibition.  *See* 15 U.S.C. §§ 1-3.  As with IRTPA, the FTAIA was enacted after the Sherman Act to amend its prohibition and clarify its scope.  *See F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004).  Under the FTAIA, if the Government asserts a certain factual theory (that the defendant engaged in non-import trade or commerce with foreign nations), then the Sherman Act does not apply "*unless*" additional facts are present (a domestic effect).  *See* 15 U.S.C. § 6a (emphasis added); *see also Empagran*, 542 U.S. at 162.  Similarly, under IRTPA, if the Government proceeds on a "personnel" theory, § 2239B does not apply "*unless*" the defendant attempted to work under the FTO's direction and control.  *See* 18 U.S.C. § 2339B(h) (emphasis added).

As the Ninth Circuit has held, although the FTAIA is in a section separate from the general Sherman Act prohibitions, and although it is phrased as an exception, when the Government proceeds on a commerce-with-foreign-nations theory, it must plead and prove the conduct's domestic effect under the FTAIA.  *United States v. Hui Hsiung*, 778 F.3d 738, 756 (9th Cir. 2015).  So too, here:  if the Government proceeds on an attempted "personnel" theory, as it has in this case, it must plead and prove an attempt to work under the FTO's direction and control under subsection (h).  Because the indictment contains no such allegation, Count One should be dismissed.

## II.  Counts Two and Three fail to state an offense.

Counts Two and Three fail to state an offense because they fail to allege Mr. Alazhari's
mens rea with respect to the applicable regulatory requirement under the NFA.  An indictment
that omits the offense's mens rea must be dismissed.  *See United States v. Martinez*, 800 F.3d
1293, 1295 (11th Cir. 2015).

Count Two and Count Three charge violations of the NFA.  The operative statute
provides:  "It shall be unlawful for any person . . . (b) to receive or possess a firearm transferred
to him in violation of the provisions of this chapter; or . . . (d) to receive or possess a firearm
which is not registered to him in the National Firearms Registration and Transfer Record."  26
U.S.C. § 5861.  A "firearm" under the NFA is statutorily defined to include short-barreled rifles
and shotguns, machineguns, silencers, and destructive devices (such as bombs, grenades, rockets,
and mines).  26 U.S.C. § 5845(a).  The penalty for these offenses is up to ten years'
imprisonment.  26 U.S.C. § 5871.

The statute is silent as to any required mental state for the defendant, but the Supreme
Court has explained that it requires a mens rea nonetheless.  *Staples v. United States*, 511 U.S.
600, 605 (1994).  That is because the Court employs a longstanding presumption in favor of
mens rea when a statute is silent on the subject.  *See Rehaif v. United States*, 139 S. Ct. 1291,
1295 (2019).  The presumption in favor of mens rea is designed to separate innocent from
wrongful conduct.  *Id*. at 2197.  Thus, the Court "read[s] in the statute 'only that *mens rea* which
is necessary to separate wrongful conduct from otherwise innocent conduct.'"  *Elonis v. United
States*, 135 S. Ct. 2001, 2010 (2015) (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)).
The presumption is at its strongest when the associated penalties are "harsh."  *See Staples*, 511

U.S. at 616 (applying the presumption to § 5845's ten-year penalty).

"The presumption in favor of a scienter requirement should apply to *each* of the statutory elements that criminalize otherwise innocent conduct.'" *Elonis*, 135 S. Ct. at 2010 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994)).  For example, in *Rehaif*, the statutes prohibited "knowingly" possessing a firearm for those with a certain status, such as felons, illegal aliens, and the mentally ill.  The Government conceded that the mens rea applied to the element of possession, but argued that no mens rea applied to the status element.  *Rehaif*, 139 S. Ct. at 2196.  The Court disagreed because "the defendant's status is the 'crucial element' separating innocent from wrongful conduct." *Id*. at 2198 (quoting *X-Citement Video*, 513 U.S. at 73).  The Court considered examples of wholly innocent conduct that would be punishable if the statute did not require the defendant to know his status, such as "an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status" or "a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is '*punishable* by imprisonment for a term exceeding one year.'"  *Id*. at 2198 (quoting 18 U.S.C. § 922(g)(1)).

Here, *Staples* established that the Government must plead and prove that Mr. Alazhari knew that the "firearm" was a silencer, at a minimum.  *See Staples*, 511 U.S. at 602.  However, as applied to silencers, a knowledge requirement that the item possessed is a silencer is insufficient to separate wrongful from innocent conduct.  There is nothing inherently wrongful about the receipt or possession of a silencer.  While silencers may evoke popular images of Hollywood assassins and spies, they serve entirely lawful functions.  More accurately referred to as "suppressors," they protect against hearing damage; reduce recoil, thereby increasing accuracy

and reducing discomfort or injury; and reduce muzzle flash, thereby increasing accuracy by preventing the shooter's temporary blindness.[6]  As of May 2019, there were 1,750,433 silencers registered in the United States and 118,097 in Florida.[7]  Thus, as in *Rehaif*, the lack of registration or other regulatory compliance is the "crucial" element that separates wrongful conduct from entirely innocent conduct.[8]  Also like in *Rehaif*, a number of wholly innocent acts would be punishable if the statute required no knowledge requirement, such as where a firearm seller provides a buyer with falsified documents indicating that the silencer has been registered and properly authorized.  *See* 26 U.S.C. § 5841(b) (providing that only the transferor may register the firearm to the transferee).

This case is not controlled by *United States v. Freed*, 401 U.S. 601 (1971).  That case held that no knowledge showing is required for the registration of *grenades*.  *Id.* at 609.  The Court reasoned, "This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act."  *Id.* (footnote omitted).  The Court described the grenades as "highly dangerous offensive weapons," and, addressing a conspiracy count, explained that "[a]n

---

[6] *See* Mr. Alazhari's Motion to Dismiss Indictment as Based on Unconstitutional Statutes.

[7] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update* 15 (2019) (enclosed as Exhibit 1); *cf. Staples*, 511 U.S. at 613 & n.8 (consulting a Department of Justice statistical compilation regarding firearm ownership).

[8] Count Two alleges that Mr. Alazhari received and possessed a silencer "transferred to him in contravention of Chapter 53 of Title 26."  While the charge refers to a legal matter, a knowledge requirement would not violate the maxim that ignorance of law is no excuse.  Instead, the Government must prove that Mr. Alazhari knew the facts that made the transfer illegal, e.g., that the transferor had not completed the application, taxation, registration, and approval process mandated by the NFA.  *See Rehaif*, 139 S. Ct. at 2198.

agreement to acquire hand grenades is hardly an agreement innocent in itself.  Therefore what we have said of the substantive offense satisfies *on these special facts* the requirements for a conspiracy."  *Id*. at 609 & n.14 (emphasis added; citation omitted).

*Staples* limited *Freed* to the context of hand grenades.[9]  Distinguishing guns from grenades, the Court explained that "our analysis in *Freed* . . . rested *entirely* on the assumption that the defendant knew that he was dealing with hand grenades–that is, that he knew he possessed a particularly dangerous type of weapon (one within the statutory definition of 'firearm'), possession of which was not entirely 'innocent' in and of itself."  *Staples*, 511 U.S. at 610 (emphasis added; other emphasis removed).  The Court noted that guns are less dangerous than grenades and are widely possessed lawfully, and rejected the Government's argument that the regulation of guns is sufficient to put defendants on notice that possession is unlawful.  *Id*. at 610-13.

What the *Freed* Court said of hand grenades cannot be said of silencers.  Silencers are neither "highly dangerous offensive weapons" nor can it be said that anyone could "hardly be surprised" that possession of an accessory designed to protect against hearing loss "is not an innocent act."  The "special facts" present in *Freed* are absent here.  Thus, as with the status element in *Rehaif*, the minimum mens rea necessary to separate wrongful from apparently innocent conduct is knowledge of non-compliance with the NFA.  While *Freed* survived *Staples* as to grenades (and likely machineguns, sawed-off shotguns, and artillery pieces, *see Staples*, 511 U.S. at 611), its holding does not extend to silencers.

---

[9] Thus, Eleventh Circuit cases that pre-date *Staples* have been abrogated on this point.  *See, e.g.*, *United States v. Sorrells*, 714 F.2d 1522, 1531 (11th Cir. 1983).

The indictment alleges Mr. Alazhari's knowledge that he received and possessed the silencer, but does not allege the regulatory element:  that he knew that the silencer had not been registered to him or otherwise subject to the application-and-approval process.  Because this mens rea was omitted, Count Two and Count Three must be dismissed under *Martinez*.

### III.  Count Two and Count Three are multiplicitous.

The Fifth Amendment's Double Jeopardy Clause "protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  "'Multiplicity' is the charging of a single offense in more than one count."  *Ward v. United States*, 694 F.2d 654, 660 (11th Cir. 1983) (citing *United States v. De la Torre*, 634 F.2d 792, 702 (5th Cir. 1981)).  Whether two counts are multiplicitous turns on whether Congress intended to authorize multiple punishments for the same act or transaction.  *See United States v. Bobb*, 557 F.3d 1366, 1371 (11th Cir. 2009).  Generally, courts apply the test provided by *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether two counts are the "same offense" for double jeopardy purposes.  *Bobb*, 557 F.3d at 1372.  Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  While in some circumstances *Blockburger*'s test can be overcome by other evidence of congressional intent, *see Bobb*, 450 U.S. at 1373, when the Government charges that the same "firearm" was received or possessed on the same day under two different subsections of 26 U.S.C. § 5861, the *Blockburger* test applies, *see United States v. Arrington*, 618 F.2d 1119, 1126 (5th Cir. 1980).  Concurrent sentences cannot cure a multiplicity error; one conviction cannot stand.  *Ball v. United States*,

470 U.S. 856, 864-65 (1985).

Under *Blockburger*, where a single "firearm" transfer is at issue, proving a violation of § 5861(b) does not require proof of any fact that would not already be required by proving a violation of § 5861(d).  The NFA sets out a scheme of application, taxing, approval, and registration for the transfer of statutorily defined "firearms."  Transferors must pay a $200 tax for the transfer of any "firearm," the payment of which must be evidenced by a stamp provided by the Secretary of the Treasury.  26 U.S.C. § 5811.  To permit a transfer, the transferor must submit an application to the Secretary for the transfer and registration of the firearm that identifies the transferor, the transferee, and the firearm, and that provides the tax stamp as proof of payment.  26 U.S.C. § 5812.  The Secretary maintains a central registry called the National Firearms Registration and Transfer Record.  26 U.S.C. § 5841(a).  Only a transferor may register a firearm to a transferee, and only in the manner prescribed by the Secretary, i.e., parallel to the application and approval process, through the same application.  *See* 26 U.S.C. § 5841(b)-(c). All of the provisions of the NFA are located in Chapter 53 of Title 26 of the U.S. Code.

The provision of the NFA at issue in Count Two provides, "It shall be unlawful for any person . . . to receive or possess a firearm transferred to him in violation of the provisions of this chapter," i.e., Chapter 53 of Title 26.  26 U.S.C. § 5861(b).  The indictment tracks the language of the statute, charging Mr. Alazhari with receiving and possessing the silencer "transferred to him in contravention of Chapter 53 of Title 26."  The provision of the NFA at issue in Count Three provides, "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . ."  26 U.S.C. § 5861(d).  Again, the indictment tracks the statute, charging Mr. Alazhari with receiving a

silencer (the same silencer) "not registered to him in the National Firearms Registration and Transfer Record."

To receive an unregistered "firearm" is to receive it "in contravention of Chapter 53 of Title 26." Thus, if the Government proves the § 5861(d) offense charged in Count Three, i.e., that Mr. Alazhari received the silencer without its being registered to him, it will have necessarily proved that he received it in contravention of Chapter 53 of Title 26, the § 5861(b) offense charged in Count Two. Thus, proof of Count Two does not require proof of any fact not already shown by proving Count Three. The two counts are therefore multiplicitous, and one should be dismissed under *Ball*.[10]

To be sure, while the language of Count Two invokes the entirety of the NFA, the statutory citation points to only one substantive provision of the NFA, § 5812. But even if the Court were to ignore the broad literal scope of the indictment, a violation of the NFA's registration requirement, found in § 5841, still necessarily constitutes a violation of the application-and-approval requirement, found in § 5812. Section 5812 requires the transferor to apply for registration as part of the application process, and prohibits a transfer of possession until and unless the Secretary has "approved the transfer *and registration*" of the firearm. *See* 26

---

[10] In some circumstances, application of the *Blockburger* test can be overcome by other indicia of legislative intent. *See Bobb*, 577 F.3d at 1374 (citing *Albernaz v. United States*, 450 U.S. 333, 340 (1981)). However, the former Fifth Circuit has looked only to the *Blockburger* test when the possession of a single firearm on a single occasion is charged under two subsections of § 5861. *Arrington*, 618 F.2d at 1126. In any event, evidence of legislative intent outside of *Blockburger*'s test points toward an intent by Congress to punish offenders only once for violating separate provisions of the NFA with the same firearm: at a minimum, precedent establishes that Congress intended to limit the *sentence* to the single maximum provided by statute for multiple violations that relate to the same firearm. *See United States v. Ammirato*, 670 F.2d 552, 558 (5th Cir. Unit B 1982) (citing *United States v. McDaniel*, 550 F.2d 214, 219 (5th Cir. 1977); *Rollins v. United States*, 543 F.2d 574 (5th Cir. 1976)).

U.S.C. § 5812 (emphasis added).  Thus, any defendant in violation of the registration requirement is necessarily in violation of the application-and-approval requirement. Accordingly, this Court should dismiss one of the two counts.

**WHEREFORE** the Defendant, Mr. Alazhari, prays this Court will dismiss the indictment.

DATED this 31st day of August 2020.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

*/s **Samuel E. Landes***
Samuel E. Landes
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone:     (813) 228-2715
Facsimile:      (813) 228-2562
Email:  Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st of August 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Patrick Scruggs.

*/s **Samuel E. Landes***
Samuel E. Landes
Assistant Federal Defender