UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:20-cr-206-T-60AEP

MUHAMMED MOMTAZ ALAZHARI
_____/

**R**EPLY TO **G**OVERNMENT'S **R**ESPONSE IN **O**PPOSITION TO THE **D**EFENSE **M**OTION TO **D**ISMISS **B**ASED ON **U**NCONSTITUTIONAL **S**TATUTES

Count One alleges that Mr. Alazhari attempted to provide "personnel (including himself) and services" to a foreign terrorist organization (FTO), in violation of 18 U.S.C § 2339B.  (Doc. 33).  Mr. Alazhari moved to dismiss this count on the ground that Congress lacks any constitutional power to criminalize his conduct.  (Doc. 71).  The Government responded in opposition.  (Doc. 90).  In defense of the statute, the Government argues, inter alia, that Congress possesses extra-constitutional sovereign power over foreign affairs, and that the particular conduct that will satisfy the elements of the offense constitutes an offense against the law of nations recognized under customary international law, namely, terrorism, and so falls under Congress's enumerated Law of Nations power.  This Court granted Mr. Alazhari leave to file a reply on these two issues.  (Doc. 101).

**I. Congress possesses only those powers enumerated by the Constitution.**

It is a bedrock principle of United States constitutional law that any power exercised by Congress must be enumerated in the Constitution.  *See McCulloch v. Maryland*, 17 U.S. 316, 405 (1819) ("This government is acknowledged by all, to be one of enumerated powers.  The principle, that it can exercise only the powers granted to it, would seem too apparent, to have required to be enforced by all those arguments, which its enlightened friends, while it was depending before the people, found it necessary to urge; that principle is now universally

admitted."); *Gibbons v. Ogden*, 22 U.S. 1, 195 (1824) ("The enumeration presupposes something not enumerated . . . ."); *United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution.").

Against this principle, the Government proposes an exception: Congress may legislate without an enumerated power in the field of foreign affairs because it has inherent "powers of external sovereignty." (Doc. 90, p. 4). For this proposition, the Government cites *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936). But, as subsequent cases make clear, *Curtiss-Wright* does not grant Congress extra-constitutional powers, because it is a case about the powers of *the president*. In *Curtiss-Wright*, Congress enacted a law that empowered the president to prohibit the sale of arms to certain countries. The Court considered whether this was an unconstitutional delegation, and decided that it was not, writing in the process that "[t]he broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect of our internal affairs." *Id*. at 315-16.

Later cases have explained that this statement is dictum. In his concurring opinion in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), Justice Jackson described three scenarios in which the president may exercise constitutional power: when the president acts with Congress's authorization, when the president acts in the absence of any congressional statement on the issue, and when the president acts contrary to Congress's will. *Id*. at 635-38 (Jackson, J., concurring). Justice Jackson explained that the situation in *Curtiss-Wright* fell into the first of these categories, and the Court's broad statements in the case about the purported extra-

2

constitutional powers of the federal government as a whole were dicta. *Id*. at 635-36 n.2 (Jackson, J., concurring). Thus, *Curtiss-Wright* is a case about congressional delegation of power to the president, not the power of Congress generally. Justice Jackson's concurrence has been widely recognized as the controlling opinion in *Youngstown Sheet & Tube*. Roy E. Brownell II, *The Coexistence of* United States v. Curtiss-Wright *and* Youngstown Sheet and Tube v. Sawyer *in National Security Jurisprudence*, 16 J. L. & Pol. 1, 43 & n.167 (2000).

Accordingly, both the Supreme Court and the Eleventh Circuit have treated *Curtiss-Wright*'s broad statements as dicta, and have applied Justice Jackson's *Youngstown Sheet & Tube* analysis. *See Dames & Moore v. Regan*, 453 U.S. 654, 661 (1981) (noting *Curtiss-Wright* but applying *Youngstown Sheet & Tube*); *Jean v. Nelson*, 727 F.2d 957, 965 (11th Cir. 1984) (same, describing the holding of *Curtiss-Wright* as "when dealing with foreign affairs Congress may delegate a degree of discretion that would not be permissible if domestic policy alone were involved"); *see also United States v. Frade*, 709 F.2d 1387, 1402 (11th Cir. 1983) (explaining that *Curtiss-Wright* is a case about power delegated to the president); *Gonzales v. Reno*, 212 F.3d 1338, 1349 n.12 (11th Cir. 2000) (similar).

Thus, perhaps unsurprisingly, *Curtiss-Wright* did not undo the bedrock principle that Congress must act pursuant to a power enumerated in the Constitution. *See United States v. Park*, 297 F. Supp. 3d 170, 182-83 (D.D.C. 2018) (dismissing indictment where the Government relied, inter alia, on purported extra-constitutional powers under *Curtiss-Wright*), *rev'd on other grounds*, 938 F.3d 354 (D.C. Cir. 2019). Here, no enumerated power supports Mr. Alazhari's prosecution under 18 U.S.C. § 2339B. The statute is therefore unconstitutional both facially and as-applied, and this Court should dismiss Count One.

**II. Providing material support to an FTO is not an offense under customary international law.**

The Constitution provides Congress power "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. As the Eleventh Circuit has explained repeatedly, when Congress relies on its "law of nations" power to define a criminal offense, it is limited to those crimes recognized by customary international law. *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1249 (11th Cir. 2012); *United States v. Davila-Mendoza*, 972 F.3d 1264, 1268-69 (11th Cir. 2020) (citing *Bellaizac-Hurtado*, 700 F.3d at 1249-53). Thus, the question of whether Congress has constitutional authority under the Law of Nations Clause turns on whether the crime alleged in this case – attempting to provide material support to an FTO – is recognized as an offense under customary international law.

The Government argues that, even if the offense of providing material support to an FTO is not a recognized offense under customary international law, the specific acts attempted by Mr. Alazhari in this case constitute an offense under customary international law. (Doc. 90, pp. 6-7). The Government cites a district court opinion that, in a footnote, states:

> Although there is no universal norm against terrorism – unlike piracy, war crimes, and crimes against humanity – Congress may nevertheless reach certain terrorist conduct under the "law of nations" clause, when the terrorist conduct also violates the law of nations, such as planning and commission of suicide bombings and other murderous attacks using explosives, incendiary weapons, and lethal devices in public places, to attack innocent civilians.

*United States v. Ahmed*, 94 F. Supp. 3d 394, 415 n.8 (E.D.N.Y. 2015). The Government argues, "This is precisely what the Defendant is accused of attempting to do here. His conduct involved an attempt to carry out a mass shooting and other violent acts against innocent civilians so as to

4

support a terrorist organization that seeks to establish an Islamic state throughout the globe." (Doc. 90, p. 6). The Government points to the complaint affidavit to support this proposition; the indictment makes no such allegation. (*Id.*). That is to say, the Government's argument is that, while Mr. Alzhari is not *charged* with an offense against customary international law, the *evidence* that it will seek to admit to prove the charge will demonstrate an offense against international law.

The Court of Appeals for the District of Columbia has rejected a similar argument in an analogous circumstance, in an opinion authored by then-Judge Kavanaugh. *See Hamdan v. United States*, 696 F.3d 1238, 1249-53 (D.C. Cir. 2012), *overruled on other grounds*, *Al Bahlul v. United States*, 767 F.3d 1, 11 (D.C. Cir. 2014). In *Hamdan*, the court reviewed the military commission conviction of Osama bin Laden's driver and personal bodyguard for the crime of material support for terrorism. *Id*. at 1242, 1244. The court was called upon to decide whether "material support for terrorism" was an international war crime at the time of the defendant's crime, in order to decide whether his conviction was in violation of a prohibition on ex post facto laws. *Id*. at 1248. Framing the question presented, the court explained, "It is true that international law establishes at least some forms of *terrorism*, including the intentional targeting of civilian populations, as war crimes . . . . But the issue here is whether *material support for terrorism* is an international-law war crime. The answer is no." *Id*. at 1249-50 (citations omitted).

In support of this holding, the court canvassed treaty and customary international law, and determined that material support for terrorism is not a recognized international crime. *Id*. at 1250-51. "In short, neither the major conventions on the law of war nor prominent modern

5

international tribunals nor leading international-law experts have identified material support for terrorism as a war crime. Perhaps most telling, before this case, no person has ever been tried by an international-law war crimes tribunal for material support for terrorism." *Id*. at 1251. Lastly, the court considered and rejected the Government's fallback argument:

> To be sure, there is a strong argument that aiding and abetting a recognized international-law war crime such as terrorism is itself an international-law war crime. And there are other similar war crimes. But Hamdan was not charged with aiding and abetting terrorism or some other similar war crime. He was charged with material support for terrorism. And as the Government acknowledges, aiding and abetting terrorism prohibits different conduct, imposes different mens rea requirements, and entails different causation standards than material support for terrorism. If the Government wanted to charge Hamdan with aiding and abetting terrorism or some other war crime that was sufficiently rooted in the international law of war (and thus covered by 10 U.S.C. § 821) at the time of Hamdan's conduct, it should have done so.

*Id*. at 1251-52.[1]

As the *Hamdan* court did, this Court should reject the Government's invitation to find that Mr. Alazhari's *conduct* constitutes a crime under customary international law, even though the *charge* does not. Even assuming "attempted terrorism" is a recognized offense under customary international law,[2] he is not charged with attempted terrorism; he is charged with attempted material support to an FTO. Like in *Hamdan*, the purported international offense of attempted terrorism prohibits different conduct, imposes different mens rea requirements, and

---

[1] A word of caution on reading *Hamdan*: in a footnote joined by only one judge, then-Judge Kavanaugh argued that Congress's power under the Define and Punish Clause is not limited by international law. *Id*. at 1246 n.6. In this circuit, that position is foreclosed by *Bellaizac-Hurtado* and *Davila-Mendoza*.

[2] It is far from obvious that generic "terrorism" is a recognized offense under customary international law. *See, e.g., United States v. Yousef*, 327 F.3d 56, 106-08 (2d Cir. 2003).

entails different causation standards than attempted material support to an FTO.  *Compare* 18 U.S.C. § 2331(1) (defining "international terrorism") *with* § 2339B (defining the offense of material support to an FTO).  The jury will not be asked to decide, for example, whether Mr. Alazhari intended to influence the policy of a government, *see* 18 U.S.C. § 2331(1)(B)(ii), but rather will be asked to find only the bare elements of attempted material support.

Accordingly, Count One does not allege an offense under customary international law. Because of this, under *Bellaizac-Hurtado* and *Davila-Mendoza*, the Government cannot rely on Congress's constitutional power under the Law of Nations Clause to support this prosecution. Because no other power enumerated in the Constitution provides Congress with the necessary power, this Court should dismiss Count One.

DATED this 6th day of November 2020.

                                      Respectfully submitted,

                                      JAMES T. SKUTHAN
                                      ACTING FEDERAL DEFENDER

                                      */s **Samuel E. Landes***
                                      Samuel E. Landes
                                      D.C. Bar No. 1552625
                                      Assistant Federal Defender
                                      400 North Tampa Street
                                      Suite 2700
                                      Tampa, Florida 33602
                                      Telephone:	(813) 228-2715
                                      Facsimile:	(813) 228-2562
                                      Email:  Samuel_Landes@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th of November 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Patrick Scruggs.

*/s **Samuel E. Landes***
Samuel E. Landes
Assistant Federal Defender
