UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:20-cr-206-TPB-AEP

MUHAMMED MOMTAZ AL-AZHARI

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO STRIKE LANGUAGE FROM THE INDICTMENT**

The United States of America files this response in opposition to the motion of the Defendant, Muhammed Momtaz Al-Azhari, to strike alleged surplusage language from the indictment (Doc. 153).

**MEMORANDUM OF LAW**

The Defendant's motion is an attempt to rewrite the indictment to focus on his preferred theory of prosecution. The language in question is not surplusage, and, even if it was, the Defendant has not met the exacting standard for striking it. Accordingly, his motion should be denied.

**I.  Procedural history**

On May 26, 2020, and the Defendant was federally arrested pursuant to a criminal complaint. On June 23, 2020, a grand jury returned an indictment charging him with violations of 18 U.S.C. § 2339B and 26 U.S.C. § 5861(b) and (d). As to the § 2339B charge, the indictment alleges, in relevant part, that the Defendant, "knowingly attempted to provide material support and resources, namely personnel

(including himself) and services, to a foreign terrorist organization." Doc. 33 at 1.

On December 15, 2020, the Court denied the Defendant's motion to dismiss the indictment for failure to state an offense and multiplicity. Doc. 70, 111. In that motion, the Defendant had argued that Count One of the indictment, which alleges the § 2339B offense, does not state that the Defendant attempted to place himself under the foreign terrorist organization's direction and control, which he contended was an essential fact that must be pled. Doc. 111 at 3. That same day, the Court denied a separate motion by the Defendant, which had argued that Count One was void for vagueness as applied to him, for similar reasons. Doc. 109 at 3. The Court also denied the Defendant's motion for a bill of particulars as to Count One. Doc. 110.

## II. The Defendant has not met the exacting standard for striking alleged surplusage

An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment that tracks the language of the statute satisfies this requirement if it includes the elements of the offense and a statement of the facts sufficient to inform the defendant of the offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998); *United States v. Ramos*, 666 F.2d 469, 475 (11th Cir. 1982).

A motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are not relevant to the charge and are

inflammatory and prejudicial." *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990); *see also United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). This standard for striking surplusage is "exacting." *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (cleaned up). Additionally, even when prejudice can be shown, the Court should not strike the information if it is relevant to the charged offense. *Huppert*, 917 F.2d at 511; *United States v. Aldissi*, No. 8:14-CR-217-T-33EAJ, 2014 WL 5285984, at *1 (M.D. Fla. Oct. 15, 2014), *aff'd*, 758 F.App'x 694 (11th Cir. 2018) (citing *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *accord United States v. Brye*, 318 F. App'x 878, 880 (11th Cir. 2009). Furthermore, the Court may reserve ruling on a motion to strike surplusage until hearing the evidence at trial and determining its relevance. *See Awan*, 966 F.2d at 1426; *United States v. Al–Arian*, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004).

18 U.S.C. § 2339A(b)(1) defines the term "material support or resources" as follows:

> The term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

By its own terms—namely, the use of the word "including"—the list of property or services that may constitute "material support or resources" is non-exhaustive. Here, the indictment alleges that the Defendant "knowingly attempted to provide material support and resources, namely personnel (including himself) and services" to the

3

Islamic State of Iraq and al-Sham ("ISIS"). Doc. 33 at 1. The indictment, therefore, specifies what type of "material support or resources" that the Defendant allegedly provided.

As the United States noted in a previous motion response (Doc. 91), the facts set forth in the complaint suggest three different ways in which the Defendant attempt to provide material support or resources to ISIS. These include: a) personnel in the form of himself; b) personnel through his recruitment of the confidential source ("CHS-1"); and c) services in the form of an attack on behalf of ISIS, which was meant to further its terroristic goals. A timeline of key events leading up to the Defendant's arrest, including his own statements and actions, is laid out in the complaint. Based on what has been disclosed, the Defendant can prepare for trial and know that the United States will not surprise him during opening statements with a completely new theory of prosecution. The facts adduced so far show that the Defendant pledged his allegiance to ISIS, acquired weapons and other gear, rehearsed carrying out an attack, surveilled potential targets, and attempted to recruit and indoctrinate CHS-1 to help him provide material support to ISIS. Simply put, the Defendant can understand what alleged conduct underpins Count One.

Having previously claimed that the term "services" was not specific enough (*see* Doc. 72),[1] the Defendant now claims that it is surplusage. According to the Defendant, Congress's inclusion of the word "personnel" in the definitional list of § 2339A(b)(1), along with Congress's limitation on that word's scope in § 2339B(h), effectively eliminates any possibility for the provision of a "service" that is not the provision of "personnel." Doc. 153 at 4. In other words, he argues, all "services" must be performed by "personnel." Therefore, the definitional list is exhaustive. This is wishful thinking, however.

The term "services" may include the term "personnel," but that does not mean that all "services" must be performed by "personnel." In trying to claim otherwise, the Defendant stretches the holding in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010), too far. *Humanitarian Law Project* did not say that "services" equal "personnel." Rather, it held that, with regard to a vagueness challenge under the Due Process Clause, the term "service" refers to concerted activity, not independent advocacy. *Id.* at 18, 23-24. Put differently, "a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause." *Id.* at 24. As a result, § 2339B is not unconstitutionally vague. *See id.*

---

[1] The Defendant previously argued, unsuccessfully, that he was not sufficiently apprised of what he must defend against with respect to the term "services" in the indictment. Doc. 72 at 3. In response, the United States argued that this amounted to a request for generalized discovery. Doc. 91 at 2-4; *see United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985). The Court denied the Defendant's motion. Doc. 110.

Under the Defendant's reading of § 2339A(b)(1), inclusion of the term "personnel" in an indictment prevents the Government from alleging any other forms of services—even those that the statute specifically lists, such as "training," "financial services," "expert advice or assistance," or "transportation." *See* Doc. 153 at 6-7. Per the Defendant's logic, the use of these terms, in addition to "personnel," would be surplusage. *See id.* But that reading cannot be correct, or Congress presumably would have just used the term "personnel" in the statute instead of "any…service"—let alone the specific list of services that it included. Indeed, even if the list at § 2339A(b)(1) is exhaustive (which the Government does not believe to be the case), then there is no reason why "personnel" cannot coexist in an indictment with the other specified forms of "service." This is consistent with *Humanitarian Law Project*, in that the Government must still prove that the other services involved some form of concerted activity with the foreign terrorist organization. *See* 561 U.S. at 23-24.

"Personnel" commonly means i) a body of persons usually employed (as in a factory or organization), or ii) the plural of persons. *Personnel (noun)*, Merriam-Webster.com (last visited Apr. 28, 2021), https://www.merriam-webster.com/dictionary/personnel. This first definition is consistent with the limiting provision of § 2339B(h), which states:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or

6

>otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

Thus, in the context of providing material support or resources, "personnel" suggests an employment-type relationship (or attempted relationship). That said, it is easy to envision qualifying "services" that are not provided by "personnel," such as a money transmitting business in the United States that knowingly transfers money overseas to ISIS members—thereby providing "financial services." The operators of that business might not be considered "personnel" of the organization, because they control their own, separate business entity, but they could still be charged under § 2339B for providing "services" to it. *See, e.g.*, *United States v. Moalin*, 973 F.3d 977, 985-87 (9th Cir. 2020). Likewise, a hospital doctor who knowingly provides "expert advice or assistance" by treating ISIS fighters so that they can return to fight could be prosecuted under the statute under a "services" theory, even if they maintain separate employment. *See, e.g.*, *United States v. Farhane*, 634 F.3d 127, 141 (2d Cir. 2011).

In this case, the Defendant attempted to work under ISIS's direction and control, and he also recruited CHS-1 to do the same. The Defendant pledged his allegiance to ISIS and vowed to support the organization's goals as a fighter in the United States. Combined with the Defendant's other acts evincing his desire to work under ISIS's direction and control, this qualifies as a theory of "personnel" under § 2339A(b)(1). *See United States v. Augustin*, 661 F.3d 1105, 1120 (11th Cir. 2011). Just

7

by offering himself (or CHS-1) as an ISIS fighter, the Defendant's acts represent a sufficient, and distinct, theory of prosecution. But the Defendant did more than that. He also attempted to carry out an attack on behalf of ISIS—regardless of his status as "personnel"—thereby providing a separate "service" to the organization. This is a second theory of prosecution. Moreover, it does not require the Defendant to have offered himself as "personnel," although he certainly did so. Rather, the Defendant could have attempted to carry out an attack for ISIS as a mercenary or independent fighter, and that would still qualify as a "service." Because "personnel" and "services" are not mutually exclusive, the Defendant should not be permitted to strike either theory from the indictment.

Ultimately, it cannot be said that the allegations concerning "services" in the indictment are not relevant to the charge—let alone that they are inflammatory and prejudicial. *Huppert*, 917 F.2d at 511. Instead, the allegations constitute a distinct theory of prosecution. The Defendant, of course, would like to strike the term "services" from the indictment, because then the Government would be left with just one theory. In addition, the Defendant could then emphasize the limitations that § 2339B(h) places on the "personnel" theory—just as he has repeatedly argued in his litigation to date. Reshaping an indictment to better fit a defense, however, is simply not the purpose of a motion to strike *surplusage* under Rule 7. Where, as here, the allegations are clearly relevant to the charge, the Court must allow them to remain in the charging instrument *See Awan*, 966 F.2d at 1426 (noting "exacting" standard for motion to strike).

Meanwhile, any arguments that the Defendant wishes to make with regard to the sufficiency of the evidence as to Count One can be made during and after trial, or on appeal. Therefore, at a minimum, if the Court does not deny the Defendant's motion, then it can reserve ruling on the motion until after the Government has introduced its evidence at trial. *See Awan*, 966 F.2d at 1426.

To the extent that the Defendant's motion argues in the alternative that Count One's "services" language fails to state an offense, this Court has already denied his request as to a bill of particulars. Doc. 110. In doing so, the Court found that "[t]he indictment in this case tracks the statutory language and adequately informs Defendant of the charges pending against him." *Id.* at 3. The Supreme Court has held that, when assessing the constitutional sufficiency of an indictment, a court must find: first, that its contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *See Hamling*, 418 U.S. at 117 (citations omitted). Similarly, the Eleventh Circuit has made clear that "[a]n indictment that tracks the wording of the statute under which an offense is charged will meet these constitutional requirements if the language sets forth the essential elements of the crime, and adequately specifies the time, place and participants involved." *United States v. Harrell*, 737 F.2d 971, 975 (11th Cir.1984) (citations and internal quotations omitted).Where the indictment accomplishes these ends, a Defendant's constitutional rights have not been impinged, even if he does not know every evidentiary detail that will be used to establish his

9

commission of the offense. *See United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir. 1979). Given the Court's prior finding, as well as the specific allegations laid out in Count One, the Court should give short shrift to this alternative argument.

### III.   Conclusion

For all of the foregoing reasons, the Court should deny the Defendant's motion to strike language from the indictment.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:   */s/ Patrick D. Scruggs*
Patrick D. Scruggs
Assistant United States Attorney
United States Attorney No. 140
400 North Tampa Street, Suite 3200
Tampa, Florida   33602
Telephone:      (813) 274-6000
E-mail: patrick.scruggs@usdoj.gov

    **U.S. v. Muhammed Al-Azhari**        Case No. 8:20-cr-206-TPB-AEP

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Samuel Landes, Esq.

                                                */s/ Patrick D. Scruggs*
                                                Patrick D. Scruggs
                                                Assistant United States Attorney
                                                United States Attorney No. 140
                                                400 North Tampa Street, Ste. 3200
                                                Tampa, Florida   33602
                                                Telephone:   (813) 274-6000
                                                Facsimile:   (813) 274-6125
                                                E-mail:   patrick.scruggs@usdoj.gov