# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                     **Case No. 8:20-cr-206-TPB-AEP**

**MUHAMMED MOMTAZ ALAZHARI**

_____/

## AMENDED MOTION TO SUPPRESS
### THE FRUITS OF UNLAWFUL SEIZURE AND SEARCH

**NOW COMES** Defendant, by and through undersigned counsel, and moves this Court to suppress any evidence derived from its unlawful seizure and search of Mr. Alazhari on May 1, 2020.

## MEMORANDUM OF LAW

On May 1, 2020, Officer Keith Hooley arrested Mr. Alazhari outside his place of employment, a Home Depot in Tampa. Officer Hooley seized Mr. Alazhari because of an "intelligence bulletin" issued by FBI task force officers, purportedly on the basis of "concerning" statements made by Mr. Alazhari to co-workers at Home Depot. But none of those statements indicated that Mr. Alazhari had committed or would commit any crime, whether judged with a standard of reasonable suspicion or probable cause. During the unlawful seizure, Officer Hooley illegally searched Mr. Alazhari's pocket, where he found what's called a "mouse gun" – a tiny .22 revolver. Officer Hooley arrested Mr. Alazhari for carrying a concealed weapon and booked him into the Hillsborough County Jail.

Mr. Alazhari's arrest allowed the Government to obtain several items of evidence, and probably a great deal more, outside of the mouse gun. Without a warrant, the Government surreptitiously searched Mr. Alazhari's car and phone, likely under the Foreign Intelligence Surveillance Act (FISA). In all likelihood, the Government also emplaced further surveillance tools while Mr. Alazhari was in jail, such as a roving audio "bug," or multiple audio bugs. Because the seizure was unlawful at the outset, this Court should suppress any evidence the Government derived from it.

## FACTS

### I. The Home Depot investigation and the intelligence bulletin.

On April 17, 2020, FBI Task Force Officers[1] (TFO) Dave Wawrzynski and Bryan Campagnano interviewed Mr. Alazhari's Home Depot boss, Roberto Rojas. Mr. Rojas told the officers that Mr. Alazhari was a good worker, that he requested and used a private room to pray while at work, and that he had once asked for assistance in locating a lawyer who could help him sue his "former country,"[2] which he said had imprisoned and tortured him when he was a child. (Exh. 1).

---

[1] A "Task Force Officer" is a state- or locally employed law enforcement officer who serves on a federal law enforcement agency's task force, here the FBI's terrorism task force.
[2] Mr. Alazhari is in fact a U.S. citizen.

2

Next, FBI agents interviewed another of Mr. Alazhari's supervisors, Kyle Hughes, an April 24, 2020.  Mr. Hughes told the agents that Mr. Alazhari had stated that an employee who overdosed on drugs was "burning in hellfire."  Mr. Hughes characterized Mr. Alazhari as being "passionately aggressive" about his Muslim faith, and recounted that Mr. Alazhari had said that Americans "got what they deserved" on 9/11 and that jihad meant "defending Islam."  Mr. Hughes also recounted Mr. Alazhari's apparent interest in his military experience as a guard at the Abu Ghraib prison, and that Mr. Alazhari wanted to write a book that included those experiences.

Mr. Hughes related that Mr. Alazhari had a black nine-millimeter pistol that he kept in his car because he was not allowed to bring it into the store, and that he had expressed interest in buying another gun.  Mr. Hughes described Mr. Alazhari as "paranoid" about the FBI and being arrested.  Mr. Hughes also provided that, on the previous day, Mr. Alazhari was apparently upset about some kind of package delivery problem.  (Exh. 2).

At 5:12 p.m. that same day, Mr. Rojas called Mr. Alazhari and informed him that Mr. Hughes had indicated that there were some things worrying Mr. Alazhari.  Mr. Rojas repeatedly emphasized that, while Mr. Alazhari's job was not in jeopardy, they wanted him to be able to have some paid leave through the Home Depot CARE program to assist him with his anxiety. They mutually agreed that he would begin

3

paid leave and seek counseling through the program. Mr. Alazhari thanked Mr. Rojas for his help.  Mr. Rojas did not tell Mr. Alazhari that he could not be on Home Depot premises.  (Exh. 3).

Also on April 24, 2020, a task force agent interviewed Michael Merritt, the senior director of corporate security, by telephone. Mr. Merritt relayed that Mr. Alazhari had been placed on a two-week paid administrative leave and enrolled in the Home Depot CARE program for "erratic and suspicious behavior."  The FBI's report of its interview with Mr. Merritt indicates that, by the time of the interview, Home Depot had hired off-duty police at the prompting of the FBI:

> Based on Alazhari's conduct, the FBI provided information to The Home Depot management regarding Alazhari's threat to his co-workers. Based on information provided by the FBI, The Home Depot contacted the Tampa Police Department (TPD) requesting continued police presence outside The Home Depot to prevent Alazhari from entering the premises.

(Exh. 4).

Based on the interview of Mr. Hughes, TFO Campagnano decided to issue an "intelligence bulletin" through his home agency, the Tampa Police Department (TPD).  (Exh. 5, p. 19).  At TFO Campagnano's direction, on April 29, 2020, TPD Detective Todd Rego created the intelligence bulletin, which was disseminated to all TPD officers.  (*Id.* at 15).  The intelligence bulletin, entitled "Armed and Dangerous Subject," provided:

4

> Muhammed M. Alazhari is a current employee at the Home
> Depot located at 8815 N. Florida Ave. He has recently been
> exhibiting bizarre and erratic behavior. Mr. Alazhari has been
> expressing unhappiness with some Home Depot employees. He
> showed a fellow coworker a firearm that was located inside his
> 2001 bronze Infiniti 4 door vehicle with a Florida tag of LZIL68.
> He was at work at the time of this incident. He made some
> concerning comments to this coworker. Mr. Alazhari has been
> forced to enter into the Employee Assistance Program pending a
> mental evaluation. He was told not to return to Home Depot
> until he is contacted by a Home Depot supervisor. There are no
> criminal charges at this time. This investigation is ongoing. If
> law enforcement comes in contact with Mr. Alazhari please use
> caution and consider him armed and dangerous. If contact is
> made at any Home Depot location, detain Mr. Alazhari and
> immediately contact CIB [Criminal Intelligence Bureau]
> Detectives Campagnano, George, or Rego.

(Exh. 6).

## II. The seizure and search.

An off-duty officer who had been hired by Home Depot did indeed encounter
Mr. Alazhari, in the Home Depot parking lot on the morning of May 1, 2020.
Officer Hooley was parked at the store's front door, reviewing the intelligence
bulletin. Mr. Alazhari approached, wearing loose-fitting, dark-colored shorts that
reached beneath the knee. He walked with his hands at his sides, holding nothing.
When Mr. Alazhari got about 15 to 20 feet from Officer Hooley's car, Officer Hooley
exited the car and intercepted Mr. Alazhari. Officer Hooley immediately grabbed
Mr. Alazhari by an arm and handcuffed his hands behind his back. In conformance
with the intelligence bulletin's request, Officer Hooley's purpose was to detain Mr.

Alazhari until such time as a CIB detective could question him.  Officer Hooley told

Mr. Alazhari that he was not under arrest, but he was being "detained for

questioning."  Officer Hooley then frisked Mr. Alazhari's waistline, finding nothing.

He brought Mr. Alazhari to his patrol vehicle and asked why he was there.  Mr.

Alazhari stated that he was there to buy some things.  (Exh. 5).

Officer Hooley next asked Mr. Alazhari if he had any weapons, and now

claims that Mr. Alazhari's response was unintelligible.  Officer Hooley then frisked

Mr. Alazhari a second time after, he claims, he observed "a bulge in his right front

shorts pocket." (*Id*.)  In his report, Officer Hooley writes, "Upon touching the

outside of said pocket, I immediately recognized a solid object with rounded edges

resembling a closed pocket knife or small firearm."  (*Id*.)  Officer Hooley then

reached into Mr. Alazhari's pocket and retrieved "a small silver derringer style North

American Arms .22 cal revolver." (Exhs. 5, 7-8).  The North American Arms .22

caliber mini revolver is a comically small firearm, commonly called a "mouse gun."

The nickname is said to come from the consensus that "[a] pistol like this may be

able to stop a charging mouse at three paces, but not much else."[3]

---

[3] Horman, B. Gil, NRA AMERICAN RIFLEMAN, *Is the Mouse Gun a Dying Breed?* (May 24, 2018) https://www.americanrifleman.org/content/is-the-mouse-gun-a-dying-breed/.

Additionally, Officer Hooley apparently searched the rest of Mr. Alazhari's person, including his front left sweatshirt pocket, where he found a slip of paper with measurements for blinds.  Following his arrest, Mr. Alazhari was taken to a jail cell. He made a statement there after being Mirandized, explaining he was at Home Depot to shop.  Detective Rego provided Mr. Alazhari a trespass notice for Home Depot after he was arrested, and Home Depot sent Mr. Alazhari a formal trespass warning letter about a week later.

## III. Evidence obtained from the seizure.

Obviously, the Government obtained the mouse gun and Mr. Alazhari's statement from the arrest.  However, the Government also obtained three other categories of evidence while Mr. Alazhari was detained.  First, while Mr. Alazhari was detained at the jail, the Government surreptitiously searched his car, discovering ammunition and an incriminating note.  (Doc. 5, ⁋ 111).  The Government has provided notice that it intends to rely on evidence obtained through FISA searches or surveillance.  (Doc. 26).  FISA permits warrantless, no-notice, surreptitious searches such as the Government's car search in this case.  *Compare* 50 U.S.C. § 1825(b) (requiring notice of a FISA search only in certain circumstances and when the search involved a U.S. person's residence) *with* Fed. R. Crim. P. 41(f)(1)(C) (requiring the officer executing a search warrant to serve a copy of the warrant on the owner of the

property).  Thus, it appears that the Government made use of Mr. Alazhari's unlawful detention to execute a surreptitious car search under FISA.

Second, the Defense's retained expert, Mr. Richard Connor,[4] if called to testify, would establish that the Government surreptitiously searched Mr. Alazhari's cell phone while he was detained at the jail.  While Mr. Alazhari was detained, the phone's exercise application logged several "steps," meaning that someone carried the phone some distance at the jail.  Soon after, the phone was connected to a GrayKey device.  A GrayKey is a device marketed to law enforcement agencies that is able to bypass an Apple iPhone's security, thereby hacking into an otherwise locked and encrypted phone.  GrayKey does so through a "brute force attack," whereby the device rapidly churns through passcode possibilities until landing on the correct one.  GrayKey successfully hacked into the phone and digitally extracted its contents, including passwords saved on the phone.

Third, the Government apparently used the opportunity of Mr. Alazhari's unlawful detention to set the conditions for further surreptitious surveillance of Mr. Alazhari under FISA.  In particular, the Government conducted surreptitious audio surveillance of Mr. Alazhari after the May 1 arrest, recordings of which it has

---

[4] (*See* Exh. 10).

provided in discovery.  As the Government's complaint alleges, some of this surveillance took place in Mr. Alazhari's home.  (Doc. 5, ¶ 114).  Other audio surveillance plainly did not.  For example, on May 14, 2020, at 4:49 p.m., the Government recorded Mr. Alazhari listening to a video about converting solvent filters into firearm silencers.  (Doc. 5, ¶ 117).  On May 14, 2020, at 4:49 p.m., as the FBI's aerial surveillance confirms, Mr. Alazhari was driving in his car.  (Exh. 9).  Given that the FBI was able to conduct audio surveillance of Mr. Alazhari both in his home and in his car, the Government either (1) emplaced listening devices in both locations, or (2) added something to his phone, which would have traveled with him, to enable the phone's microphone to record.  In either event, it was the seizure at Home Depot, and the surreptitious car and phone searches that followed, that enabled this follow-on surveillance.

In addition to the follow-on audio surveillance, the Government may have conducted any manner of continued surveillance enabled by the seizure at Home Depot.  To take just one example, the GrayKey extraction included the phone's "Keychain" information, meaning the passwords saved on the phone, which could have been used in myriad ways to electronically surveil Mr. Alazhari.  The Government may have also installed so-called "spyware" on the phone, to enable surveillance of it.  This Court has denied Mr. Alazhari any further discovery of the Government's surveillance under the Classified Information Procedures Act (CIPA)

9

(Doc. 187), and so Mr. Alazhari is in no position to more specifically identify what other surveillance was enabled by his May 1 seizure.

## ARGUMENT

This Court should suppress all evidence stemming from the unlawful arrest of Mr. Alazhari, including the mouse gun and its contents, his statements to law enforcement, the fruits of the car search, the fruits of the cell phone search, and any surveillance that was enabled by the unlawful seizure.[5]  Officer Hooley's act of grabbing Mr. Alazhari's arms, handcuffing him, and detaining him at his vehicle until a detective could question him was a full-blown arrest, not a mere *Terry* stop. The arrest was not supported by probable cause, and so was unlawful.  Even if the seizure was an investigatory *Terry* stop, the facts within the officer's knowledge did not amount to reasonable suspicion justifying the seizure.  Separately, even assuming the stop was justified at its outset, whatever "bulge" was created by the mouse gun provided no reasonable suspicion to justify the frisk of Mr. Alazhari's pocket.  The seizure and frisk led to Officer Hooley's discovery of the mouse gun, which in turn led to the other evidence challenged here.

---

[5] Even if this Court does not find that the results of the cell phone or car searches should be excluded as fruit of the unlawful seizure, they should nonetheless be excluded because warrantless cell phone searches incident to arrest are unconstitutional, as are searches of cars incident to arrest in these circumstances. *See Riley v. California*, 573 U.S. 373, 398 (2014) (cell phone searches); *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (car searches).

**I. Officer Hooley unlawfully arrested Mr. Alazhari prior to discovering the mouse gun.**

Mr. Alazhari's arrest was either an unlawful arrest from its inception or an unlawful arrest that stemmed from an unlawful *Terry* stop.  Brief, investigatory stops that do not rise to the level of an arrest are commonly known as *Terry* stops.  *See United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).  Police may "briefly detain a person as part of an investigatory stop if they have a reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995).  By contrast, an arrest requires probable cause.  *United States v. Acosta*, 363 F.3d 1141, 1145-46 (11th Cir. 2004).

A.  Officer Hooley's initial seizure of Mr. Alazhari was an arrest.

To distinguish between a *Terry* stop and an arrest, courts "apply four non-exclusive factors: the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *Id.* at 1146 (citations omitted).  Investigatory stops under *Terry* cannot continue indefinitely.  *United States v. Sharpe*, 470 U.S. 675, 685 (1985).

Each of the *Acosta* factors supports a finding that Officer Hooley immediately arrested Mr. Alazhari.  The first factor, the law enforcement purpose served by the

detention, weighs most heavily.  Under this factor, "the most important [consideration] 'is whether the police detained [the defendant] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference.'"  *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (quoting *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988)).

> A *Terry* stop is justified to give the police an opportunity to engage in brief and nonintrusive investigation techniques, such as a noncustodial questioning of the detained person. A *Terry* stop cannot be used as the basis of a "full search" that would normally be warranted only by the existence of probable cause, consent, or a valid arrest.  Nor may the police use an investigative stop to subject a suspect to custodial interrogation that would ordinarily require formal arrest and *Miranda* warnings.

*Hardy*, 855 F.2d at 759 (citations and internal quotations omitted).

Here, Officer Hooley was not pursuing a method of investigation designed to confirm or dispel some suspicion quickly.  Officer Hooley was at the Home Depot for the sole purpose of detaining Mr. Alazhari.  *Cf. United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995) (finding an investigatory stop rather than an arrest where law enforcement came to talk with defendants and not to arrest them).  He detained Mr. Alazhari solely on the basis of the intelligence bulletin, which described a broad investigation of "concerning" statements made to a fellow employee and "bizarre and erratic" behavior.  Nothing could have confirmed or dispelled any suspicion harbored by Officer Hooley.  Rather, as requested by the intelligence bulletin, Officer

12

Hooley detained Mr. Alazhari so that he could contact a CIB detective – so that the CIB detective could conduct a custodial interrogation of Mr. Alazhari as part of the broader investigation.  This purpose transforms the seizure into an arrest under *Hardy*.  The detention was for an indefinite duration by design, to allow for an interrogation.  Had Officer Hooley *not* found the mouse gun, he would have detained Mr. Alazhari until Detective Rego could interrogate him anyway.  The intelligence bulletin acted as a de facto arrest warrant, and Officer Hooley dutifully executed it without any possibility of dispelling some suspicion he harbored.

The remaining *Acosta* factors further support the conclusion that Officer Hooley immediately arrested Mr. Alazhari.  Officer Hooley did not diligently pursue any investigation at all; he merely detained Mr. Alazhari to allow the CIB detectives to conduct a custodial interrogation.  The seizure was intrusive, involving Mr. Alazhari's being handcuffed and then removed to Officer Hooley's car.  Lastly, the seizure was intended to be indefinite, to allow interrogation by CIB detectives.  Especially in combination with Officer Hooley's purpose in making the seizure, these factors demonstrate that Officer Hooley's seizure of Mr. Alazhari was an arrest, not an investigatory stop.

B.  Officer Hooley lacked probable cause.

The Fourth Amendment only allows for a warrantless arrest in a public place if an officer has probable cause to believe that a felony has occurred.  *Florida v. White*,

13

526 U.S. 559, 565 (1999).  "When the constitutional validity of an arrest is challenged, it is the function of the court to determine whether the facts available to the arresting officers at the moment of the arrest support a finding of probable cause." *United States v. Allison*, 953 F.2d 1346, 1349–50 (11th Cir. 1992).  Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotations omitted).

Having conducted no investigation himself, and having observed nothing but Mr. Alazhari walking across a parking lot, Officer Hooley relied entirely on the intelligence bulletin in making the arrest.  The intelligence bulletin was drafted by Detective Rego, at TFO Campagnano's direction.  Rego and Campgnano relied on the interviews of two of Mr. Alazhari's Home Depot supervisors, Messrs. Rojas and Hughes.  The Rojas interview revealed nothing whatsoever of note.  The Hughes interview did no more to provide probable cause.  In summary, Mr. Hughes told the FBI that Mr. Alazhari's Muslim faith led him to some harsh judgments about the morality of drug use and 9/11, and that he defined jihad as a defense of Islam.  Mr. Hughes said that Mr. Alazhari was interested in his military experience and wanted to include it in a book he wished to write.  Mr. Hughes said that Mr. Alazhari had a

14

pistol, but that Home Depot would not allow him to bring it into the store. According to Mr. Hughes, Mr. Alazhari followed this rule by leaving the pistol in his car.  Mr. Hughes told the FBI that Mr. Alazhari was upset about a problem with a package delivery, and that he was "paranoid" about the FBI.  Of course, as the FBI well knew, Mr. Alazhari was subject to near-constant surveillance by the FBI at the time.  (Doc. 174).

None of these statements, alone or together, amount to probable cause that Mr. Alazhari had committed, was committing, or would commit any crime. Certainly Mr. Alazhari's Muslim faith could not have been the basis for a probable cause finding, nor could his feelings on drug use or 9/11, however outside the mainstream they may be.  Nor could his mere possession of a firearm in compliance with Home Depot rules.  Nor could interest in Mr. Hughes's military service, a desire to write a book, distress at an undelivered package, or FBI paranoia provide probable cause.  The source of the intelligence bulletin that directed Officer Hooley to arrest Mr. Alazhari was Mr. Hughes, but Mr. Hughes described no crime at all.

Nor could any other information gathered by the police have provided probable cause.  The intelligence bulletin stated that Home Depot "forced" Mr. Alazhari into the CARE program.  But as the FBI well knew, since it had wiretapped the call from Mr. Rojas to Mr. Alazhari, Home Depot offered to place Mr. Alazhari in the CARE program so that he could have some paid leave and seek mental health

15

treatment, an arrangement Mr. Alazhari agreed to and was thankful for. And, in any event, Home Depot decided to place Mr. Alazhari in the CARE program because *the FBI told them* of some unspecified information demonstrating that he was a "threat" to his co-workers. The FBI cannot create its own probable cause. Last, the intelligence bulletin stated that Mr. Alazhari "was told not to return to Home Depot until he is contacted by a Home Depot supervisor." But again, as the FBI well knew because it listened to the phone call between Mr. Rojas and Mr. Alazhari, Mr. Alazhari was told no such thing. He agreed to take an administrative leave of absence, and so was taken off the work calendar, but he was not told he may not return to the building – as the post-arrest trespass warnings indicate.

Thus, Officer Hooley arrested Mr. Alazhari on the basis of the intelligence bulletin, which itself was based on the interview of Mr. Hughes and Detective Rego's false or misleading characterizations of the evidence. But even accepting every word of the intelligence bulletin as fair and true, it alleged no crime. Accordingly, Officer Hooley arrested Mr. Alazhari without probable cause.

## II.  Even if Officer Hooley did not arrest Mr. Alazhari before discovering the mouse gun, he conducted an unlawful stop-and-frisk.

Officer Hooley lacked reasonable suspicion to stop Mr. Alazhari for many of the same reasons he lacked probable cause. But even assuming the initial stop of Mr. Alazhari was justified, the search of his pocket was not.

A.  <u>Officer Hooley lacked reasonable suspicion to stop Mr. Alazhari.</u>

"Reasonable suspicion requires more than a hunch; it requires that the totality of the circumstances create, at least, some minimal level of objective justification for the belief that the person engaged in unlawful conduct."  *Blackman*, 66 F.3d at 1576. The police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Officer Hooley lacked reasonable suspicion to detain Mr. Alazhari under *Terry* for the same reasons he lacked probable cause.  That is, the "specific and articulable facts" to which Officer Hooley could point, along with any rational inferences from those facts, provided no "objective justification for the belief" that Mr. Alazhari was then committing or about to commit some crime as he casually strolled into Home Depot to shop.  The interview of Mr. Hughes provided no such evidence, and the intelligence bulletin was based on the Hughes interview.  Officer Hooley therefore lacked any basis to detain Mr. Alazhari on sight, despite the intelligence bulletin's direction to do so.

B.  <u>Officer Hooley lacked reasonable suspicion to frisk Mr. Alazhari.</u>

> When an officer reasonably believes that a suspect threatens his safety or the safety of others, he may search the suspect and seize concealed objects that he reasonably believes may be weapons or other instruments of assault.  *See Terry*, 392 U.S. at 27.  To frisk a suspect, an officer "conduct[s] a carefully

17

> limited search of the outer clothing of [the suspect] . . . to discover weapons which might be used to assault him." *Id.* at 30. And if an officer "feels a concealed object that he reasonably believes may be a weapon," he may continue the search beyond the outer clothing "by searching [the suspect's] pocket" and removing the concealed object. [*United States v. Clay*, 483 F.3d 739, 743-44 (11th Cir. 2007)].

*United States v. Johnson*, 921 F.3d 991, 997 (11th Cir.) (en banc), *cert. denied*, 140 S. Ct. 376, 205 L. Ed. 2d 215 (2019).[6] An officer who performs a *Terry* stop can frisk the subject for safety reasons only: "The sole justification of the search of a suspect is the protection of the police officer and others nearby." *Id.* Evidentiary searches are not authorized under *Terry*. *Id.* at 999. Officers may "not use the frisk to gather evidence." *Id. Terry* requires the officer to have a reasonable suspicion that the suspect is armed *and* dangerous. *See Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015) (citing *Sibron v. New York*, 392 U.S. 40, 64 (1968)); *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015).

---

[6] *Johnson* relied on *Clay* for the proposition that an officer may search inside a person's pocket for a *weapon* on no more than reasonable suspicion. But *Terry* only authorized "a carefully limited search of the *outer clothing* . . . ." *See Terry*, 392 U.S. at 30 (emphasis added). And the Supreme Court has since made clear that it is the "plain feel" doctrine that allows an officer to search the interior of a person's pocket when the limited *Terry* pat-down indicates an item subject to seizure is in the pocket. *See Minnesota v. Dickerson*, 508 U.S. 366, 377-79 (1993) (involving a search of a pocket for drugs following an authorized *Terry* pat-down). A search conducted under the plain-feel exception to the warrant rule requires probable cause, not merely reasonable suspicion. *See id. Clay* was therefore wrongly decided, and this Court should require the Government to show that Officer Hooley had probable cause, not just reasonable suspicion, that the object in Mr. Alazhari's pocket was a weapon. However, *Clay* is binding on this Court.

18

Officer Hooley lacked reasonable suspicion, whether judged at the time of the pat-down of the outside of Mr. Alazhari's pocket or at the time of his search of the interior of his pocket.  As to whether Mr. Alazhari was "armed," at the point of the initial seizure, the articulable facts within Officer Hooley's knowledge were the same as those that inform the probable cause and reasonable suspicion analyses for the initial seizure:  he knew of the intelligence bulletin.  The intelligence bulletin was prepared by Detective Rego and based on the FBI's interview of Mr. Hughes, who said that Mr. Alazhari had a pistol, but that he kept it in his car.

After seizing Mr. Alazhari, Officer Hooley immediately conducted a pat-down of his waistband, where he believed weapons are most often kept, finding nothing.[7] Next, Officer Hooley claims he saw a "bulge" in Mr. Alazhari's pocket, which we now know was created by the mouse gun.  The unique shape and small size of the mouse gun are such that whatever bulge it created in Mr. Alazhari's loose-fitting shorts could not have provided Officer Hooley reasonable suspicion that the item was a weapon.  Instead, Officer Hooley acted on the "hunch" prohibited by *Terry* in touching the bulge.  His doing so violated the Fourth Amendment.

---

[7] The lawfulness of Officer Hooley's pat-down of Mr. Alazhari's waistband is doubtful, but this search turned up no evidence.

Nor did this pat-down provide Officer Hooley with reasonable suspicion to continue the search by reaching into Mr. Alazhari's pocket.  Officer Hooley claims that he "immediately recognized a solid object with rounded edges resembling a closed pocket knife or small firearm." (Exh. 5, p. 14).  But a gun is not a knife and a knife is not a gun, and one does not feel like the other.  It is simply implausible that Officer Hooley felt through the cloth of the pocket in the limited manner authorized by *Terry* and "immediately" determined that what he felt was a gun *or* a knife.  Lacking reasonable suspicion that the ambiguous bulge was a weapon, his search of Mr. Alazhari's pocket was unlawful.

As to whether Mr. Alazhari was "dangerous," Officer Hooley similarly lacked reasonable suspicion.  Again, before encountering Mr. Alazhari in the parking lot, all Officer Hooley knew of was the intelligence bulletin, and that alleged no crime.  By the time of Officer Hooley's touching of the "bulge" and search of Mr. Alazhari's pocket, Mr. Alazhari had his arms handcuffed behind his back and had been fully compliant during Officer Hooley's seizure of him.  *Cf. Leo*, 792 F.3d at 750 (holding that officers lacked reasonable suspicion to search the defendant's backpack after he had been handcuffed and frisked, and the officer took control of the backpack).  Officer Hooley thus lacked reasonable suspicion that the handcuffed Mr. Alazhari then posed a safety threat to him or others.  *See id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 115 (1984)) ("The reasonableness of a search is evaluated 'on the basis

20

of the facts as they existed at the time' of the search.").  The search was therefore unlawful.

## III.  All evidence the Government obtained as a result of the unlawful seizure or search should be suppressed.

All evidence derived from the unlawful arrest, including the mouse gun, the post-arrest statements, the fruits of the warrantless car and cell phone searches, and any follow-on surveillance, must be suppressed as the tainted fruit of a poisonous tree. "In determining whether evidence is tainted by a prior violation of constitutional rights, [courts] ask 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (quoting *United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007)). Courts consider three non-exhaustive factors in answering that question:  (1) the temporal proximity of the illegal police conduct and their obtaining the challenged evidence, (2) the presence of intervening circumstances, and, particularly, (3) the purpose and flagrancy of the official misconduct.  *See United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007) (citing *United States v. Santa*, 236 F.3d 662, 677 (11th Cir. 2000)).  The burden is on the Government.  *See id*. at 1308 (citing *United*

*States v. Robinson*, 625 F.2d 1211, 1219 (5th Cir. 1980)); *Brown v. Illinois*, 422 U.S. 590, 604 (1975).

Here, the mouse gun and Mr. Alazhari's statement were directly derived from Officer Hooley's arrest of Mr. Alazhari. So too were the surreptitious searches of Mr. Alazhari's cell phone and car. Assuming the Government conducted these searches pursuant to a FISA authorization,[8] Mr. Alazhari's arrest enabled the Government to execute the searches surreptitiously. FISA may grant the Government broad search and surveillance powers, but it does not suspend the Fourth Amendment to allow the Government to arrest a person without probable cause in order to conduct the FISA-authorized search surreptitiously.

Outside of these items, this Court should require the Government to prove that any other evidence it seeks to admit was *not* derived from the unlawful seizure and search – including any follow-on surveillance conducted under FISA or otherwise. The burden is on the Government to prove that evidence derived from an unlawful search is subject to some exception to the exclusionary rule under *Delancy* and *Brown*. Without any access to the classified material under CIPA, the Defense cannot specifically identify any particular item of evidence that was derived from

---

[8] And assume the Defense must, since the Court has denied it access to any of the classified material under CIPA. If the warrantless cell phone or car searches were not conducted pursuant to a FISA authorization, their illegality is plain under *Riley* and *Gant*.

Officer Hooley's unlawful actions.  In these circumstances, it should be the Government's burden to show that any of its evidence was not so derived.  *See United States v. Muhtorov*, 20 F.4th 558, 674-75 & n.22 (10th Cir. 2021) (Lucero, J., dissenting) ("Any other approach would make a mockery of our criminal justice system.  We cannot require a defendant to specifically challenge the use of certain evidence when he does not have access to that very evidence to investigate its origins fully or to test its admissibility.").

Strong evidence suggests that Officer Hooley's unlawful actions paved the way for the Government to conduct multiple forms of follow-on surveillance.  The unclassified discovery supports the inference that the audio surveillance was either the result of spyware installed on Mr. Alazhari's phone, or multiple stationary bugs, including one in his car.  The FBI was able to collect audio surveillance of Mr. Alazhari while he was in his car and in his home.  Whether that is because the FBI installed bugs in both places or because it activated the phone's microphone, the Government's ability to engage in this surveillance is directly attributable to Officer Hooley's unlawful actions.  While Mr. Alazhari sat detained in the Hillsborough County jail, having been unlawfully arrested by Officer Hooley, the FBI accessed his phone and his car.  One or both of those activities allowed for the follow-on audio surveillance.

23

Further, the FBI's surreptitious access to Mr. Alazhari's phone may have allowed for any manner of follow-on surveillance, through the use of spyware or otherwise.  The GrayKey download of the phone's Keychain could have allowed for a rather low-tech form of surveillance – the FBI had his passwords, and so could have logged-in to his accounts.

Lastly, evidence obtained from any investigative decision *inspired by* information derived from the unlawful arrest should be suppressed.  For example, if the Government sought a search warrant or a new FISA order after the unlawful arrest, for the fruits to be admissible, the Government would have to show (1) the information learned because of Mr. Alazhari's unlawful detention played no part in the issuance of the warrant or order, and (2) the information learned because of Mr. Alazhari's unlawful detention played no part in the *decision to seek* the surveillance order.  *Cf. United States v. Noriega*, 676 F.3d 1252, 1260-61 (11th Cir. 2012) (applying this test to a search warrant applied for after an illegal search); *see also Muhtorov*, 20 F.4th at 677-78 (Lucero, J., dissenting) (noting that the derivative-evidence question turns not only on whether the unlawfully obtained evidence was used in an application for a FISA order, but also on whether the agents decided to apply for such an order because of the unlawfully obtained evidence).

This Court should rule on whether Officer Hooley's seizure of Mr. Alazhari and search of his pocket was unlawful.  If it was unlawful, this Court should hold a

24

hearing and require the Government to prove what of its evidence, if any, was not derived from Officer Hooley's unlawful actions.

**WHEREFORE** Defendant, Mr. Alazhari, prays this Court will suppress any evidence derived from the unlawful seizure and pocket search.  Alternatively, Mr. Alazhari prays this Court will suppress the fruits of the warrantless cell phone and car searches as violative of the Fourth Amendment in their own right.

DATED this 18th day of January 2022.

Respectfully submitted,

A. FITZGERALD HALL, ESQUIRE
FEDERAL DEFENDER

*/s Samuel E. Landes*
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone:   (813) 228-2715
Email:  Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th of January 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA Patrick Scruggs.

*/s Samuel E. Landes*
Samuel E. Landes, Esq.

25

# DEFENSE

# EXHIBIT 1

FD-302 (Rev. 5-8-10)

-1 of 2-

## FEDERAL BUREAU OF INVESTIGATION

Date of entry        04/23/2020

Roberto Rojas,                          , was interviewed at an offsite location
near the intersection of North Florida Avenue and West Sligh Avenue in
Tampa, Florida. The interview took place at approximately 1135 hours on 17
April 2020. After being advised of the identity of Task Force Officer (TFO)
Dave Wawrzynski and TFO Bryan Campagnano and the nature of the interview,
Rojas provided the following information:

Rojas advised he is the Manager of the Home Depot located at 8815 N. Florida
Avenue in Tampa, Florida. Rojas was shown a known photograph of
Muhammed Momtaz Alazhari. Rojas advised he knew Alazhari and that
Alazhari was employed at his Home Depot location. Rojas stated Alazhari is
an overnight freight employee and is full time.

Rojas stated he would provide a copy of the pending work schedule for
Alazhari. He stated he thought Alazhari was a good worker and they had
spoken to each other several times.

Rojas added Alazhari had asked him, approximately 3-4 weeks ago, if he could
help Alazhari obtain a lawyer. According to Rojas, Home Depot does have a
program to assist employees with legal needs. Based upon that he asked
Alazhari what kind of a lawyer he was looking for and Alazhari stated he
wanted to sue his former country. Rojas thought that country might be
Israel but he wasn't sure.

Alazhari had explained he had been tortured by the government and he wanted
people to know about it. Alazhari had explained it was when he was a kid and
with his father. Rojas stated he advised Alazhari he could not recommend
anyone for that issue as that wasn't what the legal program was intended to



| Investigation on | 04/17/2020 | at | Tampa, Florida, United States (In Person) | |
|---|---|---|---|---|
| File # | | | | Date drafted   04/21/2020 |
| by | WAWRZYNSKI DAVID | | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 3-8-10)

Continuation of FD-302 of _____ Interview of Roberto Rojas _____ , On 04/17/2020 , Page 2 of 2

help employees with.

Rojas added Alazhari had requested an area where he could pray in private while at work. Rojas stated he was able to secure a room and that Muhammed did utilize the room daily. He stated another employee would also use the room to pray and he thought that employee's name was also Mohammed.

# DEFENSE

# EXHIBIT 2

FD-302 (Rev. 5-8-10)

# FEDERAL BUREAU OF INVESTIGATION

Date of entry    05/05/2020

Kyle Hughes, date of birth ▮▮▮▮▮ social security number ▮▮▮▮-
▮▮, of ▮▮▮▮▮▮▮▮, a shift manager at Home Depot,
located 8815 N Florida Ave, Tampa, FL was interviewed at outside of Dunkin
Donuts located at 222 W Waters Ave, Tampa, FL. After being advised of the
identities of the interviewing agents, Hughes provided the following
information:

Hughes supervises the overnight shift employees at the Home Depot located at
8815 N Florida Ave, Tampa, FL and had worked for Home Depot for
approximately 13 years. Hughes supervises Muhammad Alazhari and
approximately 40 other overnight employees. Hughes recalled Alazhari telling
his co-workers that the deceased was now "burning in hellfire." The week
prior, one of his employees overdosed. Many of the other employees were
friends with the deceased and Hughes told Alazhari to keep his thoughts to
himself, as the others are mourning the loss of their friend.

Muhammed often spoke of Islam at work and Hughes described Muhammed to be
passionately aggressive in his Islamic views. Hughes recalled Muhammed
speaking about the attacks of 9/11 and how Americans got what they deserved
that day. Hughes overhead another co-worker once ask Muhammed about jihad
was and Muhammed explaining that it was about defending Islam.

Muhammed told Hughes that he wanted to write a book and that he wanted
Hughes to have a part in the book.

Hughes was an Army veteran who deployed to Iraq and was stationed as a guard
at Abu Ghraib prison. Muhammed took a strong interest in Hughes service, to
include his time working at the prison. Muhammed liked to talk to Hughes
about his military service and asked him questions. There were at least two
other veterans Hughes could recall who worked the night shift with Muhammed;
Reggie Last Name Unknown and Melvin Eagle.

---

Investigation on   04/24/2020   at   Tampa, Florida, United States (In Person)

File # ▮▮▮▮▮▮▮       Date drafted   04/26/2020

by   MELISSA MCMULLEN FAIR, DONNELLY THOMAS, CAMPAGNANO BRIAN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

DISC-01720

Continuation of FD-302 of ___Kyle Hughes_____ , On 04/24/2020 , Page 2 of 3

Muhammed possesses a black, nine-millimeter handgun in which he always has
with him in the car's center console. Muhammed was not allowed to bring a
weapon inside Home Depot. Muhammed showed Hughes his handgun approximately 2
weeks prior one night while on a break. Muhammed said he bought it off the
street and was trying to get another gun. Muhammed asked Hughes if he or his
girlfriend would sell him [Muhammed] a gun. Hughes told Muhammed he did not
have a gun, his girlfriend did, but they ultimately did not sell Muhammed a
gun. Muhammed asked multiple other Home Depot employees who worked with him
on the night shift to sell him a gun. Hughes was not aware of anyone from
Home Depot who sold Muhammed a gun.

Hughes described Muhammed as paranoid. Muhammed's paranoia appeared to spike
within the last week. Hughes recalled Muhammed asking him if the FBI had
been into Home Depot and if Hughes had spoken to them.

On 23 April 2020, Muhammed arrived at work at approximately 7:00pm. Muhammed
told Hughes that he was disappointed that evening and asked if he could take
his break between 11:00pm and 12:00am. Muhammed's lunch break was normally
between 1:00am and 2:00am. Muhammed was acting secretive and upset, and told
Hughes he was supposed to have a package delivered to his house, but it
ultimately ended up getting returned to the sender. Muhammed said he needed
to go back to his house and pick something up. Hughes did not see Muhammed
leave with anyone else for that break, nor did he know of any other employee
on break at that time. Muhammed returned to work at approximately 12:00am.

At approximately 1:00am, Muhammed noticed the presence of a few police
vehicles parked outside the Home Depot. Muhammed became anxious, acting
concerned and constantly looked out the front window/doors to observe the
police. Muhammed told Hughes he had needed to go home. Prior to him leaving,
Muhammed provided Hughes two names and numbers to put in his phone; Hassan
Shibly 813-541-4321 and Omar Saleh 954-305-5454. Muhammed told Hughes to
call one of them if he got arrested when leaving. Muhammed left Home Depot
before his shift was completed.

Hughes had only seen Muhammed with one iPhone and did not know him to use
any telephone applications. Hughes did not communicate with Muhammed outside
of work, other than for work purposes.

Hughes was advised to contact the FBI if Muhammed attempted to contact him

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of ▮▮▮ Kyle Hughes _____ , On  04/24/2020  , Page  3 of 3

and to keep clear of Muhammed.

no talk [illegible] the [illegible]

2 [illegible] above

↓

work 3 day week

☆

↓ Carrys handgun in car

→ ask if GF would sell gun

blk gun

bought off Street —

showed 2 weeks ago —

~~[illegible]~~ center console —

planned.

had asked —

Mushand

1 phone - no appr aware of

n/ Am police

Hassan Shibly

813-541-4321

Omar Salah

954-30 33-454

it right

it he got arrested

→ call

27
Stuck pass
Alan 4 years

trying to get another gun
- disappeared last night
11-12 early [illegible]
- secretive

secretive

- package delivered to house
↓
returned to sender

4411 E 24th Ave
33605.

↓
called / go to post office

↓
upset

↓ pissed w/ something
w/ secrets

Army

(1) Reggie ______

(2) Melvin Eagle
Marine Corps

Monday

Self defense
defense set
in altar

Seen Spike this week

134 [illegible]

TDCC

DISC-01726

# DEFENSE

# EXHIBIT 3

8133999993

| | | OFFICE: | AT-TP | DATE: | 2020/05/07 |
|---|---|---|---|---|---|
| LINEID: | 8133999993 | SOURCE: | 1656352.CT17 | LANGUAGE: | Undefined |
| START DATE: | 2020/04/24 | TIME: | 21:11:56 UTC | DAY: | Friday |
| DURATION: | 00:11:21 | ▓▓▓▓ | ▓▓▓▓▓▓ | DIRECTION: | IN |
| PARTICIPANTS | From: 3056136365 , To: 8133999993 | | | | |
| RE: | Call from Robert about Home Depot Care and Going on Leave | | | | |

Incoming call from ▓▓▓▓▓▓ (Robert, Home Depot Store Manager).

Robert asks if he has a minute to talk and MA says "Yes sir". Robert beings to tell MA that he spoke with Kyle and that Kyle told him MA was worried about some things and if everything was ok with him.

MA begins to tell him that he is a former "political detainee" in Saudi Arabia and that he did 8 months over there and was tortured very badly for 2 years. MA states he ended up signing the papers they(Saudis) wanted him saying that he did "so and so" and he did this because of the pressure and torture. As a result of this he was interviewed by the FBI here and in Saudi Arabia multiple times. MA goes on to state that because he signed the papers they (FBI) keep harassing his sister and brother-in-law and they(FBI) do not talk to him because he told them he has nothing to talk about and if they want to talk to him they can talk to his lawyer. MA is afraid that the Saudi's told the FBI something and he has a bunch of lawyers that he has contacted over time. Robert tells him "ok" and begins to talk about Home Depot Care Solutions and that they would not give him help with attorneys to sue his country. MA interrupts him and tells him "that is not my country and that he is not from Saudi Arabia". Robert states that he knew he was not from Syria but, that he thought he was trying to sue Syria and that he knew he was taking legal action against the country that tortured him which he assumed was Syria and that he did not know about Saudi Arabia.

Robert goes on to tell him that they do offer assistance with the anxiety and concerns he is having and that is the help he wants to be able to offer MA. Home Depot has Care Solutions and he is referring MA to Care Solutions so that he is able to get some assistance and that he is paid while he is out with Care Solutions until MA is able to speak to a counselor and until they say that MA is "good to go" and that they talked through the issues. Robert goes on to assure that MA will be paid through his time off and that his job is not in jeopardy at all.

Robert then asks MA what he thinks about referring him and that MA would not go into the store and that he would get paid for the time that he is out of the store and with Care Solutions. MA responds that it sounds very good but, is it going to affect his employment with Home Depot . Robert re-affirms that MA's employment is "not in danger" and that he will not lose his job and that he is still going to have a job and that Care Solutions is there to provide assistance. Robert then re-affirms again that his "job is not in jeopardy" and that he will be paid while he is out and that he will still get a pay check for the days he would have worked. MA responds that now he understands. Robert begins to plan a call with Care Solutions for Monday morning and that he would stay on the for the first part of the call and that what MA and Care Solutions talk about was confidential. Robert will be on the call to provide some "personal information" about MA like his associate ID, that Robert is his store manager, his name, and that he is refereing him to Care Solutions. Robert asks if they can do that on Monday around 11am to set it up.

MA responds, "yeah absolutely" and that he has two lawyers that work with CAIR and that he thinks they are a different Care and that their offices are located down on 56th. They discuss if MA was scheduled today and that he should not go in to work. Robert says that he will be paid for today and the next couple of days he was supposed to work. Robert advises he will call MA and then call Care Solutions and make the transfer there. MA ask if he will have to use sick leave and Robert responds "no" and that the store is paying MA for this and that his sick leave and vacation will not be

touched.

MA beings to tell Robert that there is a "guy" that is "Moroccan" and a US citizen that saw him working , pulling pallets, and he approached MA and begins speaking Spanish . MA tells the guy that he does not speak Spanish that he is Arabic. The man then asks him where he is from and MA tells him Syria. MA then recognizes that he is Arabic too because of his accent. The man beings to ask him if he is looking from some extra hours, a second job, and MA tells him "sure, ok" and it turns out he owns a Boost Mobile Franchise. They exchange phone numbers and he goes to his shop and that he is either an FBI agent or he is an informer  because MA goes to the shop and then back to his office and starts asking him some very weird questions that is related to his case in Saudi Arabia. Robert inquires if this is an employee or customer and MA responds a customer.  MA states that he was very weird. MA worked there for one week and that from the time he brought him back into his office MA was like "oh my god" why are you asking me these "weird ass questions" and he ended up having an argument with him and he told him to "fuck off" and he left the store and thought he was an FBI agent.

Robert begins to laugh and states "wow".  MA states that what the FBI did to him in Saudi Arabia was totally unlawful and that him and his lawyers are trying to work on suing them because they interrogated him in a foreign country without offering him a lawyer and without identifying themselves. They told him they were American officials and when he went back to California and the FBI talked to him again he asked them who talked to him in Saudi Arabia and they told him FBI. MA told them in Saudi Arabia that he could not "talk everything" and could not explain everything because he was afraid that once they were gone they (Saudis) would take him back to torture.

Robert responds "sorry man" and that he believes Care Solutions would help, to stay home and that he would call him at 11am on Monday. MA finishes by saying he really appreciates Roberts help.

# DEFENSE EXHIBIT 4

FD-302 (Rev. 5-8-10)

- 1 of 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___05/04/2020___

On 24 April 2020, Michael Merritt, The Home Depot - Senior Director of Corporate Security, telephone number          , was interviewed via telephone. After being advised of the identity of the interviewing Agent and the nature of the interview, Merritt provided the following information:

On 24 April 2020, The Home Depot placed Muhammed Alazhari on a form of paid administrative leave for two weeks and enrolled Alazhari in The Home Depot sponsored Employee Assistance Program called the "CARE" program, due to his erratic and suspicious behavior. The Home Depot instructed Alazhari not to travel to the N. Florida Ave Home Depot during his administrative leave period. Based on Alazhari's conduct, the FBI provided information to The Home Depot management regarding Alazhari's threat to his co-workers. Based on information provided by the FBI, The Home Depot contacted the Tampa Police Department (TPD) requesting continued police presence outside The Home Depot to prevent Alazhari from entering the premises.

Merritt is available for recontact.

| | | | |
|---|---|---|---|
| Investigation on | 04/24/2020 | at | Tampa, Florida, United States (Phone) |

File #                                         Date drafted   05/04/2020

by   DONNELLY THOMAS

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# DEFENSE

# EXHIBIT 5

FD-1057 (Rev. 5-8-10)

# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** ▮ Tampa Police Department Arrest Report     **Date:** 05/07/2020

▮ ▮

**From:** TAMPA
▮ ▮ ▮

▮ ▮

**Drafted By:** ASHLEY KAKAREKA

**Case ID #:** ▮

**Synopsis:** ▮ To document Tampa Police Department report pertaining to Alazhari's arrest on 1 May 2020.

▮

**Reference:** ▮

**Enclosure(s):** Enclosed are the following items:
1. ▮ TPD Report

**Details:**

On 5 May 2020, TFO Charlie George provided case agents a copy of the Tampa Police Department report pertaining to Muhammed Alazhari's arrest on 1 May 2020. The arrest occurred at approximately 7:50AM at Home Depot, 8815 N Florida Ave, Tampa, FL.

▮

DISC-02467

Title:  (U) Tampa Police Department Arrest Report
Re:  ███████████████, 05/07/2020


The offense listed on the report is Carrying Concealed Firearm (CCF).
Information pertaining to the arrest is detailed as follows:

The defendant was taken into custody while attempting to enter Home Depot
(8815 Florida Av N). He was the subject of an intelligence bulletin and
flagged as armed and dangerous, to be detained immediately. After being
taken into custody a concealed firearm was located in his right front
pocket.

For complete details, please refer to the report, which is attached
herein.




2

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |

## General Offense Information

Operational status: **ARREST -PATROL**
Reported on: **May-01-2020 (Fri.) 839**
Occurred on: **May-01-2020 (Fri.) 839**
Approved on: **May-05-2020 (Tue.)** by: **45166 - PECORA, FELICIA A**
Report submitted by: **71850 - KEITH, HOOLEY**
Org unit: **Squad 208**
Accompanied by: **49625 - DALEY, NEAL C**
Address: **8815 FLORIDA AV N**
      Place: **HOME DEPOT**
      Municipality: **TAMPA**
      District: **2**   Beat: **D2**   Grid: **28**
Felony/Misdemeanor: **FELONY**
Special study: **Not Applicable**
Family violence: **No**

## Offenses (Completed/Attempted)

Offense: # **1**   **5200-42   CARRY CONCEALED FIREARM (CCF) - COMPLETED**
Location: **Specialty Store**
Offender suspected of using: **Not Applicable**
Criminal activity: **None / Unknown**
Bias: **None (no bias)**

DISC-02469

# Related Attachment(s) - Property Record (Evidence)

Attachment Description:
Reference Number:

DISC-02470

# Related Attachment(s) - Firearms Entry Form

Attachment Description: **20-219154/PKG:1/TAGS:1,2**
Reference Number: **1702824**

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |

# <u>Related Attachment(s) - Trespass Warning</u>

Attachment Description:
Reference Number:

DISC-02472

# Related Attachment(s) - Property Record (Evidence)

Attachment Description:
Reference Number:

DISC-02473

DISC-02474

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154  ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |
|---|---|

# Related Event(s)

CP        2020-219154

# Related Person(s)

## 1. DEFENDANT # 1 - ALAZHARI, MUHAMMED MOMTAZ

### (Case Specific Information)

Sex: **MALE**
Race: **WHITE**
Date of birth: **Feb-18-1997**
Address: **3003 SPILLERS AV E**   Apartment: **B**
         Municipality: **TAMPA** , **Florida   33619**

**Phone Numbers**
    Cellular:  **(813)  399-9993**

### Particulars

Place of birth: **California**
Employer: **HOME DEPOT   8815 FLORIDA AV N**
Ethnicity: **Other**
Language(s) spoken: **English**
Height: **6'02** Weight: **160** lbs.
Build: **Medium**   Complexion: **LIGHT**
Handed: **Right Handed**
Eye color: **BROWN**
Hair color: **BLACK**
Hair style: **Short Length**
Facial hair color: **Black**
Facial hair style: **Beard Small Goatee**
Additional remarks: **CONTACT CIB DET GEORGE OR CAMPAGNANO IF CONTACT IS MADE**

### Master Name Index Reference

Name: **ALAZHARI, MUHAMMED  MOMTAZ**
Sex: **MALE**
Race: **WHITE**
Date of birth: **Feb-18-1997**
Ethnicity: **Other**
Address: **3003 SPILLERS AV E**   Apartment: **B**
         Municipality: **TAMPA** , **Florida   33619**
**Phone numbers**
Cellular: **(813)  399-9993**

### Linkage factors

Resident status : **City (Tampa)**
Age range : **22-29 Years**
Access to firearm : **Yes**

DISC-02475

Armed stats : **AT TIME OF ARREST**
Offense: **5200- 42  CARRY CONCEALED FIREARM (CCF)  - COMPLETED**
Arrest date: **May-01-2020  (Fri.)**
Arrest type: **Taken into Custody/Booked**

## Use of Force Details

Date occured: **May-01-2020  (Fri.)**
Location: **8815 FLORIDA AV N**
Nature of contact: **Arrest**
Reason: **Necessary to Effect Arrest**
Subject's conduct:
        **Compliance**
Subject's resistance:
        **Compliance**
Level of force or control used:
        **Handcuffs**
**Effects of force used:**
On subject:
        **No Visible Injury, No Complaint of Injury, No Medical Attention Required**
Rendered unconscious: **No**
Injury photographed: **No**
On police:
        **No Visible Injury, No Complaint of Injury, No Medical Attention Required**
**Officers involved**
Reporting officer: **71850 - KEITH, HOOLEY**
Date reported: **May-01-2020  (Fri.)**
Responded: **No**

## 2.  OTHER # 1 - FARIA, REEM AMADO

### Master Name Index Reference

Sex: **MALE**
Race: **WHITE**
Date of birth: **Jul-29-1974**
Ethnicity: **USA**
Address: **19212 CLIMBING ASTER DR**
        Municipality: **TAMPA    , Florida** County: **Pinellas   33647**
        District: **2**  Beat:    Grid: **262**
**Phone numbers**
Home: **(813)  440-7663**
Cellular: **(813)  440-7663**
Business: **(813)  237-3100**

### Particulars

Place of birth: **Michigan**
Occupation: **OWNER**
Employer: **AUTO LEASING   5018 NORTH 22ND STREET**

DISC-02476

Marital status: **Married**
Ethnicity: **USA**
Language(s) spoken: **English**
Height: **5'10** Weight: **170** lbs.
Build: **Medium**   Complexion: **MEDIUM**
Eye color: **BROWN**
Hair color: **BLACK**

### Alias(es)/AKA

| Name: | Address: | Sex: | DOB: |
|---|---|---|---|
| **FARIA, REMO** | | **M** | **Jul-29-1974** |
| **RAID, RANDY** | | **M** | **Jul-29-1974** |
| **FARIA, REEM AMADO** | | **M** | **Jul-29-1978** |

### Linkage factors

Resident status : **City (Tampa)**
Age range : **30-49 Years**

## Related Business(es)

### 1.  PREMISE # 1 - HOME DEPOT

Address: **8815 N FLORIDA AVE**
         Place: **HOME DEPOT**
         Municipality: **TAMPA , Florida  33619**
         District: **2**  Beat:   Grid: **28**
Phone number:  **(813) 933-0302**
Type: **Department Stores**

### Particulars

Security: **Yes**

| | Contact Name | Affiliation | Phone Numbers |
|---|---|---|---|
| Contact # 1: | **FREDDY RIVAS** | **LOSS PREVENTION** | **(813) 464-4884** |
| Contact # 2: | **FRANCES GARCIA** | **LOSS PREVENTION** | **(813) 340-9148** |
| Contact # 3: | **JUSTIN SILVESTRO** | **LOSS PREVENTION** | **(813) 255-3478** |

DISC-02477

**GENERAL OFFENSE HARDCOPY**

GO# 2020-219154 ARREST -PATROL                    5200-42 CARRY CONCEALED FIREARM (CCF)

## Related Text Page(s)

Document: **CASE SUMMARY**
Author: **71850 - KEITH, HOOLEY**
Related date/time: **May-01-2020  (Fri.) 1050**

The defendant was taken into custody while attempting to enter Home Depot
(8815 Florida Av N). He was the subject of an intelligence bulletin and flagged
as armed and dangerous, to be detained immediately. After being taken into
custody a concealed firearm was located in his right front pocket. CIB was
contacted and responded.

District Two command staff was notified.

DISC-02478

**GENERAL OFFENSE HARDCOPY**

**GO# 2020-219154 ARREST -PATROL**              **5200-42 CARRY CONCEALED FIREARM (CCF)**

## Related Text Page(s)

Document: **INITIAL REPORT**
Author: **71850 - KEITH, HOOLEY**
Related date/time: **May-01-2020  (Fri.) 1053**

On 5-1-20 at approximately 0740 hours I was working in an off duty capacity
at Home Depot (8815 Florida Av N). Units were hired to be on site due to a
disgruntled employee (defendant) whom had been furloughed recently. I was in
full police class B uniform with badge and TPD insignia on both sleeves. The
defendant was not to return to the business per management; and an intelligence
bulletin had been disseminated flagging him as armed and dangerous, to be
detained upon sight. The bulletin provided all pertinent information to
include DOB, race, sex, height, weight, and vehicle information, as well as a
photograph.

Upon my initial arrival at 0700, I positioned myself at the South entrance
of the business, parking my vehicle directly adjacent to the entry doors. My
vehicle was facing South toward the Yukon St E parking lot entrance, with the
business entrance on my left and the parking lot on my right. At approximately
0740 hours, I was seated in my marked City of Tampa patrol vehicle with my
driver door open. I was reviewing the aforementioned bulletin and transcribing
the information to my notepad. While doing this, I observed the defendant in
the parking lot walking from his vehicle which had just parked. I turned my
attention to him and observed him staring in the direction of my vehicle. As
he walked closer to the business, I observed that he appeared to match the
information from the intelligence bulletin, primarily the photograph. The
defendant continued toward the business and as he got closer, approximately
15-20ft away, I exited my vehicle. The defendant was wearing a black hooded
sweatshirt, dark blue baggy cargo shorts, and a tan hat.

I recognized the defendant as matching the photograph disseminated in the
intelligence bulletin. His hair had been cut short, as it was long in the
photo, but he had similar facial hair and a prominent nose. I immediately asked
his name, at which time he hesitated to answer. The defendant was walking with
his hands at his sides and he did not appear to be holding anything. As he
walked toward the front entrance of the business, I approached and detained him
by grasping his left arm and bringing it to his back, subsequently handcuffing
him. I advised the defendant he was being detained for questioning and that he
was not under arrest at the time.

I quickly conducted a pat-down of his waistline, due to the proclivity for
individuals to conceal firearms in this area. After locating nothing along his
waistline, I escorted him to my patrol vehicle. I asked what why he was at the

DISC-02479

store and if a manager requested him to be there. He advised he was there to
buy some things. I radioed for the other off-duty unit to respond and assist
me. Once at my patrol vehicle, I asked the defendant if he had any weapons or
anything that might hurt me on his person, to which he gave an unintelligible
response. I observed a bulge in his right front shorts pocket and conducted
a pat-down starting at this area. Upon touching the outside of said pocket, I
immediately recognized a solid object with rounded edges resembling a closed
pocket knife or small firearm. I removed the item, which was a small silver
derringer style North American Arms .22cal revolver (S/N E093317). I did not
locate any other weapons or illicit contraband on the defendant's person.
However, I did locate a piece of paper with measurements and "blinds" written
on it in his front left sweatshirt pocket.

 MPO N. Daley, the second off duty officer, ran a computer check on the
defendant and requested dispatch to check for any active Concealed Weapons
Permits possessed by the defendant. These checks yielded negative results. See
supplement for further.

 After placing the defendant in the rear of my patrol vehicle, I was contacted
via phone by a CIB detective who advised he would be responding to interview
the defendant. DET T. Rego arrived and took possession of the firearm. He then
requested I transport the defendant to the D2 office to be interviewed. See
supplement for further.

 I transported the defendant to D2 and placed him in the holding area,
completing the necessary holding area paperwork. At no point did I ask him
any questions relating to the investigation, nor did he make any comments
pertaining to such. I was relieved by DET. Rego and subsequently returned to my
off duty position at the original location (Home Depot).

 No further action taken.

DISC-02480

# Related Text Page(s)

Document: **SUPPLEMENTAL**
Author: **44506 - REGO, TODD M**
Related date/time: **May-01-2020  (Fri.)**

### Supplement to CCF Investigation

On 04/29/2020, Det. Campagnano requested that I create an Intelligence Bulletin for Muhammed Alazhari and provided me with the following information. Mr. Alazhari is a current employee at the Home Depot located at 8815 N. Florida Ave. He has recently been exhibiting bizarre and erratic behavior. Mr. Alazhari has been expressing unhappiness with some Home Depot employees. He showed a fellow coworker a firearm that was located inside his 2001 bronze Infiniti 4 door vehicle with a Florida tag of LZIL68. He was at work at the time of this incident. He made some concerning comments to this coworker. Mr. Alazhari has been forced to enter into the Employee Assistance Program pending a mental evaluation. He was told not to return to work until he is contacted by the human resources department. I advised law enforcement to use caution if they come into contact with Mr. Alazhari and to consider him armed and dangerous. If contact is made at any Home Depot location, detain Mr. Alazhari and immediately contact CIB Detectives Campagnano, George or Rego. The Home Depot hired extra-duty Tampa Police officers for extra security at the store located at 8815 N. Florida Ave. as a precaution due to Mr. Alazhari's behavior.

On 05/01/2020 at 0752 hours, I was notified that Muhammed Alazhari was arrested at The Home Depot located at 8815 N. Florida Ave. I responded to The Home Depot and met with Ofc. H. Keith and Ofc. N. Daley. They were working in an off-duty capacity due to Mr. Alazhari's recent behavior at that Home Depot. I observed Mr. Alazhari in the backseat of Ofc. Keith's marked patrol vehicle which was parked directly in front of The Home Depot.

I spoke to Ofc. Keith about Mr. Alazhari's arrest. He advised he observed Mr. Alazhari walking toward the front door of The Home Depot. He detained him before he entered the store due to a recent intelligence bulletin that I had created about Mr. Alazhari. Ofc. Keith advised he located a loaded .22 caliber revolver on Mr. Alazhari and placed him under arrest for CCF. Ofc. Keith turned over all of Mr. Alazhari's property to me. He turned over a North American Arms .22 caliber 5 shot revolver S/N E093317, a wallet, Infinity car keys and an Apple cellular Iphone.

I met with Home Depot on-duty manager Rafael Villalba. I informed him of the details surrounding Mr. Alazhari's arrest. He seemed very shaken by this information. I asked him if I could get a copy of the security camera footage which may have captured the arrest. Mr. Villalba advised that he did not have access to the security cameras but he would have an employee named Kelly Harrington from The Home Depot corporate office contact me about my request.

Mr. Villalba requested that I complete a trespass warning for Mr. Alazhari for The Home Depot due to the circumstances. Mr. Villalba told Mr. Alazhari he was being trespassed from The Home Depot while he was still in the backseat of the marked police vehicle. This occurred in my presence. I completed a trespass warning (TPD

DISC-02481

form 709) and explained it to Mr. Alazhari. Mr. Alazhari asked me to ask Mr. Villalba if he was trespassed from all Home Depot locations or just this one and if he was fired. I asked Mr. Villalba these questions. Mr. Villalba informed me that he wanted him trespassed from all The Home Depot locations and that he had not been fired. I relayed this information to Mr. Alazhari. I placed a copy of the trespass notice in Mr. Alazhari's property.

I briefly spoke to Mr. Alazhari while he was in the backseat of a marked police vehicle. I asked him if he would give me consent to search his Infinity. Mr. Alazhari would not give me consent to search his vehicle.

I observed Mr. Alazhari's Infinity I30 legally parked in a parking space located on the southeast portion of The Home Depot lot. The vehicle was facing north and backed into a parking space. I confirmed the license plate number to be LZIL68. I looked through the closed windows from the exterior but did not see any visible firearms. I did observed two .22 caliber live rounds of ammunition inside the vehicle. One round was on the front passenger floorboard and the second round was located inside a driver's door pocket near the window controls.

I had Ofc. Keith transport Mr. Alazhari to the District Two holding cells so that I could conduct an interview with him.

I received a call from Kelly Harrington from (928)899-0178. He advised he would send me a link to The Home Depot video cameras so that I could review it.

I took digital photographs of Mr. Alazhari's vehicle while it was parked in The Home Depot parking lot.

I responded to the District Two station.

I took digital photographs of Mr. Alazhari's property and firearm. The photographs were later burned to a CD and placed into evidence.

I removed all the contents located inside Mr. Alazhari's wallet. I located a large amount of U.S. currency in the wallet. The money was divided in two separate bundles in the money pocket. The bills were as follows:
3 $100 bills=$300
1 $50 bill=$50
33 $20 bills=$660
1 $10 bill=$10
9 $1 bills=$9.
The total amount of currency was $1,029.

Mr.Alazhari had four forms of identification inside his wallet. He had a social security card (#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) Florida driver's license (#A426-553-97-058-0), a California identification card (#Y6912381) and a Kingdom of Saudi Arabia Ministry of Interior driving license (#2326453749).

The firearm was loaded with five live rounds of .22 caliber ammunition. I unloaded the firearm. I ran the firearm's serial number through FCIC/NCIC. The search came back no record found.

DISC-02482

I ran Mr. Alazhari's social security number in the Florida Concealed Weapons Permit query. The search came back no record found.

At 1117 hours, I responded to the District Two holding cell area and met with Mr. Alazhari. I conducted an interview with Mr. Alazhari while he was sitting in a District Two holding cell. The cell was locked but Mr. Alazhari was not handcuffed. This interview was audio recorded. The audio recording was later burned to a CD and placed into evidence. This is a brief synopsis of the interview. This is not meant to be a completed transcription of the interview.

I read him his Miranda rights from a card issued by the Hillsborough County State Attorney's Office. Mr. Alazhari stated he understood his rights and was willing to talk to me. He stated he has lived in Florida for about 11 months. He was born in California and has lived over seas in some Middle Eastern countries when he was younger. He stated he lives by himself at 3003 E. Spillers Ave. unit B. He has worked at The Home Depot since August 15, 2019. He is a freight associate. He is currently on leave for counseling from The Home Depot. He advised he was tortured when he was 18 and living Saudi Arabia. He stated he is scared all the time. He advised he and his dad were arrested and sent to prison in Saudi Arabia. The guards would play with the inmates private parts. He is in the process of suing the Saudi Arabian government and he is also writing a book about his experience. He did not wish to tell me what he was charged with in Saudi Arabia without an attorney. He advised he was forced to write some stuff while in prison. He advised he has no issues with any one at The Home Depot. He loves his job. He was forced to seek counseling by Home Depot because they observed him acting paranoid and freaking out at work. He stated they did not tell him no to come back to The Home Depot. They sent him home from work on either April 27th or 28th to seek counseling. He forgot the firearm was in his pocket today. He stated the gun is so tiny. He bought the firearm from a private seller for $100 in Florida. He did not know the name of the seller. He has never shot it before. He purchased the firearm loaded. He advised he does not have a concealed weapons permit from Florida or any other state. He did not know it was illegal to have the firearm on him and he forgot it was in his pocket. He had no intention to do anything with the firearm at The Home Depot. He has never been arrested in Florida before. He stated he is not a convicted felon. He advised he has an appointment with a counselor named Tommy which was set up by The Home Depot Care Solutions. He advised he would like his car released to his sister (Muna). He did not know Muna's phone number. He advised he had a SCCY 9mm pistol in his car. He implied he had another firearm at his house but he didn't want to tell me what type of gun it is. He advised he had about $1,100 on him. The money was from his salary and his stimulus check. He had it on him for an emergency just in case banks close due to the Corona virus.

I brought Mr. Alazhari his cellular phone while he was handcuffed in the backseat of a marked patrol vehicle. He did not feel comfortable giving me his security code to access his sister's phone number so he asked me to turn it off. He told me I could call another family member named Reem Faria to pick up his vehicle. He advised Mr. Faria owns Empire Auto Leasing. He told me to Google Empire Auto Leasing to get Faria's phone number.

Officers A. Parker and K. Perez transported Mr. Alazhari to the Orient Road jail.

I Googled the company and sent Cpl. M. Ferguson to the location to talk to Mr. Faria about picking up Mr. Alazhari's vehicle. I received a call a short time later from (813)440-7663. The caller advised he was Mr. Faria

DISC-02483

and that he would pick up the vehicle. I met Mr. Faria at The Home Depot parking lot. He identified himself as Reem A. Faria 07/29/1974 with a Florida driver's license. I gave him Mr. Alazhari's keys and he drove the Infinity off of the lot.

I placed the firearm, CD of audio recording of interview and CD of photographs into evidence at the impound lot.

I received an email from Kelly Harrington. The email contained a link to The Home Depot video surveillance cameras.

On 05/04/2020, I contacted the pickup desk and had the firearm entered into FCIC/NCIC as a recovered gun. TPD operator #83 entered the firearm into FCIC/NCIC at 0925 hours.

On 05/05/2020, I was unable to open the link and view the Home Depot surveillance video that Mr. Harrington originally sent me so I emailed him back and requested he send me the video files. Mr. Harrington sent me the files as requested and I was able to view the surveillance footage from a few different security cameras. The cameras captured Mr. Alazhari parking his Infinity in the parking lot. The cameras also captured Mr. Alazhari walking up to the front of The Home Depot and being detained by Ofc. Keith. I burned the video recordings to a CD and placed it into evidence at the property room.

This concludes my involvement in this investigation.

DISC-02484

## Related Text Page(s)

Document: **SUPPLEMENTAL**
Author: **50004 - CAMPAGNANO, BRIAN**
Related date/time: **May-05-2020 (Tue.)**

On 4/24/20 I met with Kyle Hughes, a manager with the Home Depot Store located at 8815 North Florida Avenue in reference to an employee. Mohammed Alazhari. Hughes stated, he has been Alazhari's supervisor for approximately 2 months. During this time frame he has noticed Alazhari's demeanor and behavior at work have become concerning. In fact, over the last couple of weeks he has noticed that Alazhari has become paranoid and due to the paranoia Alazhari has confronted coworkers accusing them of being federal agents that were placed in the Home Depot to watch him. Hughes also noted, Alazhari is socially awkward, does not socialize with the majority of his coworkers and when he does interact with his coworkers he preaches about Islam in a "passionately aggressive" manner. Hughes stated, he feels Alazhari is ultimately attempting to convert his coworkers to Islamic faith. Alazhari tells his coworkers they are going to hell because they are not believers and often references the 9/11 attacks on the World Trade Center.

Hughes stated, several of Alazhari's coworkers have come to him about Alazhari confronting them about his religious beliefs. The coworkers also noted, Alazhari has inquired about how to get a firearm and has even asked some of his coworkers to obtain a firearm for him. Hughes noted, Alazhari has also brought up his extreme religious views in conversations with him several times and has inquired about Hughes' military service asking where/when he served and what his duties were while serving. Hughes recalled, approximately two weeks prior to this interview Alazhari brought him out into the parking lot while on break. Once they were in the parking lot Alazhari brought him over to his vehicle and showed him that he had pistol in the center console of his car. Hughes being familiar with firearms recognized the pistol to be real and believed it was a 9mm style pistol but was not able to provide the make/model. Through previous conversations Alazhari was aware Hughes and/or his girlfriend owned firearms. Alazhari asked him if he was able to get him more firearms or if he would be willing to sell him any of his or his girlfriend's personal firearms. Hughes noted, due to Alazhari's paranoid behavior, possible animus towards Home Depot or their employees, strong views and interests in firearms he had significant concerns.

Based on the above interview a TPD Criminal Intelligence Bulletin was created and disseminated to sworn officers within the Tampa Police Department. In the bulletin Alazhari's concerning/bizarre behavior was noted. It was also noted if Alazhari were to return to the Home Depot located at 8815 North Florida Avenue officers should encounter Alazhari and contact the Criminal Intelligence Bureau so an evaluation could be conducted.

DISC-02485

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |
|---|---|

## Related Text Page(s)

Document: **DATA ENTRY ONLY**
Author: **40150 - DEYNES, SUSAN R**
Subject: **ERG: SN E093317**
Related date/time: **May-04-2020 (Mon.) 925**

AUTH DET T REGO @ 0925 44506

eAgent Report

datetime: 2020-05-04T09:22:39-0400 desc: QG 00025 encrypted: 0 id: e09ec4074f0ff679f43420e837dade8b
offset: 50688 src: SERVER type: DATA
DEV-NBR-HDR 00000
MNE-HDR P29020002
CONT-NBR-HDR 40150
DTE-HDR 20200504
TIME-HDR 0922
MSG-NBR-HDR 00025
MKE QG
QG FL0290201E093317        Y --NCIC--
1L01FLS0613772052
FL0290201

NO RECORD SER/E093317

--FCIC HIT RESPONSE--
QG : NO RECORDS FOUND
--END--

datetime: 2020-05-04T09:25:11-0400 desc: ERG 00026 encrypted: 0 id: c283215339bb87d397631bda35f4975b
offset: 53517 src: SERVER type: DATA
DEV-NBR-HDR 00000
MNE-HDR P29020002
CONT-NBR-HDR 40150
DTE-HDR 20200504
TIME-HDR 0925
MSG-NBR-HDR 00026
MKE ERG
ERG FL0290201E093317     NRA         22 PR2020050
120-219154               UNK MODEL, 5 SHOT REVOLVER, SI
L FINISH W/ BRO WOODEN HANDLE CONTACT TAMPA POLICE GUN UNIT 813 276 3637

DISC-02486

N--NCIC--
1L01FLS0613772805
FL0290201
NIC/G835002636 SER/E093317
OCA/20-219154
*****YOU MAY SUBMIT A TRACE REQUEST FOR THIS WEAPON THROUGH THE
ATF'S ETRACE APPLICATION AT WWW.ATFONLINE.GOV/ETRACE OR BY CALLING
1-800-788-7133 OR BY FAX TO 1-800-578-7223. AN AGENCY MUST HAVE
AN ETRACE MOU/ACCOUNT IN ORDER TO SUBMIT A TRACE VIA ETRACE. PLEASE
CONTACT THE ETRACE CUSTOMER SERVICE GROUP VIA EMAIL AT ETRACEADMIN@ATF.GOV
FOR ADDITIONAL INFORMATION.*****

--FCIC ACKNOWLEDGEMENT--
ENTER ACCEPTED AS FOLLOWING RECORD
RECOVERED GUN
 SERIAL NO: E093317                    ENTRY DATE: 05/04/2020
   MAKE: NORTH AMERICAN ARMS CO., LTD.      RECOVERY DATE: 05/01/2020
   CALIBER: 22                        PCN: G118769511
   TYPE: PISTOL, REVOLVER                NIC: G835002636
ENTERING MNE: P29020002
RECOVER CASE: 20-219154
RECOVER AGY: FL0290201
 NOTIFY AGY: NO NOTIFY/PUBLICLY AVAILABLE
   MISC: UNK MODEL, 5 SHOT REVOLVER, SIL FINISH W/ BRO WOODEN HANDLE CONT
     ACT TAMPA POLICE GUN UNIT 813 276 3637


--END--


datetime: 2020-05-04T09:25:11-0400 desc: ---- 00027 encrypted: 0 id: 5fdd5b08956a2cd4819d50d1f09842e6
offset: 55235 src: SERVER type: DATA
DEV-NBR-HDR
MNE-HDR P29020002
ATTN-HDR SYSTEM GENERATED HEADER
DTE-HDR 20200504
TIME-HDR 0925
MSG-NBR-HDR 00027
--NCIC--
$.H.

DISC-02487

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |
|---|---|

FL0290201
YOUR RECORD WITH NIC/G835002636 OCA/20-219154 IS A POSSIBLE DELAYED
INQUIRY MATCH
PLEASE ASSURE YOUR ENTRY IS A REASONABLE MATCH WITH THE
INQUIRY ON 0745 EDT 20200501 CONTAINING:
1N01FLS0612732463
SER/E093317
INQUIRING ORI/FL0290200 ATR/TAMPA PD
813 231-6152

INQUIRY ON 1108 EDT 20200501 CONTAINING:
1N01FLS0612800797
SER/E093317
INQUIRING ORI/FL02902M0 ATR/TAMPA PD
813 231-6152


--END--

DISC-02488

# Follow Up Report #  1

## Assignment Information

Assigned to: **44506 - REGO, TODD M**   Rank: **Detective**
Capacity: **Other Follow Up**   Org unit: **CIB**
Assigned on: **May-04-2020  (Mon.) 908**   by: **44506 -  REGO, TODD M**
Report due on: **Jun-03-2020  (Wed.)**

## Submission Information

Submitted on: **May-05-2020  (Tue.) 1454**
Checked by: **46297 -  DESMITH, MATTHEW**
Approved on: **May-05-2020  (Tue.)**   by: **46297 -  DESMITH, MATTHEW**
**Follow Up Conclusion**
Follow Up concluded: **Yes**

DISC-02489

# Clearance Information

Agency: **TPD**
Cleared status: **Cleared by Arrest - Adult  - Not Applicable**
Cleared on: **May-01-2020  (Fri.)**
Complainant/Victim notified: **No**

DISC-02490

# Related Property Report(s)

## Report Information

**Property Report #: 1702823**
Property case status: **EVIDENCE/HELD**
Submitted on: **May-01-2020  (Fri.)**    by: **REGO, TODD M**
**Related:**
Offense: **GO  2020- 219154**
General remarks: **ALAZHARI,MUHAMMED 021897**
Related items: **2**

## Articles - Evidence

Status: **EVIDENCE/HELD**                              Tag #: **1702823- 1**
Article: **RCDISC- RADIO, TV, ENTERTAINMENT DEVICES**
Serial # 1: **UNKNOWN**                                OAN:
Value: **$0.00**                                        Color:
Description: **CD OF PHOTOGRAPHS**
Recovered date: -                                      Recovered value: **$0.00**
Flags: *e
Current Location: **PR TAPES18**

## Articles - Evidence

Status: **EVIDENCE/HELD**                              Tag #: **1702823- 2**
Article: **RCDISC- RADIO, TV, ENTERTAINMENT DEVICES**
Serial # 1: **UNKNOWN**                                OAN:
Value: **$0.00**                                        Color:
Description: **CD OF RECORDED INTERVIEW OF DEFENDANT**
Recovered date: -                                      Recovered value: **$0.00**
Flags: *e
Current Location: **PR TAPES18**

Flags = d (disposed) x (x-reference) n (entered on NCIC) *e (evidence)

DISC-02491

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |
|---|---|

# Related Property Report(s)

## Report Information

**Property Report #: 1702824**
Property case status: **EVIDENCE/HELD**
Submitted on: **May-01-2020 (Fri.)**   by: **REGO, TODD M**
**Related:**
Offense: **GO  2020- 219154**
General remarks: **MUHAMMED,ALAZHARI 021897**
Related items: **2**

## Articles - Evidence

Status: **EVIDENCE/HELD**                          Tag #: **1702824- 2**
Article: **Y- OTHER**
Serial # 1: **UNKNOWN**                            OAN:
Value: **$0.00**                                   Color:
Description: **.22 (5)**
Recovered date: -                                  Recovered value: **$0.00**
Flags: *e
Current Location: **GV GUNS**

## Firearm - Evidence

Status: **EVIDENCE/HELD**
Tag #: **1702824- 1**
Make: **NORTH AMERICAN ARMS**
Item: **Pistol**                                    Type: **Revolver**
Model:                                             Caliber: **.22**
Serial #: **E093317**
OAN:                                               Value: **$0.00**
Description: **SILVER 5 SHOT REVOLVER**
Recovered date: -                                  Recovered value: **$0.00**
Flags: *e
Current Location: **GV GUNS**

Flags = d (disposed) x (x-reference) n (entered on NCIC) *e (evidence)

DISC-02492

**GENERAL OFFENSE HARDCOPY**

| GO# 2020-219154 ARREST -PATROL | 5200-42 CARRY CONCEALED FIREARM (CCF) |

# Related Property Report(s)

### Report Information

**Property Report #: 1703030**
Property case status: **EVIDENCE/HELD**
Submitted on: **May-05-2020  (Tue.)**     by: **REGO, TODD M**
**Related:**
Offense: **GO  2020- 219154**
Related items: **1**

### Articles - Evidence

Status: **EVIDENCE/HELD**                                    Tag #: **1703030- 1**
Article: **RCDISC- RADIO, TV, ENTERTAINMENT DEVICES**
Serial # 1: **UNKNOWN**                                         OAN:
Value: **$0.00**                                                    Color:
Description: **CD CONTAINING HOME DEPOT SECURITY CAMERA FOOTAGE**
Recovered date: -                                            Recovered value: **$0.00**
Flags: *e
Current Location: **PR TAPES18**

Flags = d (disposed) x (x-reference) n (entered on NCIC) *e (evidence)

DISC-02493

\*\*\* END OF HARDCOPY \*\*\*

DISC-02494

# DEFENSE

# EXHIBIT 6



# TAMPA POLICE DEPARTMENT

411 N Franklin St, Tampa, FL 33602

**Date: 04/29/2020**

**Ruben Delgado**
nterim Chief of Police

*The mission of the Tampa Police Department is to reduce crime and to improve the quality of life through cooperative partnership with all citizens*

***Law Enforcement Sensitive: This information is the property of the Tampa Police Department. This bulletin is for informational purposes only. Do not arrest based on this information. ***

## Armed and Dangerous Subject

**Point of Contact**
POLICE DETECTIVE TODD REGO
Email: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Locations (1)**
▮▮▮▮▮▮▮▮▮▮▮▮   Tampa, FL

**Offense Date/Time**
04/28/2020 00:00 - 04/28/2020 00:00

**Summary**

Case Agent: Detective Todd Rego Squad: CIB SQ531 Muhammed M. Alazhari is a current employee at the Home Depot located at ▮▮▮▮▮▮▮▮▮▮. He has recently been exhibiting bizarre and erratic behavior. Mr. Alazhari has been expressing unhappiness with some Home Depot employees. He showed a fellow coworker a firearm that was located inside his 2001 bronze Infiniti 4 door vehicle with a Florida tag of ▮▮▮▮. He was at work at the time of this incident. He made some concerning comments to this coworker. Mr. Alazhari has been forced to enter into the Employee Assistance Program pending a mental evaluation. He was told not to return to Home Depot until he is contacted by a Home Depot supervisor. There are no criminal charges at this time. This investigation is ongoing. If law enforcement comes in contact with Mr. Alazhari, please use caution and consider him armed and dangerous. If contact is made at any Home Depot location, detain Mr. Alazhari and immediately contact CIB Detectives Campagnano, George or Rego. Update: Mr. Alazhari was arrested today by two off-duty officers (H. Keith and N. Daley) working at The Home Depot. Mr. Alazhari showed up at The Home Depot in his listed vehicle and was detained by these officers before he could enter the store. A loaded .22 caliber revolver was located on him. Det. Rego responded to the scene and interviewed Mr. Alazhari. Mr. Alazhari admitted to possessing the firearm. He stated he forgot the gun was in his pocket and was just going to do some shopping at the store. He denied having any intention of harming anyone at the store. He did not exhibit any violent or erratic behavior during his interview. He was charged for CCF. Det. Rego trespassed Mr. Alazhari from all Home Depots at the manager's request. He is currently in on a $2,000 bond. There is a good chance Mr. Alazhari will post bond this evening. Alazhari bonded out of the Hillsborough County Jail at 2000 HRS on 5/2/2020. Alazhari was arrested on 5/24/20 and is currently being held without bond.

Mr. Alazhari is known to possess multiple firearms. He has been exhibiting bizarre and erratic behavior. He is currently flagged in NCIC. Areas of Concern: ▮▮▮▮▮▮▮▮▮▮ (Home Depot) ▮▮▮▮▮▮▮▮ (Auto Experts) NOTE: AS OF 5/10/20 ALAZHARI AS STARTED WORKING AT CELL FIX LOCATED AT ▮▮▮▮▮▮▮▮▮▮.





# DEFENSE

# EXHIBIT 7



DISC-02393

# DEFENSE

# EXHIBIT 8



# DEFENSE

# EXHIBIT 9

FD-1055 (Rev. 08-17-12)

# FEDERAL BUREAU OF INVESTIGATION
### Physical Surveillance Log

**Title:** █ Surveillance on 5/14/20            **Date:** 08/27/2020



Muhammed Momtaz ALAZHARI  (USPER)

**Enclosure(s):** Enclosed are the following items:
1.  █   Surveillance notes

**Office Conducting Surveillance:**  AT

**Surveillance Type:** █
**Started:** 05/14/2020 02:35 PM EDT
**Ended:** 05/14/2020 10:27 PM EDT



Title: ██████ Surveillance on 5/14/20
Re: ███████████, 08/27/2020

**Details:**

AT ████ took over from Tampa ████

R1-3003 Spillers Ave. Tampa

R2-syster's apt. 2450 Hillsborough Ave, Tampa, apt 1205.

L1-Gas station-Grand Park 4002 Orient Rd, Tampa.

L2-Walmart-1720 E. Hillsborough Ave, Tampa.

V1-Bronze Infinity I30

V2-syster's white Nissan Murrano.

2:35pm-Surveillance initiated in the vicinity of R1. V1 is parked in the driveway. (██████

4:26pm-V1 departs. (███

5:31pm-V1 arrives at Honeymoom Island State Park and does U-turn prior to entering gate and departs the area. (███

6:23pm-V1 arrives at R2. (███

7:16pm-Subject is observed entering V1 and departing the area. (███

7:27pm-V1 back at R1. (███

7:32pm-V1 departs. (███

7:39pm-V1 arrives at L1 and subject is observed putting gas into V1. (██████)

Title: █████   Surveillance on 5/14/20
Re: ████████████, 08/27/2020

7:41pm-V1 departs. (███████

7:51pm-V1 arrives at L2 and subject enters the building. (███████

8:08pm-Subject departs in V1. (██████

8:14pm-V1 is back at R2. (████████

10:00pm-Subject is observed placing trash bag on hood of V2 and entering the driver side of V2. (██████

10:10pm-V2 is observed parking by apartment complex mailboxes and subject walks away from V2 towards the direction of R2. (██████

10:14pm-Subject is back inside R2. (██████

10:27pm-surveillance turned over to Charlotte ████ (███████

**Observations:**

  **Observed:** 05/14/2020 02:35 PM EDT
  **Observation:**
  ████████  Surveillance initiated
  **Observer(s):**          (FBI) ████████████

  **Observed:** 05/14/2020 10:27 PM EDT
  **Observation:**
  ████████  Surveillance discontinued.
  **Observer(s):**          (FBI) ████████████

Title: ████   Surveillance on 5/14/20
Re: ████████████, 08/27/2020

◆ ◆

███████████████

Physical 1A/1C Cover Sheet for Serial Export

**Created From:** ███████████████
Serial 491

**Package:** 1A245

**Stored Location:** None

**Summary:** ███████████ Surveillance notes

**Acquired By:** Erik C. Gonzalez

**Acquired On:** 2020-05-14

**Attachment:** ██████ Surveillance notes

# EXHIBIT 10

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

ESI Consulting, Inc.





## FORENSIC EXPERIENCE

**ESI CONSULTING, INC.**                              November 2006 - Present
- President and owner
- Trained in Computer Forensics by New Technologies, Inc. (NTI), a division of Armor Forensics. Instructors were Joseph W. Enders and Kim Schaffer.
- Professional Development Certificate from Oregon State University in Computer Forensics
- AccessData Certified Examiner (ACE) (2009)
- Certified Computer Examiner (CCE) (2008)
- Certified Forensic Computer Examiner (CFCE) (2011)
- Digital Forensic Certified Practitioner (DFCP) (2009)
- EnCase Certified Examiner (EnCE) (2011)
- IACIS Certified Mobile Device Examiner (ICMDE) (2019)
- Member, Consortium of Digital Forensic Specialists (CDFS)
- Member, Digital Forensic Certification Board (DFCB)
- Associate Member, International Association of Computer Investigative Specialists (IACIS)
- Member, International Society of Forensic Computer Examiners (ISFCE)
- Experienced in many types of forensic examinations, including:
  - Forensic Imaging, including Chain of Custody and authentication documentation
  - Locating and recovering ESI (Electronically Stored Information) that may appear to be inaccessible through computer forensic processes, including documents, emails, instant messages, chat records, internet usage, web sites visited, applications run, images, cookies, etc.
  - Analyzing and reporting on user activities such as e-mail, files accessed, Internet sites viewed, pictures viewed, IM chats, remote access, and much more.
  - Creating and analyzing time lines of user activity
  - Analyzing ESI for evidence of authenticity, modification or alteration
  - Accessing password protected files, programs and drives
  - Analyzing data found in special (and typically inaccessible) areas of a disk, including swap files, unallocated space, file slack and alternate data streams
  - Analyzing whether data was wrongfully copied onto external media,

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

uploaded to internet storage or emailed
- Recovering and analyzing chats and IMs, including AIM, Facebook, Google, Gigatribe, MSN, MySpace, Skype, Twitter, Yahoo
- Examining and analyzing P2P file sharing data, including Ares, eMule, Frostwire, Gigatribe, Goggle Hello, Limewire, Shareaza, Torrents
- Analyzing data for use of wiping software
- Examining and analyzing data for evidence of marital infidelity
- Keyword searching and analysis
- Malware analyses
- Secure file deletion
- Cell phone, pda, cell tower, CDR, and gps forensic analysis
- Examining and analyzing DVRs

- Experienced in many types of e-Discovery matters, including:
  - Drafting litigation hold letters, preservation letters, discovery requests
  - Identifying potential data sources
  - Preservation and collection
  - Meet and confer and case management conferences
  - Drafting and performing keyword searches
  - TAR and predictive coding methodologies
  - Data authentication, review and production
  - Chain of custody

- Experienced in many types of cases, including:
  - Civil cases
  - Criminal cases
  - Family/Marital/Domestic cases
  - Business cases
  - Internal investigations
  - Child pornography
  - Child predator/solicitation
  - Corporate theft
  - E-Discovery
  - Former employees
  - Forgery
  - Construction cases
  - Geolocation/Cell Tower Analysis
  - Fraud, including financial fraud, tax fraud, insurance fraud
  - Drug cases
  - Homicide/manslaughter
  - Medical malpractice
  - Personal injury

2

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

- Sexual harassment/battery

- Experienced with many different forensic software programs, including
  - Axiom
  - Cellebrite UFED Touch Ultimate
  - DVR Examiner
  - E3
  - EnCase
  - F-Response Consultant
  - F-Response Tactical
  - Forensic Explorer
  - FTK
  - Internet Evidence Finder
  - Internet Examiner
  - IXTK
  - Lantern
  - MacQuisition
  - Mount Image Pro
  - NetAnalysis
  - P2 Commander
  - Paladin
  - Passware Kit Forensic
  - PeerLab
  - Proof Finder
  - Recon
  - SIFT
  - TRAX
  - Virtual Forensic Computing
  - WinHex
  - X-Ways Forensic

- Expert witness testimony
  - State court
  - Federal court
  - Arbitration proceedings
  - Testified in more than 100 cases

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

# LEGAL EXPERIENCE

**RICHARD D. CONNOR, JR., P.A.**                                    October 1997  - 2006
- General civil litigation and appeals representing plaintiffs and defendants.
- Jury and non-jury trials in state and federal courts.
- Cases include securities, banking, fraud, professional liability (attorneys, accountants, brokers, etc.), real property, director and officer liability, and other areas.

**ADAMS & SPEARS, P.A.**                                    May 1986-October 1997
- Complex commercial litigation representing plaintiffs and defendants.
- Jury and non-jury trials in state and federal courts.
- Class actions.
- Cases include securities, banking, fraud, professional liability (attorneys, accountants, brokers, etc.), real property, director and officer liability, and other areas.

**GENERAL LEGAL BACKGROUND**
- Extensive appellate experience in state and federal courts.
- Admitted to practice
  - Florida Supreme Court.
  - United States District Court, Middle District of Florida.
  - United States Circuit Court of Appeals for the Sixth and Eleventh Circuits.
  - United States Supreme Court.
- Legal Aid Society New Attorney Award of Excellence 1991.
- Florida Bar Journal/News Editorial Board 1989-95.

# EDUCATION

**STETSON UNIVERSITY COLLEGE OF LAW**, St. Petersburg, FL.
- J.D., May 1986, cum laude.
- Notes Editor, Stetson Law Review.
- Elizabeth M. Leeman Award.
- Research and Writing Teaching Assistant.

**PRINCETON UNIVERSITY,** Princeton, NJ.
- A.B. June 1982, History.

4

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

## ORGANIZATIONS

**BOY SCOUTS OF AMERICA**
- Cub Scout Pack 78 Committee Chair, 2002 - 2006
- Boy Scout Troop 202 Committee Chair, 2005   2009
- Order of the Arrow, Brotherhood

**PRINCETON CLUB OF CENTRAL FLORIDA**
- President, Secretary, and Treasurer, 1992 - 2014

**PRINCETON UNIVERSITY ALUMNI COUNCIL**
- Regional Association Member Elected At Large, 2006-08
- Committee on Regional Associations, 2006-08









Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

# EXPERT WITNESS TESTIMONY

**TRIAL TESTIMONY**

Benz Research and Development Corp. v. Ebrahimpour, Case No. 2011-CA-004732-NC (Fla. 12th Cir.) (Sarasota)
- 2017
- Commercial litigation/IP theft. Testified at trial about deleted files.

Fitzgerald v. Fitzgerald, Case No. 2016-DR-000353 (Fla. 9th Cir.) (Orange)
- 2017
- Dissolution. Testified at trial about examination and analysis of computers and iPad.

Fluid Energy Group Ltd. v. Heartland Energy Group, Ltd., Case No. 20282/RD (ICC)
- 2015
- Business arbitration. Testified at arbitration about metadata.

Harper v. City of Tavares, (Arbitration)
- 2014
- Employment. Testified at Arbitration about iOS devices, wiping, backups, cloud storage.

Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Limited, Inc., Case No. 8:09-CV-2465-T-33AEP (M.D. Fla.) (TPA)
- 2011
- Commercial litigation. Testified at deposition and trial about party's computer activity on day in question.

Lambert v. Itransit, Inc., Case No. 2012-CA-008677-O (Fla. 9th Cir.) (Orange)
- 2014
- Commercial litigation. Testified at trial about examination of computer that had been wiped.

Moneycorp, Inc. v. Orb, Inc., Case No. 01 1400 002 556 (AAA)
- 2015
- Business litigation. Testified at Arbitration about examination of sql databases.

6

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Nina Plastic Bags, Inc. v. Wikoff Color Corp. Of S.C., Case No. 2009-CA-009947-O (Fla. 9th Cir.) (Orange)
- 2011
- Commercial litigation. Testified at deposition and trial about examination of ink dispensing computer and when and why ink was not dispensed properly.

[Juvenile Court Case], (Fla. 9th Cir.) (Orange) (Juvenile)
- 2013
- Testified at trial about accessing and altering data on a Nintendo Wii.

State of Florida v. Baldino, Case No. 56-2011-CF-001300-A (Fla. 19th Cir.) (St. Lucie)
- 2014
- Enticement of a minor, child pornography. Testified at trial about examination and analysis of seized media, including yahoo chats.

State of Florida v. Bracero-Reyes, Case No. 2017-CF-002100-A (Fla. 10th Cir.) (Polk)
- 2018
- Child Pornography. Testified at trial about results of examination and analysis of cell phone and about file metadata.

State of Florida v. Cerrato, Case No. 17-CF-001433-A-OS (Fla. 9th Cir.) (Osceola)
- 2018
- Sexual battery of a minor. Testified at trial about examination of computers and phone, thumbnails and cached images.

State of Florida v. Elias, Case No. 2017-103838-CFDL (Fla. 7th Cir.) (Volusia)
- 2019
- Child Pornography. Testified at trial about Flickr.

State of Florida v. Paulk, Case No. 2011 CF 000819 A (Fla. 5th Cir.) (Citrus)
- 2013
- Enticement of a minor. Testified at trial that computer examination showed defendant was not predisposed toward minors. Jury returned not guilty verdict (defendant did testify).

State of Florida v. Shriner, Case No. 2012-CF-7824 (Fla. 9th Cir.) (Orange)
- 2013
- Enticement of a minor. Testified at trial about certain files and that defendant did not visit sites frequented by teens.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Taylor, Case No. 2014-CF-003600 (Fla. 9th Cir.) (Osceola)
- 2017
- Child pornography. Testified at trial regarding torrents and results of examination and analysis.

State of Florida v. Zimmerman, Case No. 2012-CF001083-A (Fla. 18th Cir.) (Seminole)
- 2013
- Homicide. Testified at trial during proffer about text messages and pictures recovered from Trayvon Martin's cell phone.

 

State of Texas v. Oakman, Case No. 2016-1134-C1 (Tex. 19th Dist.) (McLennan)
- 2019
- Sexual assault. Testified at trial regarding examination of cell phones and text messages.

United States v. Bates, Case No. 12-14054-cr-KMM/FJL (S.D. Fla.) (FTP)
- 2015
- Child pornography. Testified at trial regarding computer settings and activity.

United States v. Deal, Case No. 3:08-cr-368(S3)-J-32JRK (M.D. Fla.) (JCK)
- 2010
- Enticement of a minor. Testified at trial regarding file metadata.
- Reported at *Deal v. United States*, ___ F. Supp. 2d ___ (M.D. Fla. 2015)

United States v. Eckler, Case No. 6:2010cr00215 (M.D. Fla.) (ORL)
- 2011
- Enticement of a minor. Testified at trial regarding computer activity.

United States v. Glenn, Case No. 15-20632-CR-RNS(s) (S.D. Fla.) (MIA)
- 2017
- Child Pornography. Testified at trial regarding examination of files and data.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

United States v. Hicks, Case no. 3:18-cr-31-(S2)-J-32PDB (M.D. Fla.) (JAX)
- 2019
- Drugs/Homicide. Testified at trial regarding examination of cell phone data, Call Detail Records, and cell tower locations.

United States v. Irizarry, Case No. 6:2014-cr-00046-PGB-TBS (M.D. Fla.) (ORL)
- 2015
- Drugs. Testified at trial regarding data extracted from mobile phone.

United States v. Johnson, Case No. 6:18-cr-00113-CEM-DCI (M.D. Fla.)
- 2018
- Drugs. Testified at trial regarding data extracted from mobile phone.

United States v. Litzky, Case No. 6:2018-cr-00223-37TBS (M.D. Fla.) (ORL)
- 2019
- Child pornography. Testified at trial regarding examination of phones, including pictures and videos on phones.

United States v. Neiheisel, Case No. 3:17-cr-89-J-39JBT (M.D. Fla.) (JAX)
- 2018
- Child pornography. Testified at trial regarding examination of computer, torrents, Windows updates, and artifacts relating to user activity.

United States v. Parker, Case No. 2:09-CR-55-FTM-99SPC (M.D. Fla.) (FTM)
- 2009
- Child pornography. Testified at trial regarding circumstances surrounding cp files, user activity, and moving files between media. Jury acquitted defendant.

United States v. Peters, Case No. 6:09-cr-82-Orl-28DAB (M.D. Fla.) (ORL)
- 2009
- Child pornography. Testified at trial regarding timing of and circumstances surrounding cp files and user activity.

United States v. Pickett, Case No. 13-2576-CMM (S.D. Fla.) (FTL)
- 2013
- Child pornography. Testified at trial regarding eMule, ccleaner, timing of and circumstances surrounding cp files and user activity.

United States v. Rivenbark, Case No. 6:2016-CR-00170 (M.D. Fla.) (ORL)
- 2017
- Child pornography. Testified at trial regarding results of examination and analysis.

9

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

United States v. Salman, Case No. 6:17-cr-18-Orl-40KRS (M.D. Fla.) (ORL)
- 2018
- Terrorism. Testified at Pulse trial regarding results of examination and analysis of Omar Mateen's and Noor Salman's cell phones, cell tower locationss, and Facebook data.



United States v. Spence, Case No. 6:17-cr-62-Orl-41DCI (M.D. Fla.) (ORL)
- 2017
- Child pornography. Testified at trial regarding results of examination and analysis of WhatsApp on a Windows phone.

United States v. St. Gourdin, Case No. 6:13-CR-104-RBD-TBS (M.D. Fla.) (ORL)
- 2013
- Child pornography. Testified at trial about characteristics, metadata, and circumstances concerning alleged cp files.

United States v. Stahlman, Case No. 6:17-cr-45-Orl-41DCI (M.D. Fla.) (ORL), affirmed, United States v. Stahlman, Case Nos. 17-14387, 18-12866 (11th Cir.) (2019)
- 2017
- Enticement of a minor. Testified at trial hearing regarding examination and analysis of activity on cell phone.

United States v. White, Case No. 6:13-cr-304-Orl-28GJK (M.D. Fla.) (ORL)
- 2014
- Threat of Violence against public officials. Testified at trial about TOR network and material related to threats found on internet.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

**HEARING TESTIMONY**

Benz Research and Development Corp. v. Ebrahimpour, Case No. 2011-CA-004732-NC (Fla. 12th Cir.) (Sarasota)
- 2016
- Commercial litigation/IP theft. Testified at hearing about recovery of deleted emails and spoliation.

Berman v. Berman, Case No. 2008-DR-007764-O (Fla. 9th Cir.) (Orange)
- 2009
- Family Law. Testified at Hearing regarding spouse's computer searches about how to pass drug tests.

Deutsche Bank v. Mannino, Case No. 2008-CA-005806-O (Fla. 9th Cir.) (Orange)
- 2014
- Mortgage Foreclosure. Testified at hearing about metadata and native file formats.

De Vengoechea v. Sedredinova, Case No. 2014-DR-1776 (Fla. 9th Cir.) (Orange)
- 2017
- Family Law. Testified at hearing about deleted data.

Hedayati v. Hedayati, Case No. 2013-DR-017480 (Fla. 9th Cir.) (Orange)
- 2014
- Family Law. Testified at hearing about internet activity including deleted internet history.

Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Limited, Inc., Case No. 8:09-CV-2465-T-33AEP (M.D. Fla.) (TPA)
- 2011
- Commercial litigation. Testified at hearing about examination of party's computer activity on day in question.

In re: William W. Cole, Jr., Case No. 6:15-bk-06458-CCJ (M.D. Fla. Bankr.)
- 2016
- Bankruptcy. Testified at hearing about recovery of deleted files.

Jasper Contractors, Inc. v. Heritage Construction & Roofing, Inc., Case No. 16-2016-CA-1497 (Fla. 9th Cir.) (Osceola)
- 2019
- Business litigation. Testified at hearing about examination of cell phones, including whether they were reset or wiped.

11

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Lynum v Killion, Case No. 2016-DR-000136 (Fla. 5th Cir.) (Sumter)
- 2018
- Family law. Testified at hearing about whether email had been sent.

Massey Services, Inc. v. Harlan, Case No. 18-A09133-1 (Ga. Sup. Ct.) (Gwinnett)
- 2019
- Former employee. Testified at hearing about examination of former employee's computer.

National Staffing Solutions, Inc. v. Elder, Case No. 2012CA-001216 (Fla. 10th Cir.) (Polk)
- 2012
- Commercial litigation. Testified at hearing about data taken by former employees.

Sharif v. Pulmonary Care of Central Florida, P.A., Case No. 2014-CA-11795 (Fla. 9th Cir.) (Orange)
- 2016
- Business litigation. Testified at hearing about efforts to obtain ESI from opposing party.

Simonmed Imaging Florida LLC v. Drew Medical, Inc., Case No. 2014-CA-5486-O (Fla. 9th Cir. (Orange)
- 2016
- Business litigation. Testified at hearing about Raid arrays and data spoliation.

State of Florida v. Agin, Case No. 05-2016-CF-030529-AXXX-XX (Fla. 18th Cir.) (Brevard)
- 2017
- Child pornography. Testified at suppression hearing about p2p software.

State of Florida v. Bilus, Case No. 01-2010-CF-003931-A (Fla. 8th Cir.) (Alachua)
- 2012
- Child pornography. Enticement of a minor. Testified at hearing about government examination of computer and basis for search warrant.

State of Florida v. Bowman, Case No. 2011-CF-1472 (Fla. 7th Cir.) (Putnam)
- 2016
- Child pornography. Testified at suppression hearing about ways government examination of computer could have been more targeted or limited.

State of Florida v. Cochrane, Case No. 2011-CF-001352-A-02 (Fla. 5th Cir.) (Lake)
- 2012
- Enticement of a minor. Testified at hearing about need for native, electronic data during discovery.

12

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Collins, Case No. 2006 CF 001156 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified by affidavit and at hearing regarding internet chats.

State of Florida v. Kelly, Case No. 2006 CF 001158 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified at hearing regarding internet chats.

State of Florida v. Le, Case No. 2006 CF 001136 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified at hearing regarding internet chats.

State of Florida v. Lucius, Case No. 2015-CF-10571-A-OR (Fla. 9th Cir.) (Orange)
- 2018
- Child pornography/sex with a minor. Testified at deposition about examination of mobile phone, apps and settings.

State of Florida v. Luna, Case No. 53-2012-CF-4889-01 (Fla. 10th Cir.) (Polk)
- 2013
- Enticement of a minor. Testified at hearing regarding need for full access to electronic evidence.

State of Florida v. Martinez, Case No. 2006-CF-00038-A-P (Fla. 16th Cir.) (Monroe)
- 2017
- Child pornography violation of probation. Testified at hearing about examination of PlayStation 4 and AT&T security system.

State of Florida v. Mora, Case No. 13-2010-CF-014555-0001-XX (Fla. 11th Cir.) (Miami-Dade)
- 2015
- Child pornography. Testified at hearing regarding forensic artifacts of Google Hello.

State of Florida v. O'Hare, Case No. 2015-CF-2233 (Fla. 5th Cir.) (Lake)
- 2017
- Child pornography. Testified at suppression hearing regarding Fing data.

State of Florida v. Paulk, Case No. 2011 CF 000819 A (Fla. 5th Cir.) (Citrus)
- 2013
- Enticement of a minor. Testified at hearing about the Internet Archive (Wayback Machine), web sites terms of service and violations thereof, and authorized v. unauthorized access to computer systems and networks.

13

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Rex, Case No. 2011-CF-012818-A-O (Fla. 9th Cir.) (Orange)
- 20012
- Child pornography. Testified at sentencing hearing about cp files, where they came from, when, whether they were viewed, etc.

State of Florida v. Reyes, Case No. 2006 CF 001138 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified by affidavit and at hearing regarding internet chats.

State of Florida v. Schulte, Case No. 08-00564-CFA (Fla. 18th Cir.) (Seminole)
- 2009
- Sexting. Testified at hearing about differences between email and sms text messages. Case was dismissed.

State of Florida v. Smith, Case No. 49-2014-CF-004158 (Fla. 9th Cir.) (Osceola)
- 2016
- Child pornography. Testified at suppression hearing regarding p2p software, p2p networks, ip addresses and unsecured wifi networks.

State of Florida v. Spikes, Case No. 2006 CF 001157  (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified at hearing regarding internet chats.

State of Florida v. Ward, Case No. 09-CF-13977-O (Fla. 9th Cir.) (Orange)
- 2009
- Homicide. Testified at hearing about examination of computer and emails.



State of Florida v. Wert, Case No. 2011 CF 001379 NC (Fla. 12th Cir.) (Sarasota)
- 2012
- Lewd or lascivious on a minor. Testified at suppression hearing about data retrieved from mobile devices.

14

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Youngman, Case No. CF-17-1268-XX (Fla. 10th Cir.) (Polk))
- 2019
- Child Pornography. Testified at hearing about torrents and torrent software.

Trial Practices, Inc. v. Antaramian, Case No. 06-05366 (Fla. 13th Cir.) (Hillsborough)
- 2011
- Commercial litigation. Testified by affidavit and at hearing regarding data produced and not produced during discovery.

United States v. Adams, Case No. 6:16-cr-11-Orl-40GJK (M.D. Fla.) (ORL)
- 2016
- Child pornography. Testified at suppression hearing about TOR network and NIT deployed by federal agents to obtain information from defendant's computer.

United States v. Baker, Case No. 8:14-CR-209-T-27MAP (M.D. Fla.) (TPA)
- 2014
- Child predator. Testified at pretrial hearing about my qualifications in response to Motion in Limine to exclude my testimony at trial. The Court denied the motion.

United States v. Barnes, Case No. 3:15-cr-112-J-39PDB (M.D. Fla.) (JAX)
- 2017
- Child pornography. Testified at suppression hearing about TOR network and NIT deployed by federal agents to obtain information from defendant's computer.

United States v. Clark, Case No. 11-60060-CR-UU (S.D. Fla.) (MIA)
- 2011
- Child pornography. Testified at sentencing hearing regarding circumstances surrounding cp files and user activity.

United States v. Debets, Case No. 6:06-cr-00107-JA-DAB-1 (M.D. Fla.) (ORL)
- 2007
- Child Pornography. Testified at hearing regarding cached images from web sites.

United States v. Dunn, Case No. 6:14-cr-00158-ACC-KRS (M.D. Fla.) (ORL)
- 2015
- Child pornography. Testified at sentencing hearing regarding defendant having deleted cp files

United States v. Garcia, Case No. 1:13-cr-20764-MGC (S.D. Fla.) (MIA)
- 2014
- Child pornography. Testified at sentencing hearing regarding defendant's peer-to-peer and cp activity

15

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

United States v. Hall, Case No. 6:2013-cr-00267-JA-DAB (M.D. Fla.) (ORL)
- ■ 2014
- ■ Child pornography. Testified at sentencing hearing that defendant used cp search terms on two days only

United States v. Hill, Case No.  2:10-cr-127-FtM-29DNF (M.D. Fla.) (FTM)
- ■ 2011
- ■ Child pornography. Testified at suppression hearing about what could, could not, or did and did not cause computer to wake up. Motion to suppress was granted by the Magistrate and upheld by the Judge.
- ■ Reported at *United States v. Hill*, 795 F.Supp.2d 1304 (M.D. Fla. 2011).

United States v. Hohman, Case No. 3:12-cr-178-J-0MCR (M.D. Fla.) (JAX)
- ■ 2013
- ■ Child pornography. Testified at sentencing hearing about pictures and videos on hard drive, and how cp bulletin boards typically operate.

United States v. Jones, Case No. 6:12-cr-00206-ACC-GJK (M.D. Fla.) (ORL)
- ■ 2013
- ■ Child pornography. Testified at sentencing hearing about results of forensic examination of hard drives.

United States v. Monetti, Case No. 16-CR-20177-LENARD (S.D. Fla.) (MIA)
United States v. Monetti, Case No. 16-16410 (11th Cir. 2017)
- ■ 2016
- ■ Child pornography. Testified at sentencing hearing about p2p networks, Ares, and file sharing.

United States v. O'Brien, Case No. 6:13-cr-00194-RBD-GJK (M.D. Fla.) (ORL)
- ■ 2014
- ■ Child pornography. Testified at hearing on Motion to Dismiss and Motion to Suppress about p2p networks, eMule, file sharing, and CPS.

United States v. Palmer, Case No. 8:2010cr00130 (M.D. Fla.) (TPA)
- ■ 2010
- ■ Child pornography. Testified at sentencing hearing regarding circumstances surrounding cp files and user activity.

United States v. Palmer, Case No. 2:15-cr-1-FtM-38DNF (M.D. Fla.) (FTM)
- ■ 2015
- ■ Child pornography. Testified at suppression hearing about torrents and how they work.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

United States v. Ruggiero, Case No. 6:2013-cr-00032 (M.D. Fla.) (ORL)
- 2013
- Child pornography/exploitation. Testified at sentencing hearing regarding examination and analysis of activity on computer.

United States v. Sedlak, Case No. 6:15-cr-252-Orl-37GJK (M.D. Fla.) (ORL)
- 2016
- Child pornography. Testified at suppression hearing regarding methods of processing and examining computer data.

United States v. Smith, Case No. 0:13-cr-60083-JIC (S.D. Fla.) (FTL)
- 2013
- Child pornography. Testified at sentencing hearing regarding examination and analysis of activity on computer.

United States v. Stahlman, Case No. 6:17-cr-45-Orl-41DCI (M.D. Fla.) (ORL)
- 2017
- Enticement of a minor. Testified at pre-trial hearing regarding examination and analysis of activity on cell phone.

United States v. Vicente, Case No. 6:14-mj-1251-GJK-1 (M.D. Fla.) (ORL)
- 2015
- Child pornography. Testified at sentencing hearing regarding torrents, search terms used, and files opened.

University Medical Clinics, Inc. v. Quality Health Plans, Inc., Case No. 33 195 Y 00335 09 (AAA)
- 2011
- Commercial litigation. Testified at deposition and hearing about searching for, retrieving, and production of responsive data.

17

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

**DEPOSITION TESTIMONY**

Balearia Caribbean LTD., Corp. v. Calvo, Case No. 16-23300-CIV-WILLIAMS (S.D. Fla.)
- 2018
- Former employee. Testified at deposition about examination of former employee's computer.

Benz Research and Development Corp. v. Ebrahimpour, Case No. 2011-CA-004732-NC (Fla. 12th Cir.) (Sarasota)
- 2014, 2017
- Commercial litigation/IP theft. Testified at deposition about examination of computers and external drives as to whether former employee misappropriated corporate data.

Brevard Land Materials, Inc. v. Boruch-David, LLC, Case No. 05-2013-CA-025901 (Fla. 18th Cir.) (Brevard)
- 2014
- Business litigation. Testified at deposition about need to examine original data.

Brown v. GEICO Indemnity Co., et al, Case No. 13-006390 (Fla. 13th Cir.) (Hillsborough)
- 2018
- Other. Testified at deposition about metadata and whether file was modified.

Christine Taylor, as Administrator of the Estate of Underwood v Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital Heartland Medical Center Lake Placid, Case No. GC 2013-665 (Fla. 10th Cir.) (Highlands)
- 2015
- Medical malpractice. Testified at deposition about results of forensic examination of computer as to whether faxes were received.

Claxon v. Bob Monnig Industries, Inc., Case No. 1516-CV-01765 (KS Cir. Ct.) (Jackson)
- 2015
- Personal Injury. Testified at deposition about examination of cell phone data and texting while driving.

Cole v. Hundley, Case No. 2006-CA-007012-O (Fla. 9th Cir.) (Orange)
- 2009
- Medical Malpractice. Testified at deposition regarding whether document had been altered.

18

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Digital Assurance Certification, LLC v. Pendolino, Case No. 6:17-cv-72-Orl-31TBS (M.D. Fla.) (ORL)
- 2019
- Former employee. Testified in deposition about results of examination and analysis.

Doherty v. Butz, Case No. 48-2014-CA-12768-O (Fla. 9th Cir.) (Orange)
- 2016
- Former employee. Testified by affidavit about results of examination concerning data transferred to usb devices.

Durfee v. Northey, Case No. 3120 09 CA01 196 1 (Fla. 19th Cir.) (Indian River)
- 2010
- Personal Injury. Testified at deposition about dates pictures taken and whether they were altered.

Estate of Robert Heath v. Patients First Northampton, Inc., Case No. 2011-CA-001762 (Fla. 2d Cir.) (Leon)
- 2014
- Personal Injury. Testified at deposition about examination and analysis of computer and Android phones.

Fitzgerald v. Fitzgerald, Case No. 2016-DR-000353 (Fla. 9th Cir.) (Orange)
- 2017
- Dissolution. Testified at deposition about examination and analysis of computers and iPad.

Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Limited, Inc., Case No. 8:09-CV-2465-T-33AEP (M.D. Fla.) (TPA)
- 2011
- Commercial litigation. Testified at deposition and trial about party's computer activity on day in question.

Kruidbos v. Nelson, Case No. 16-2013-CA-007407 (Fla. 4th Cir.) (Duval)
- 2019
- Other. Testified at deposition about differences between various Cellebrite reports.

Magenheimer v. Mission Petroleum Carriers, Inc., Case No. 201700244 (TX 190th Dist.) (Harris)
- 2018
- Personal Injury. Testified at deposition about analysis of call detail records and cell phone data regarding phone activity at time of vehicle crash.

19

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Maldonado v. Clark, Case No. 2013-1308-CA (Fla. 5th Cir.) (Marion)
- 2016
- Personal Injury. Testified at deposition about analysis of call detail records and driving logs.

Nina Plastic Bags, Inc. v. Wikoff Color Corp. Of S.C., Case No. 2009-CA-009947-O (Fla. 9th Cir.) (Orange)
- 2010
- Commercial litigation. Testified at deposition and trial about examination of ink dispensing computer and when and why ink was not dispensed properly.

Otero v. TRS Wireless, Inc., Case No. 2014-CA-008740-O (Fla. 9th Cir.) (Orange)
- 2015
- Business litigation. Testified at deposition about examination about data loss.

Paterson-Jones v. Kottwitz, Case No. 2013-CA-2900-09-G (Fla. 18th Cir.) (Seminole)
- 2016
- Medical malpractice. Testified at deposition about examination of medical records and audit log.

Perfumeland of Orlando, Inc. v. Ferreira, Case No. 2015-CA-007226-O (Fla. 9th Cir.) (Orange)
- 2016
- Business Litigation. Testified at deposition about examination of phone and computer.

Sapp v. Crane Rental Corp., Case No. 2012-CA-719 (Fla. 4th Cir.) (Nassau)
- 2014
- Personal Injury. Court appointed expert. Testified at deposition about examination of iphone.

Simonmed Imaging Florida LLC v. Drew Medical, Inc., Case No. 2014-CA-5486-O (Fla. 9th Cir.) (Orange)
- 2016
- Business litigation. Testified at deposition about Raid arrays and rebuilding and whether data was deleted.

Soderstrom v. Soderstrom, Case No. 12-DR-566-02D-L (Fla. 18th Cir.) (Seminole)
- 2015
- Dissolution. Testified at deposition about examination of computers and email.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Sowards v. Abern, Case No. 16-2013-CA-1828 (Fla. 4th Cir.) (Duval)
- 2014
- Personal Injury. Testified at deposition about recovery of deleted user activity (text messages, call logs) on Android phone.

Spradlin v. Ring Power Corp., Case No. 16-2014-CA-001165-XXXX-MA (Fla. 4th Cir.) (Duval)
- 2015
- Personal Injury. Testified at deposition about metadata in Word files.

State of Florida v. Ball, Case No. 2017-CF-430 (Fla. 5th Cir.) (Marion)
- 2019
- Criminal. Testified at deposition about phone extraction.

State of Florida v. Barnett, Case No. F12-028442 (Fla. 11th Cir.) (Miami-Dade)
- 2014
- Sexual exploitation. Testified at deposition about examination of alleged victim's computer and iPhone.

State of Florida v. Bennett, Case No. 49-2015-CF-003951 (Fla. 9th Cir.) (Osceola)
- 2016
- Child pornography. Testified at deposition about examination and analysis of computers.

State of Florida v. Bilus, Case No. 01-2010-CF-003931-A (Fla. 8th Cir.) (Alachua)
- 2012
- Child pornography. Enticement of a minor. Testified at deposition about government examination of computer and basis for search warrant.

State of Florida v. Bilus, Case No. 01-2010-CF-003588-A (Fla. 8th Cir.) (Alachua)
- 2012
- Enticement of a minor. Testified at deposition about government examination of computer and basis for search warrant.

State of Florida v. Bracero-Reyes, Case No. 2017-CF-002100-A (Fla. 10th Cir.) (Polk)
- 2018
- Child Pornography. Testified at deposition about results of examination and analysis of cell phone and about file metadata.

State of Florida v. Butler, Case No. 48-2012-CF-011000-O (Fla. 9th Cir.) (Orlando)
- 2014
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

21

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Calhoun, Case No. 2018-CF-001301 A (Fla. 19th Cir.) (St. Lucie)
- 2019
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

State of Florida v. Carter, Case No. (Fla. 18th Cir.) (Seminole)
- 2019
- Homicide. Testified at deposition about examination of Call Detail Records.

State of Florida v. Cerrato, Case No. 17-CF-001433-A-OS (Fla. 9th Cir.) (Osceola))
- 2017
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

State of Florida v. Collins, Case No. 14-CF-002024-A-OS (Fla. 9th Cir.) (Osceola)
- 2015
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

State of Florida v. Crawford, Case No. 2015-CF-003999-A000-XX (Fla. 10th Cir.) (Polk)
- 2017
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

State of Florida v. Elias, Case No. 2017-103838-CFDL (Fla. 7th Cir.) (Volusia)
- 2019
- Child Pornography. Testified at deposition about results of examination and analysis of computers.

State of Florida v. Ferguson, Case No. 09-CF-006775-A-OR (Fla. 9th Cir.) (Orange)
- 2010
- Child pornography. Testified at deposition regarding Limewire and user activity downloading and playing cp.

State of Florida v. Floyd, Case No. 48-2014-CF-009030-O (Fla. 9th Cir.) (Orange)
- 2015
- Other. Testified at deposition regarding DVR imagining and cloning.

State of Florida v. Gionis, Case No. 2014-CF-000579-A (Fla. 18th Cir.) (Seminole)
- 2015
- Child pornography. Testified at deposition regarding results of examination and analysis.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Guerrero, Case no. 58-2017-CF-8793-NC (Fla. 12th Cir.) (Sarasota)
- 2018
- Child pornography. Testified at deposition regarding results of examination and analysis.

State of Florida v. Halbach, Case No. 2013-971-CF-A-W (Fla. 5th Cir.) (Marion)
- 2014
- Child pornography. Testified at deposition regarding results of examination and analysis.

State of Florida v. Harris, Case No. 2016-CF-006793-A-O (Fla. 9th Cir.) (Orange)
- 2017
- Assault. Testified at deposition regarding exported DVR surveillance video.

State of Florida v. Hill, Case No. 2015-CF-001786-A (Fla. 18th Cir.) (Seminole)
- 2016
- Identity theft. Testified at deposition about car dealer's computer systems.

State of Florida v. Langley, Case No. 2017-CF-009508-O (Fla. 9th Cir.) (Orange)
- 2018
- Stalking. Testified at deposition about evidence of emails.

State of Florida v. Lucius, Case No. 2015-CF-10571-A-OR (Fla. 9th Cir.) (Orange)
- 2018
- Child pornography/sex with a minor. Testified at deposition about examination of mobile phone, apps and settings.

State of Florida v. Luna, Case No. 53-2012-CF-4889-01 (Fla. 10th Cir.) (Polk)
- 2015
- Enticement of a minor. Testified at deposition that computer examination showed defendant was not predisposed toward minors.

State of Florida v. Mayberry, Case No. 16-CF-000054-A-OS (Fla. 9th Cir.) (Osceola))
- 2017
- Child pornography. Testified at deposition regarding results of examination and analysis.

State of Florida v. Mitchell, Case No. 48-2015-CF-009959-O (Fla. 9th Cir.) (Orange)
- 2016
- Homicide. Testified at deposition about cell tower location data.

23

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. O'Hare, Case No. 2015-CF-2233 (Fla. 5th Cir.) (Lake)
- 2017
- Child pornography. Testified at deposition regarding p2p software and networks, and results of examination and analysis.

State of Florida v. Pilacik, Case No. 2013-304567-CFDB (Fla. 7th Cir.) (Volusia)
- 2014
- Child pornography. Testified at deposition regarding eMule, Eraser, and files alleged to contain cp. State then offered plea to non-sex offense, no jail time, no sex offender status.

State of Florida v. Quinones, Case No. 2015-CF-002516-A (Fla. 5th Cir.) (Lake)
- 2018
- Homicide. Testified at deposition about analysis of Call Detail Records (CDRs).

State of Florida v. Ragin, Case No. 05-2014-CF-037982-AXXX-XX (Fla. 18th Cir.) (Brevard)
- 2016
- Child pornography. Testified at deposition about results of examination and analysis.

State of Florida v. Reichert, Case No. 2007-CF-010491-A-O (Fla. 9th Cir.) (Orange)
- 2011
- Child pornography. Testified at deposition about circumstances surrounding cp files. All 138 counts dropped.

State of Florida v. Rodriguez-Torres, Case No. 07-CF-2434 (Fla. 10 Cir.) (Polk)
- 2007
- Enticement of a minor. Testified at deposition regarding internet chats and examination of computer.

State of Florida v. Scott, Case No. 14-CF-005144-A-OR (Fla. 9th Cir.) (Orange)
- 2014
- Homicide. Testified at deposition about cell tower location data.

State of Florida v. Serban, Case No. 10-CF-016985-A-OR (Fla. 9th Cir.) (Orange)
- 2012
- Child pornography. Testified at deposition about downloading and accessing cp files.

State of Florida v. Smith, Case No. 49-2014-CF-004158 (Fla. 9th Cir.) (Osceola)
- 2016
- Child pornography. Testified at deposition about eMule and cp files.

24

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Sutter, Case No. 2006-CF-3669-0 (Fla. 9th Cir.) (Orange)
- 2007
- Insurance Fraud. Testified at deposition that computer data did not show fraud. Case was dismissed.

State of Florida v. Tavares, Case No. 48-2014-cf-014619-O/C (Fla. 9th Cir.) (Orange)
- 2015
- Armed Robbery. Testified at deposition about file system and EXIF metadata regarding pictures from digital camera.

State of Florida v. Taylor, Case No. 2014-CF-003600 (Fla. 9th Cir.) (Osceola)
- 2017
- Child Pornography. Testified at deposition about examination and analysis of hard drives.

State of Florida v. Tibbetts, Case No. 48-2016-CF-011475-O (Fla. 9th Cir.) (Orange)
- 2018
- Sexual Activity with a Child. Testified at deposition about examination and analysis of cell phone data.

State of Florida v. Underwood, Case No. 16CF00496 (Fla. 2d Cir.) (Leon)
- 2018
- Child Pornography. Testified at deposition about examination and analysis of hard drives.

State of Florida v. Walker, Case No. 48-2011-CF-015224-O (Fla. 9th Cir.) (Orange)
- 2014
- Child Pornography. Testified at deposition about examination and analysis of defendant's hard drives.

State of Florida v. Walker, Case No. 13-000235CF (Fla. 20th Cir.) (Collier)
- 2015
- Armed Robbery. Testified at deposition about examination of cell phones and Facebook data.

State of Florida v. Youngman, Case No. CF-17-1268-XX (Fla. 10th Cir.) (Polk))
- 2018
- Child Pornography. Testified at deposition about examination of computers and bittorrent.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC, Case No. 8:10-cv-02680-VMC-TBM (M.D. Fla.) (TPA)
- 2012
- Commercial litigation. Testified at deposition about document metadata.

26

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

**AFFIDAVIT / REPORT TESTIMONY**

Aerodynamics Inc. v. Caesars Entertainment Operating Co., Inc., Case No. 2:15-cv-1344-JAD-PAL (D. Nev.)
- 2016
- Business litigation. Testified by affidavit about e-discovery process and problems encountered.

Akers v. Parkview Healthcare LLC, Case No. 16-CI-684 (Ky. Cir.) (Pike)
- 2018
- Personal injury. Testified by affidavit about process of searching emails.

Astaphan v. Ranger Construction Industries, Inc., Case No. CACE-15-012992 (Fla. 17th Cir.) (Broward)
- 2016
- Personal Injury. Testified by affidavit about ability to examine email systems and to search, locate, and produce relevant emails.

Balearia Caribbean LTD., Corp. v. Calvo, Case No. 16-23300-CIV-WILLIAMS (S.D. Fla.)
- 2018
- Former employee. Testified by report about examination of former employee's computer.

Benz Research and Development Corp. v. Ebrahimpour, Case No. 2011-CA-004732-NC (Fla. 12th Cir.) (Sarasota)
- 2011, 2012, 2014
- Commercial litigation/IP theft. Testified by affidavit as to whether former employee copied company files before leaving, and if he did how they could be securely deleted, and about format date of HFSX volume.

Bjerke as Personal Representative of Estate of Thora A. Mercer-Bjerke v. Dr. Alphonse R. Tribuiani, P.A., Case No. 2015-CA- 001078 (Fla. 20th Cir.) (Collier)
- 2016
- Medical malpractice. Testified by affidavit about need to examine health care facility's computers to determine when particular note was entered.

Brevard Land Materials, Inc. v. Boruch-David, LLC, Case No. 05-2013-CA-025901 (Fla. 18th Cir.) (Brevard)
- 2014
- Business litigation. Testified by affidavit about need to examine original data rather than party's unverified summary of that data.

27

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Butler & Hosch, P.A.  v. Durham, Case No. 13-12795 (TX 298th Dist.) (Dallas)
- 2014
- Business litigation. Testified by affidavit about need to examine defendants' personal devices.

Christine Taylor, as Administrator of the Estate of Underwood v Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital Heartland Medical Center Lake Placid, Case No. GC 2013-665 (Fla. 10th Cir.) (Highlands)
- 2013
- Medical malpractice. Testified by affidavit about results of forensic examination of computer as to whether faxes were received.

Claxon v. Bob Monnig Industries, Inc., Case No. 1516-CV-01765 (KS Cir. Ct.) (Jackson)
- 2015
- Personal Injury. Testified by affidavit about need to examine mobile phone data without disclosing personal or privileged data.

Demella v. Kim, Case No. CACE 12028526 (Fla. 7th Cir.) (Broward)
- 2014
- Personal Injury. Testified by affidavit about efforts to locate data responsive to discovery requests.

Diacona v. The Ottawa Cooperative Association, Case No. 15 CV 146 (Kan. 6th Cir.) (Miami)
- 2016
- Personal Injury. Testified by affidavit about need to preserve phone until data is extracted.

Digital Assurance Certification, LLC v. Pendolino, Case No. 6:17-cv-72-Orl-31TBS (M.D. Fla.) (ORL)
- 2018
- Former employee. Testified by affidavit about need to examine forensic image of former employee's computer.
- Reported at *Digital Assurance Certification, LLC v. Pendolino*, Case No. 6:17-cv-72-Orl-31TBS (M.D. Fla.) (January 10, 2019

Doherty v. Butz, Case No. 48-2014-CA-12768-O (Fla. 9th Cir.) (Orange)
- 2014
- Former employee. Testified by affidavit about results of examination concerning data transferred to usb devices.

28

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

ECO Construction and Maintenance Management, LLC v. Seye, Case No. 2013-CA-003135-16X-K (Fla. 18th Cir.) (Seminole)
- 2015
- Business Litigation. Testified by affidavit about metadata.

Exxelia Dearborn, Inc. v. B_____, Case No. 2016-CA-001455-16-W (Fla. 18th Cir.) (Seminole)
- 2016
- Former employee. Testified by affidavit about examination and analysis of media.

Exxelia USA Holdings, Inc. v. Malkani, Case No. 2015-31044-CICI (Fla. 7th Cir.) (Volusia)
- 2016
- Business Litigation. Testified by affidavit about difficulty of searching for requested data.

Fluid Energy Group Ltd. v. Heartland Energy Group, Ltd., Case No. 20282/RD (ICC)
- 2015
- Business arbitration. Testified by report about metadata.

Hernandez v. Sharma, Case No. 2017-CA-003559 (Fla. 10th Cir.) (Polk)
- 2018
- Personal injury. Testified by affidavit about authentication of web pages from the Internet Archive Wayback Machine.

Jasper Contractors, Inc. v. Heritage Construction & Roofing, Inc., Case No. 16-2016-CA-1497 (Fla. 9th Cir.) (Osceola)
- 2018
- Business litigation. Testified by affidavit about examination of cell phones, including whether they were reset or wiped.

Kanter v. Kanter, Case No. 15-004139 (Fla. 17th Cir.) (Broward)
- 2017
- Family law. Testified by affidavit about forensic imaging to preserve data.

Landings WH Partners, LLC v. The City of Winter Haven, Florida, Case No. 2013CA-003664 (Fla. 10th Cir.) (Polk)
- 2014
- Business litigation. Testified by affidavit regarding recovery of text messages from mobile devices.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

Larkin v. Larkin, Case No. 2013-DR-017438-O (Fla. 9th Cir.) (Orange)
- 2014
- Family law. Testified by affidavit regarding creating backups of social media data and iOS devices.

Massey Services, Inc. v. Harlan, Case No. 18-A09133-1 (Ga. Sup. Ct.) (Gwinnett)
- 2019
- Former employee. Testified by affidavit about examination of former employee's computer.

Millager v. Fountains Canterbury, SL, LLC, Case No. 2016-5258 (Okla. D. Ct.) (Oklahoma)
- 2019
- Nursing home. Testified by affidavit about examination of email server.

Mitchell v. Hunt, Case No. 8:15-cv-2603-T-23TGW (M.D. Fla.) (Tampa)
- 2016
- Theft. Testified by report about examination of metadata.

Molto Gourmet, LLC v. Latkowski, Case No. 48-2014-CA-169-O (Fla. 9th Cir.) (Orange)
- 2014
- Business litigation. Testified by affidavit regarding results of examination.

Moneycorp, Inc. v. Orb, Inc., Case No. 01 1400 002 556 (AAA)
- 2015
- Business litigation. Testified by report about examination of sql databases.

Silver v. G2, LLC., et al, Case No. 6:10-cv-1207-Orl-28KRS (M.D. Fla.) (ORL)
- 2011
- Commercial litigation. Testified by affidavit regarding forensic imaging of data.

Skybolt Aeromotive Corp. v. Milspec Products, Inc., Case No. 5:16-cv-616-Oc-30PRL (M.D. Fla.) (Ocala)
- 2017
- Business litigation. Testified by affidavit about file metadata.

Spradlin v. Ring Power Corp., Case No. 16-2014-CA-001165-XXXX-MA (Fla. 4th Cir.) (Duval)
- 2015
- Personal Injury. Testified by affidavit about metadata in Word files.

State of Florida v. Bock, Case No. 312007CF000482A  (Fla. 19th Cir.) (Indian River)
- 2008
- Fraud. Testified by affidavit about authenticity of computer data.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Cole, Case No. 48-2010-CF-010370-O (Fla. 9th Cir.) (Orange)
- 2010
- Testified by affidavit regarding fair market value of computer.

State of Florida v. Collins, Case No. 2006 CF 001156 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified by affidavit and at hearing regarding internet chats.

State of Florida v. Crawford, Case No. 2015-CF-003999-A000-XX (Fla. 10th Cir.) (Polk)
- 2017
- Child Pornography. Testified by affidavit about undercover torrent investigation.

State of Florida v. Finnell, Case No. 59-2009-CF-000215A (Fla. 18th Cir.) (Seminole)
- 2009
- Check fraud. Testified by affidavit whether forged check was created on a computer.

State of Florida v. Halbach, Case No. 2013-971-CF-A-W (Fla. 5th Cir.) (Marion)
- 2014
- Child pornography. Filed report regarding lack of evidence support certain counts in indictment, seven of eleven counts dismissed by state.

State of Florida v. Mora, Case No. 13-2010-CF-014555-0001-XX (Fla. 11th Cir.) (Miami-Dade)
- 2013
- Child pornography. Testified by affidavit about circumstances regarding files alleged to contain cp.

State of Florida v. Peterson, Case No. 2017-CF-1990 (Fla. 1st Cir.) (Santa Rosa)
- 2018
- Violation of Probation. Testified by affidavit about examination of cell phone and user activity.

State of Florida v. Pilacik, Case No. 2013-304567-CFDB (Fla. 7th Cir.) (Volusia)
- 2014
- Child pornography. Testified by affidavit that defendant did not run wiping software to destroy evidence when search warrant executed.

State of Florida v. Reyes, Case No. 2006 CF 001138 (Fla. 7th Cir.) (Flagler)
- 2008
- Enticement of a minor. Testified by affidavit and at hearing regarding internet chats.

31

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

State of Florida v. Roberts, Case No. CF06-007871-XX (Fla. 10th Cir.) (Polk)
- 2007
- Child pornography. Testified by affidavit regarding circumstances surrounding alleged cp files. Defendant accepted plea to unspecified computer crime, no jail time and no sexual predator status.

Stirling International Realty, Inc. v. Soderstrom, Case No. 6:14-CV-1109-ORL-40TBS (M.D. Fla.) (ORL)
- 2015
- Business litigation. Testified by report about examination of computers and email.

Synthes, Inc. v. Kobakof, Case No. 11-cv-07422-PBT (E.D. Pa.) (PHIL)
- 2012
- Commercial litigation. Testified by affidavit regarding files allegedly deleted by former employee and need to examine forensic image of computer to determine if former employee took corporate data.

Trial Practices, Inc. v. Antaramian, Case No. 06-05366 (Fla. 13th Cir.) (Hillsborough)
- 2011
- Commercial litigation. Testified by affidavit and at hearing regarding data produced and not produced during discovery.

United States v. Barona-Bravo, Case No. 8:14-CR-394-T-24-AEP (M.D. Fla.) (TPA)
- 2015
- Drugs. Testified by affidavit regarding thumbnails on a Blackberry, including metadata.

United States v. Giovanetti Case No. 8:07-CR-295-T-27MAP (M.D. Fla.) (ORL)
- 2008
- Bank fraud. Testified by affidavit regarding authenticity of documents and files.

United States v. Gruber, Case No. 6:2010-cr-00323 (M.D. Fla.) (ORL)
- 2011
- Child pornography. Testified by affidavit regarding circumstances surrounding cp files and user activity.

United States v. Heffield, Case No.  6:2013-cr-00067 (M.D. Fla.) (ORL)
- 2014
- Child pornography. Testified by report at sentencing hearing about what was, and was not, on defendant's computer, and his interests based on his computer activity.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

United States v. Hurwitz, Case No. 6:2006-cr-00226 (M.D. Fla.) (ORL)
- 2007
- Unauthorized computer access. Testified by affidavit about defendant's computer activity and ability to recreate or retrieve deleted data.

United States v. McCullough, Case No. 6:15-cr-40-ORL-40KRS (M.D. Fla.) (ORL)
- 2015
- Child pornography. Testified by report circumstances surrounding cp files and user activity.

United States v. Palmer, Case No. 2:15-cr-1-FtM-38DNF (M.D. Fla.) (FTM)
- 2015
- Child pornography. Testified by affidavit about torrents and how they work.

United States v. White, Case No. 7:13-CR-00013 (W.D. VA) (Roanoke)
- 2016
- Threats/extortion. Testified by affidavit about various matters including virus, TOR network, access to online accounts.
- Reported at *United States v. White*, ___ F.Supp.2d ___ (W.D. VA)

Wein v. Radcraft, Inc., Case No. CA16-0177 (Fla. 7th Cir.) (St. Johns)
- 2017
- Other. Testified by affidavit about emails not found during search.

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

# FORENSIC TRAINING

**COMPUTER FORENSICS TRAINING**                                    October 10-14, 2005
- New Technologies, Inc.

**SANS FOR610: REVERSE ENGINEERING MALWARE**            January 14-18, 2011
- SANS

**ADVANCED INTERNET EXAMINATIONS**                         January 27-31, 2011
- Guidance

**CEIC 2011**                                                                May 15-18, 2011
- What's New in Windows Forensics
- Cloud Storage Forensics: A Case Study and Research on Identifying File Transfers
- Super Timeline Analysis and Case Studies
- Images and dm-crypt and LVM2. Oh my!
- Decoding Prefetch Files
- Tracing IP Addresses
- File Identification and Recovery Using Block- Based Hash Analysis
- Forensic Analysis of Outlook Web Access
- Raw Data Carving

**LANTERN FIRST RESPONDER**                                      October 9, 2012
- Katana Forensics

**KATANA IOS/MACOSX LABORATORY FORENSICS**             October 10-11, 2012
- Katana Forensics

**X-WAYS FORENSICS**                                               November 26-29, 2012
- X-Ways

**X-WAYS FORENSICS - MEMORY FORENSICS**                   November 30, 2012
- X-Ways

**CELLEBRITE ULTIMATE UFED LOGICAL AND PHYSICAL CERTIFICATION**     April 9-11, 2013
- Digital Shield (Joe Church)

**ANALYSIS AND CORRELATION OF MACINTOSH LOGS**             April 28, 2013
- SANS

34

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

**CEIC 2013**                                                        May 19-22, 2013
- Living Dangerously - Malware Analysis
- NTFS Logfile Forensics
- Examining Volume Shadow Copies - The Easy Way
- Following an Intrusion Through a Microsoft Operating System (Automated and Manual)
- Offensive Digital Forensics
- Custom Analysis with EnCase v7
- Advanced Reporting
- Mac OS X - Delving A Little Deeper
- SSD Forensics
- Making the Most of EnCase Processor
- When Macs Get Hacked

**MACINTOSH FORENSIC EXAMINERS TRAINING**          May 11-15, 2015
- IACIS
- Sumuri (Steve Whalen)

**REVERSE ENGINEERING MAC MALWARE**                  July 21,2015
- SANS

**X-WAYS FORENSICS**                                 December 12-15, 2016
- X-Ways

**APPLIED COMPUTER FORENSICS**                       APRIL 23-27, 2018
- IACIS

**BUILDING YOUR ANDROID APPLICATION TESTING TOOLBOX**   NOVEMBER 17, 2018
- SANS

**MOBILE DEVICE FORENSICS**                          FALL 2018
- IACIS

35

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

# SPEAKING ENGAGEMENTS

**16TH ANNUAL EMPLOYMENT & LABOR LAW SEMINAR: ARE YOU COVERED**    December 2012
GrayRobinson - Orlando, FL
"A View from a Forensic Computer Expert:  What Employers Should Know
 about Electronic Evidence, Including Legal Obligations and Potential Liability"

**NATIONAL DEFENDER INVESTIGATOR ASSOCIATION**                September 2013
2013 Regional Conference - Jacksonville, FL
"Cyber Crimes Investigation (Child Pornography)"

**PREVENTING AND DEALING WITH DATA BREACHES IN YOUR COMPANY**    September 2013
Lowndes, Drosdick, Doster, Kantor & Reed - Orlando, FL
"The Mechanics of a Data Breach and the Tools to Prevent It"

**GET PLUGGED IN: MASTERING THE USE OF TECHNOLOGY IN THE LEGAL FIELD**  October 2013
OCBA Paralegal CLE Seminar
"E-Discovery: Searching the Virtual File Cabinets"

**ORANGE COUNTY BAR ASSOCIATION BENCH BAR CONFERENCE**        April 2014
"E-Everything 101: E-filing, E-service, & Intro to E-discovery"
"E-Everything 102: Advanced E-discovery"

**EVERYTHING YOU DON'T KNOW ABOUT E-DISCOVERY (BUT WISH YOU DID)**  December 2014
National Business Institute - Orlando
"Handling Social Media, E-Mail, Video and Other ESI"
"New Ethical Pitfalls You Need to Be Aware of"

**THE EVOLVING PRACTICE OF LAW: ALWAYS ADVANCING, FOREVER ADAPTING**  January 2015
OCBA Paralegal Litigation Seminar
"iPad for Lawyers"

**THE RULES OF EVIDENCE: A PRACTICAL TOOLKIT**            December 2015
National Business Institute - Tampa
"Handling Email, Social Media and Other ESI"

**2016 MIDDLE DISTRICT OF FLORIDA FEDERAL CRIMINAL PRACTICE SEMINAR**    April 2016
Federal Defender for the Middle District of Florida & CFACDL - Tampa
"The Role of Digital Forensics In Cyber Crime Cases"

36

Richard D. Connor, Jr., Esq. ACE CCE CFCE DFCP EnCE ICMDE

**ORANGE COUNTY BAR ASSOCIATION BENCH BAR CONFERENCE**                April 2016
    "Picking a Jury in the 21st Century"
    "Recent Rule Changes in e-Discovery: The Amendments to the
    Federal Rules of Civil Procedure that Took Effect December 1, 2015"
    "Privacy Law Update"

**ENHANCING SAFETY: OFFENDER EVALUATION AND TREATMENT**
**IN THE INTERNET AGE**                April 2016
    2016 Florida ATSA Annual Conference
    "Internet Use for Offenders: Opportunities and Pitfalls"

**DEFENDER SUMMER SCHOOL 2016**                August 2016
    Robert Wesley, Public Defender, Ninth Judicial Circuit and the
    Central Florida Association of Criminal Defense Lawyers
    "The Role of Digital Forensics In Cyber Crime Cases"

**LAW AND TECHNOLOGY SEMINAR**                January 2017
    Florida Association of Criminal Defense Lawyers
    "The Role of Digital Forensics In Cyber Crime Cases"

**ADVANCED FEDERAL PRACTICE 2017**                March 2017
    Florida Bar Continuing Legal Education Committee and Criminal Law Section
    "Defenses for Sentencing in Child Pornography Cases Using
    Newly Amended Sentencing Guidelines and Expert Testimony"

**LAW AND TECHNOLOGY SEMINAR**                February 2018
    Florida Association of Criminal Defense Lawyers
    "Cell Phone Forensics for the Criminal Defense Lawyer - What you need to know"

**9TH CIRCUIT PUBLIC DEFENDER SPRING TRAINING**                March 2019
    Ninth Circuit Public Defender
    "Understanding Electronically Stored Information in Criminal Law"

**ADVANCED NURSING HOME DISCUSSION**                May 2019
    Ernest Tosh
    "Defense Failure to Comply With Discovery - What Can We Do About It?"

**MIDDLE DISTRICT OF FLORIDA FEDERAL DEFENDER CONFERENCE**                September 2019
    "Cell Phone Forensics"

2019-09-27