ENCLOSURE #1



**U.S. Department of Justice**

Office of Legislative Affairs

_Office of the Assistant Attorney General_                    _Washington, D.C. 20530_

FEB 0 7 2020

The Honorable Lindsey Graham
Chairman
Committee on the Judiciary
United States Senate
Washington, DC  20510

The Honorable Dianne Feinstein
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC  20510

The Honorable Richard Burr
Chairman
Select Committee on Intelligence
United States Senate
Washington, DC  20510

The Honorable Mark Warner
Ranking Member
Select Committee on Intelligence
United States Senate
Washington, DC  20510

Dear Chairmen and Ranking Members:

We write regarding matters pertaining to the Foreign Intelligence Surveillance Act (FISA) and other matters contained in the December 9, 2019 report by Department of Justice (Department) Inspector General Michael Horowitz.

As you know, Inspector General Horowitz publicly released the December 9 report and appendix, and he provided public testimony before Congress on December 11, 2019.[1]  In light of the Inspector General's findings, the Attorney General has determined that it is now in the public interest to release to Congress additional documents and information related to these matters to the extent consistent with national security interests and with the January 7, 2020 order of the Foreign Intelligence Surveillance Court (FISC).

Accordingly, the Department is in the process of providing additional documents to the Senate Judiciary and Intelligence Committees as they have requested documents relating to matters addressed in the Inspector General's report.  The first such production is enclosed herein, Bates numbered SENATE-FISA2020-000001 to SENATE-FISA2020-000083.  This submission contains the October 21, 2016 FISA application and FISC order related to Carter Page with minimal redactions.[2]  The attached production is unclassified in its current format.

---

[1] _See_ https://oig.justice.gov/reports/2019/o20012.pdf.

[2] Prior versions of this application—including versions released in response to Freedom of Information Act requests and versions made available for Congressional staff and Members to review in camera—contained additional redactions, certain of which have now been removed for the reasons discussed above.

The Honorable Lindsey Graham
The Honorable Dianne Feinstein
The Honorable Richard Burr
The Honorable Mark Warner
Page Two

Pursuant to longstanding Department policy, the Department has made redactions relating to certain personally identifiable information or to ongoing investigations, enforcement activities, and certain law enforcement operations, methods, or techniques. In addition, the Department has made limited redactions to preserve classified, sensitive, or certain foreign information.

Today's submission, along with forthcoming productions of additional documents, is based on extraordinary and unique circumstances, and should not be construed as precedent setting in any regard. The production of these materials does not waive any applicable privilege.

We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

Enclosures

TOP SECRET//NOFORN



UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D.C.

(U) (X)  IN RE **CARTER W. PAGE, A U.S.**

**PERSON.**

Docket Number:

**16 - 1 1 8 2**

## (U)  VERIFIED APPLICATION

(U) (X)  The United States of America hereby applies to this Court for authority to conduct **electronic surveillance and physical search**, as described herein, pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, Title 50, United States Code (U.S.C.), §§ 1801-1812 and 1821-1829 (FISA or the Act).

50 U.S.C.
§ 1804(a)(1) and
823(a)(1)]

1.   (U)  **Identity of Federal Officer Making Application**  This application is made by ▮Non-SES PII▮, a Supervisory Special Agent (SSA) of the Federal Bureau of Investigation (**FBI**) whose official duties at FBI Headquarters include supervision of the FBI's investigation of the above-captioned target based upon information officially furnished to SSA ▮PII▮.

TOP SECRET//NOFORN

Classified by:          ▮Classification Determination Information▮
Derived from:          ▮▮▮▮▮▮▮
Declassify on:         ▮▮▮▮

Declassified byC28W34B64 on 2/20/2020
this redacted version only

Of Tracking No. ▮▮▮▮

TOP SECRET//NOFORN

2. (U) **Identity of the Target**  The target of this application is Carter W.

Page, a U.S. person, and an agent of a foreign power, described in detail below.  The

status of the target was determined in or about October 2016 from information

provided by the U.S. Department of State.  The premises or property to be searched

and the information, material, or property to be seized, reproduced, or altered are

described in detail below.

3. (U)(S)  **Statement of Facts**  The United States relies upon the following facts

and circumstances in support of this application.

a.  (U)(S)  **The target of this application is an agent of a foreign power.**

(U) (S)  The following describes the foreign power and sets forth in detail a

description of the target and the target's activities for or on behalf of this foreign

power.

(U)   (S)  **The Government of the Russian Federation is a foreign power as**

**defined by 50 U.S.C. § 1801(a)(1).**

(U) (S)  **The Government of the Russian Federation (Russia)** is an internationally

recognized foreign government and, as of the execution of this application, is listed

in the Diplomatic List, published by the United States Department of State, and in

Permanent Missions to the United Nations, published by the United Nations, and its

establishments in the United States are components thereof.

TOP SECRET//NOFORN

Margin notes:
- 50 U.S.C. § 1804(a)(2) and 823(a)(2)]
- 50 U.S.C. § 1804(a)(3) and 823(a)(3)]
- 50 U.S.C. § 1804(a)(3)(A) and 823(a)(3)(A)]

SENATE-FISA2020-000002

TOP SECRET//NOFORN

(U) (S) <u>**Clandestine Intelligence Activities Of The Russian Federation**</u>



Foreign Power Statement for Russia

(U) (S)

TOP SECRET//NOFORN

-3-

SENATE-FISA2020-000003

XXXXXXXXXXXXXXXXXX

████████████████████████████████████████

Foreign Power Statement for Russia Continued

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

(U)  (S) Carter W. Page knowingly aids or abets other persons, who, pursuant to the direction of an intelligence service or network of Russia, knowingly engage in clandestine intelligence activities (other than intelligence gathering activities) for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States, or knowingly conspires with other persons to engage in such activities and, therefore, is an agent of a foreign power as defined by 50 U.S.C. § 1801(b)(2)(E).

(U)   (S/XXX) This application targets Carter Page.  The FBI believes Page has been the subject of targeted recruitment by the Russian Government for a number or years and currently is acting as an unregistered agent of the Russian Government to undermine and influence the outcome of the 2016 U.S. Presidential election in violation of U.S. criminal law.  Page is a former foreign policy advisor to a Candidate for U.S. President (Candidate #1).  The FBI expects that the collection requested herein will produce foreign intelligence information that will assist the

XXXXXXXXXXXXXXXXXX

SENATE-FISA2020-000004

FBI in more fully understanding the capabilities, activities, plans, and intentions of the Russian Government with respect to the upcoming elections. Such information will better enable the FBI and the U.S. Intelligence Community (USIC) to deter, disrupt, and defeat the Russian Government's and Page's activities in this regard.

I.  (U) (S/NF)  **RIS Efforts to Influence U.S. Presidential Elections.**

(U) (S/NF)  During a recent interview with an identified news organization, the Director of National Intelligence (DNI) stated, "Russia has tried to influence U.S. elections since the 1960s during the Cold War" and "there's a tradition in Russia of interfering with elections, their own and others." The DNI commented that this influence included providing money to particular candidates or providing disinformation. The DNI added that "it shouldn't come as a big shock to people, ... I think it's more dramatic maybe because they have the cyber tools that they can bring to bear in the same effort." ████████████████████

███████████████ Sensitive Information ████████████████

████████ ██████████ ████████ ███████████

███████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

█████████████████████████████████

SENATE-FISA2020-000005

TOP SECRET NOFORN

███████ Sensitive Information Cont. ███████

████████████████████████████████████

█████████████████████████

(U)   (S/XX)  In or about July 2016, WikiLeaks released a trove of e-mails from the
Democratic National Committee (DNC).[1] FBI investigation has determined that
WikiLeaks obtained the DNC e-mails as a result of computer intrusions by malicious
actors.  There has been speculation in U.S. media that the Russian Government was
behind the hack.  Russia has publicly denied any involvement in the hack.  Russian
President Vladimir Putin said in or about September 2016 that Russia was not
responsible for the hack, but said that the release of the DNC documents was a net
positive: "The important thing is the content that was given to the public."  Despite
Russia's denial, according to ████████████████████

████████ Sensitive Information ████████,██████

████████████████████████████████████

---

(U) [1] (S/XX)  According to information on its website, WikiLeaks is a multi-
national media organization and associated library.  WikiLeaks specializes in the
analysis and publication of large datasets of censored or otherwise restricted official
materials involving war, spying, and corruption.  According to open source
information, in or about July 2016, WikiLeaks released thousands of e-mails it says
are from the accounts of DNC officials.  As noted herein, the FBI is investigating the
role of the RIS in hacking into these accounts.

TOP SECRET NOFORN

SENATE-FISA2020-000006

TOP SECRET//NOFORN

████████████████████████████████ In addition, according to

an October 7, 2016 *Joint Statement from the Department of Homeland Security and the*

*Office of the Director of National Intelligence on Election Security* (Election Security Joint

Statement), the USIC is confident that the Russian Government directed the recent

compromises of e-mails from U.S. persons and institutions, including from U.S.

political organizations. The Election Security Joint Statement states that the recent

disclosures of e-mails on, among others, sites like WikiLeaks are consistent with the

methods and motivations of Russian-directed efforts. According to the Election

Security Joint Statement, these thefts and disclosures are intended to interfere with

the U.S. election process; activity that is not new to Moscow – the Russians have

used similar tactics and techniques across Europe and Eurasia, for example, to

influence public opinion there. The Election Security Joint Statement states that,

based on the scope and sensitivity of these efforts, only Russia's senior-most officials

could have authorized these activities.

(U)      (S//NF) Based on the Russian Government's historical efforts to influence

U.S. elections, the information regarding Russia's role in hacking into the DNC, and

the information discussed herein regarding Russia's coordination with Carter Page

and others, the FBI believes that the Russian Government is using its intelligence

network, which consists of, among others, Russian Government officials, Russian

TOP SECRET//NOFORN

SENATE-FISA2020-000007

XTOPXSECRETXANOFORNX

state media, and elements of the RIS, to undermine and improperly and illegally influence the 2016 U.S. Presidential election.

(U) (SXXIR) The FBI assesses that efforts by the Russian Government to undermine and influence the 2016 U.S. Presidential election have the effect of harming U.S. national security. As stated in the legislative history of FISA:

> Not only do foreign powers engage in spying in the United States to obtain information, they also engage in activities which are intended to harm the Nation's security by affecting the course of our Government, the course of public opinion, or the activities of individuals. Such activities may include political action (recruiting, bribery or influencing of public officials to act in favor or the foreign power), disguised propaganda (including the planting of false or misleading articles or stories), and harassment, intimidation, or even assassination of individuals who oppose the foreign power. Such activity can undermine our democratic institutions as well as directly threaten the peace and safety of our citizens.

H.R. Rep. No. 95-1283, pt. 1, at 41 (1978).

## II. (U)(SXXX) The Russian Government's Attempts to Influence the 2016 U.S. Presidential Election.

(U) (SXXIR) In or about March 2016, George Papadopoulos[2] and Carter Page (the target of this application) were publicly identified by Candidate #1 as part of his/her foreign policy team. Based on reporting from a friendly foreign government, ███

██████████████ Foreign  Government Third Party Equity ██████████████

---

(U) [2] (S)  Papadopoulos is a current subject of an FBI investigation.

XORXSECREIXXNOFORNX

-8-

TOP SECRET//NOFORN

███████, the FBI believes that the Russian Government's efforts are being coordinated with Page and perhaps other individuals associated with Candidate #1's campaign.  In or about July 2016, the above-referenced friendly foreign government provided information to a ▮US Government Official▮ ████████ ███ regarding efforts made by the Russian Government to influence the 2016 U.S. Presidential election.  Specifically, according to this information, during a meeting in or about April 2016 between officials of the friendly foreign government and George Papadopoulos, ▮ Foreign Government Third Party Equity ▮ ██████████████████████████████████████,
Papadopoulos suggested that Candidate #1's campaign had received some kind of suggestion from Russia that Russia could assist with the anonymous release of information during the campaign that would be damaging to another candidate for U.S. President (Candidate #2).  It was unclear whether Papadopoulos or the Russians were referring to material acquired publicly or through other means.  It was also unclear from this reporting how Candidate #1's campaign reacted to the alleged Russian offer.  Nevertheless, as discussed below, the FBI believes that election influence efforts are being coordinated between the RIS and Page, and possibly others.

(U//FOUO)  The FBI is investigating several individuals associated with

TOP SECRET//NOFORN

9

XXXXXXXXXXXXXXXXXXX

Candidate #1's campaign, including Papadopoulos and Page, to determine the extent to which such individuals are engaged in unlawful activities in support of Russia's efforts to undermine and influence the 2016 U.S. Presidential election. The FBI believes that Page is coordinating election influence efforts with the Russian Government. As discussed below, Page has established relationships with Russian Government officials, including Russian intelligence officers, and has been identified by source reporting as an intermediary with Russian leadership in "a well-developed conspiracy of co-operation" to influence the 2016 U.S. Presidential election.

III. (U)(S)  Carter Page.

    A. (S)  Page's Connections to Russia and the RIS.

(U)   (S/XXX) Page, a U.S. citizen, is the founder and managing partner of Global Energy Capital LLC (GEC), an investment management and advisory firm that focuses on the energy sector primarily in emerging markets. According to Page's biography on GEC's website, Page is a graduate of the United States Naval Academy and has a background in investment banking, and transactional experience in the energy and power sector, with specific experience in Russia where

TOP SECRET//NOFORN

SENATE-FISA2020-000010

he was an advisor on key transactions for Gazprom.[3]  The FBI's investigation of Page has determined that he has had financial, political, and business ties with the Russian Government.  The FBI believes that the Russian Government has exploited these ties to solicit Page's cooperation with Russia's efforts to undermine and influence the 2016 U.S. Presidential election.

(U)    (S//NF)  Based on the results of FBI investigation, which includes review of open source information and information provided by Page during interviews with the FBI, from approximately 2004 - 2007, Page lived in Russia and worked as Chief Operating Officer for a U.S. investment firm (Firm #1).  During this time, Page began business dealings with Gazprom and advised Gazprom on some of its largest deals and helped broker relationships with investors in both New York and London.  In or about 2008, Page left Firm #1 and started GEC.  According to GEC's website, GEC acts in an advisory role for individuals and organizations that wish to establish a business presence overseas.  Since founding GEC, Page has mostly done advisory assignments, such as counseling foreign investors on buying assets in Russia.

---

(U)   [3] (S//NF)  According to information on Gazprom's website, Gazprom, which was established in Russia, is a global energy company that is among Russia's top four oil producers. ███████████████████████████
███████████ Sensitive Information ███████████████████████
████████████████████████████████████████████████████
██████████████

TOP SECRET//NOFORN

(U)     (XXXX) According to information provided by Page during a June 2009 interview with the FBI,[4] shortly after Page's return to the U.S. in or about 2007, Page began a professional relationship with Aleksandr Bulatov.[5] During the course of their relationship, which lasted about one year, Page offered to introduce Bulatov to his political and business contacts and provided a copy of Firm #1's annual report, which was not available through open sources at the time. ██████████████

████████ Sensitive Information ████████, the FBI believes Bulatov likely requested the report from Page as part of the recruitment cycle and to further assess Page's openness to provide non-public information, which would also indicate his willingness to act as a source for the Russian Government. According to Page, his last contact with Bulatov was in or about August 2008, approximately two months after Bulatov returned to Moscow.

---

(U) [4] (XXXX) The FBI has conducted a series of interviews of Page to discuss his relationships with Aleksandr Bulatov and Victor Podobnyy, who, as discussed in detail below, ██████ Sensitive Information ██████.

(U) [5] (XXXX) Bulatov is a ██████ Sensitive Information ██████████ ███████████████. Bulatov was a Russian diplomat who was assigned to the Trade Representation Office of the Russian Federation in New York City, NY from approximately 2004 - 2007. ████████

████████ Sensitive Information ████████ ███████████████████████████████████

TOP SECRET//NOFORN

12

XXXX▓▓CXREXX/XXXXXXXXX

(U)  (▓/XXX)  According to information provided by Page during a 2013 interview with the FBI, which was conducted to discuss his relationship with Victor Podobnyy, who, as discussed below, ████ Sensitive Information ████, the FBI believes that, in or about January 2013, Page began a professional relationship with Victor Podobnyy, likely after they met at an energy symposium in New York. Podobnyy, a Russian citizen who was assigned to the Russian Federation Mission to the United Nations in New York City from approximately December 2012 to September 2013, ████ Sensitive Information ████

████████████████████████

████████████████████████

████████

(U)     (S/XX)  In or about January 2015, Podobnyy, along with Evgeny Buryakov and Igor Sporyshev, were charged by a sealed complaint in the U.S. District Court for the Southern District of New York for violations of 18 U.S.C. §§ 371 and 951 (conspiring to act, and acting as, an unregistered agent of a foreign government). According to the complaint, Buryakov worked in the United States as an agent of the SVR. Specifically, Buryakov operated under non-official cover, posing as an employee in the Manhattan office of a Russian bank. Buryakov worked with two other SVR agents, Podobnyy and Sporyshev, to gather intelligence on behalf of

XXXX▓▓CXREXX/XXXXXXXXX

SENATE-FISA2020-000013

Russia.[6]  The complaint states that the intelligence gathering efforts of Podobnyy and Sporyshev included, among other things, attempting to recruit New York City residents as intelligence sources for Russia.

(U)   (S//NF) The FBI believes that Page is one of the individuals that Podobnyy and Sporyshev attempted to recruit, and Page is described as "Male-1" in the complaint.  As noted above, Page began a relationship with Podobnyy in or about January 2013.  According to the complaint, in or about April 2013, Podobnyy and Sporyshev discussed Podobnyy's efforts to recruit "Male-1," who was working as a consultant in New York City, as an intelligence source.  In or about March 2016, the FBI interviewed Page about Page's relationship with Podobnyy.  Based on information provided by Page during this interview, the FBI determined that Page's relationship with Podobnyy was primarily unidirectional, with Page largely providing Podobnyy open source information and contact introductions.  During one interview, Page told the FBI that he approached a Russian Minister, who was surrounded by Russian officials/diplomats, and "in the spirit of openness," Page

---

(U)   [6] (S//NF) Buryakov was arrested in or about January 2015.  At the time of Buryakov's arrest, Podobnyy and Sporyshev no longer lived in the United States and were not arrested.  In or about March 2016, Buryakov pled guilty to conspiring to act in the United States as an agent of Russia, without providing prior notice to the Attorney General.  In or about May 2016, Buryakov was sentenced to 30 months in prison.

SENATE-FISA2020-000014

TOP SECRET//ORCON/NOFORN

informed the group that he was "Male-1" in the Buryakov complaint.  The FBI

believes that this information reveals that Page was targeted as part of an RIS

recruitment operation and that Podobnyy had started the actual recruitment of Page

by tasking him to respond to somewhat innocuous requests.  The FBI also believes

that Page knew that the RIS was attempting to recruit him by self-identifying as the

individual named as "Male-1" in the complaint.

(U)  B.  (S//NF)  Page's Coordination with Russian Government Officials on 2016 U.S. Presidential Election Influence Activities.

(U)  (S//NF)  According to open source information, in July 2016, Page traveled to

Russia and delivered the commencement address at the New Economic School.[7]  In

addition to giving this address, the FBI has learned that Page met with at least two

Russian officials during this trip.  First, according to information provided by an FBI

confidential human source (Source #1),[8] Sub-Source #1[9] reported that Page had a

_____

(U)  [7] (S//NF)  The FBI confirmed that Page traveled to Russia in July 2016 ▊Sensitive Method▊

(U)  [8] (TS//NF)  Source #1 is a ▊▊▊▊ Foreign Government Third Party Equity ▊▊▊▊▊ and has been an FBI source since in or about October 2013.  Source #1's reporting has been corroborated and used in criminal proceedings and the FBI assesses Source #1 to be reliable.  Source #1 has been compensated approximately $95,000 by the FBI and the FBI is unaware of any derogatory information pertaining to Source #1.

(U)  [9] (S//NF)  Source #1, who now owns a foreign business/financial intelligence firm, was approached by an identified U.S. person, who indicated to Source #1 that a

TOP SECRET//NOFORN

-15-

XDOXXIXXXXXXXXXXXXXN

U.S.-based law firm had hired the identified U.S. person to conduct research regarding Candidate #1's ties to Russia (the identified U.S. person and Source #1 have a long-standing business relationship). The identified U.S. person hired Source #1 to conduct this research. The identified U.S. person never advised Source #1 as to the motivation behind the research into Candidate #1's ties to Russia. The FBI speculates that the identified U.S. person was likely looking for information that could be used to discredit Candidate #1's campaign.

(U)   (TS/XX) Source #1 tasked his sub-source(s) to collect the requisite information. After Source #1 received information from the sub-source(s), described herein, Source #1 provided the information to the identified U.S. person who had hired Source #1 and to the FBI. In addition to the specific information pertaining to Page reported in this application, Source #1 has provided other information relating to the Russian Government's efforts to influence the election that do not directly pertain to Page, including the possibility of the Russian's also possessing a dossier on Candidate #1, which the FBI is currently investigating.

(U)   (TS/XX) Notwithstanding Source #1's reason for conducting the research into Candidate #1's ties to Russia, based on Source #1's previous reporting history with the FBI, whereby Source #1 provided reliable information to the FBI, the FBI believes Source #1's reporting herein to be credible. Moreover, because of outside corroborating circumstances discussed herein, such as the reporting from a friendly foreign government that a member of Candidate #1's team received a suggestion from Russia that Russia could assist with the release of information damaging to Candidate #2 and Russia's believed hack and subsequent leak of the DNC e-mails, the FBI assesses that Source #1's reporting is credible.

(U)   (TS/XX) Source #1 maintains a network of sub-sources, who, in many cases, utilize their own sub-sources. The source reporting in this application, which was provided to the FBI by Source #1, is derived primarily from a ▮▮▮▮▮ Source Description, who uses a network of sub-sources. Thus, neither Source #1 nor the ▮Source Description▮ had direct access to the information being reported by the sub-sources identified herein (each sub-source will be separately identified herein based on the information provided by Source #1). The FBI has no control over the ▮ Source Description ▮ or any of the sub-sources used by the ▮ Source Description ▮

TOP SECRET/X/XOFORN

SENATE-FISA2020-000016

TOP SECRET//NOFORN

secret meeting with Igor Sechin, who is the President of Rosneft [a Russian energy company] and a close associate to Russian President Putin.[10]  Sub-Source #1 reported that, during the meeting, Page and Sechin discussed future bilateral energy cooperation and the prospects for an associated move to lift Ukraine-related Western sanctions against Russia.  Although Sub-Source #1 reported that Page had reacted positively to the discussions, Sub-Source #1 commented that Page was generally non-committal in a response.

---

(U)  (TS//XXX) Source #1 reported the information contained herein to the FBI over the course of several meetings with the FBI from in or about June 2016 through August 2016.

(U) [9] (TS//XXX) Sub-Source #1 is an independent sub-source operated by Source #1's ███Source Description███.  The FBI believes that Sub-Source #1 does not know his/her reporting will be directed to the FBI.  ████████ ██ █
████████ █ ███████Source Description███████
██████

(U) [10] (S//XXX) In or about April 2014, the U.S. Department of the Treasury (USDOT) announced sanctions that would be taken against Russian Government officials and entities as a result of Russian efforts to destabilize Ukraine.  Sechin was identified as an official of the Russian Government, and further identified as the President and Chairman of the Management Board for Rosneft, a position he continues to hold.  The USDOT announcement also stated Sechin was formerly the Deputy Prime Minister of the Russian Federation from 2008 until 2012, and from 2004 until 2008, Sechin was the Deputy Chief of Staff for Russian President Putin.  The USDOT sanctions announcement identified Sechin as someone who has "shown utter loyalty to Vladimir Putin – a key component to his current standing."

TOP SECRET//NOFORN

SENATE-FISA2020-000017

TOP SECRET//NOFORN

(U)   (TS//XXX) Second, according to Source #1, Sub-Source ▓ reported that, in or about July 2016, an official close to S. Ivanov, who the FBI assesses to be Sergey Ivanov, the Head of the Russian Presidential Administration, confided to a compatriot that Divyekin [who is assessed to be Igor Nikolayevich Divyekin], a senior colleague in the Internal Political Department of the PA [assessed to be a reference to the Russian Presidential Administration], had met secretly with Page and that their agenda for the meeting included Divyekin raising a dossier or "kompromat"[12] that the Kremlin possessed on Candidate #2 and the possibility of it being released to Candidate #1's campaign.[13] According to reporting from Sub-



(U) [11] (XX//XX)   Source Description

(U)   [12] (S)  Kompromat is a Russian term for compromising material about a politician or political figure, which is typically used to create negative publicity or blackmail.

(U)[13]  (S//XX)  As noted above, in or about April 2016, Papadopoulos suggested, during a meeting with a friendly foreign government, that Candidate #1's campaign had plenty of material to use against Candidate #2 and that Russia could assist with the anonymous release of information that would be damaging to Candidate #2. The FBI assesses that Divyekin planned to offer the "kompromat" to Page during their July 2016 meeting to further influence the 2016 U.S. Presidential election by providing derogatory information about Candidate #2 to Candidate #1.

TOP SECRET//NOFORN

SENATE-FISA2020-000018

TOP SECRET//NOFORN

Source ██, this dossier had been compiled by the RIS over many years, dating back to the 1990s. Further, according to Sub-Source ██, this dossier was, by the direct instructions of Russian President Putin, controlled exclusively by Senior Kremlin Spokesman Dmitriy Peskov. Accordingly, the FBI assesses that Divyekin received direction by the Russian Government to disclose the nature and existence of the dossier to Page. In or about June 2016, Sub-Source ██ reported that the Kremlin had been feeding information to Candidate #1's campaign for an extended period of time. Sub-Source ██ also reported that the Kremlin had been feeding information to Candidate #1's campaign for an extended period of time and added that the



(U)  14 (XXXXX)         Source Description
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████

(U)  15 (TSXXF)          Source Description
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████

(U)  16 (TSXXF)          Source Description
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

(U)  17 (TSXXF)          Source Description
██████████████████████████████████████████
██████████████████████████████████

TOP SECRET//NOFORN

SENATE-FISA2020-000019

information had reportedly been "very helpful." The FBI assesses the information

funneled by the Russians to Page may be part of Russia's intent to influence the 2016

U.S. Presidential election.

(U)　　(TS/XXX)　According to information provided by Sub-Source █████████

████ Source Description ████████████ there was "a well-developed

conspiracy of co-operation between them [assessed to be individuals involved in

Candidate #1's campaign] and the Russian leadership." Sub-Source █ reported that

the conspiracy was being managed by Candidate #1's then campaign manager, who

was using, among others, foreign policy advisor Carter Page as an intermediary.

Sub-Source █ further reported that the Russian regime had been behind the above-

described disclosure of DNC e-mail messages to WikiLeaks. Sub-Source █ reported

that WikiLeaks was used to create "plausible deniability," and that the operation

had been conducted with the full knowledge and support of Candidate #1's team,

which the FBI assesses includes at least Page. In return, according to Sub-Source █

Candidate #1's team, which the FBI assesses includes at least Page, agreed to sideline

Russian intervention in Ukraine as a campaign issue and to raise U.S./NATO

defense commitments in the Baltics and Eastern Europe to deflect attention away

from Ukraine.

(U)　　(TS/XXX)　Notably following Page's July 2016 meetings with Sechin during

SENATE-FISA2020-000020

XXOPXSECXXEX/XNOXXORX

which he discussed prospects for lifting Ukraine-related Western sanctions against Russia, a July 2016 article in an identified news organization reported that Candidate #1's campaign worked behind the scenes to make sure Political Party #1's platform would not call for giving weapons to Ukraine to fight Russian and rebel forces, contradicting the view of almost all Political Party #1's foreign policy leaders in Washington. The article stated that Candidate #1's campaign sought "to make sure that [Political Party #1] would not pledge to give Ukraine the weapons it has been asking for from the United States." Further, an August 2016 article published by an identified news organization characterized Candidate #1 as sounding like a supporter of Ukraine's territorial integrity in September [2015], adopted a "milder" tone regarding Russia's annexation of Crimea. The August 2016 article further reported that Candidate #1 said Candidate #1 might recognize Crimea as Russian territory and lift punitive U.S. sanctions against Russia. The article opined that while the reason for Candidate #1's shift was not clear, Candidate #1's more conciliatory words, which contradict Political Party #1's official platform, follow Candidate #1's recent association with several people sympathetic to Russian influence in Ukraine, including foreign policy advisor Carter Page. Thus, the FBI assesses that, following Page's meetings in Russia, Page helped influence Political Party #1 and Candidate #1's campaign to alter their platforms to be more

XXOPXSECREXX/XXOXORX

SENATE-FISA2020-000021

TOP SECRET//ORCON/NOFORN

sympathetic to the Russian cause.

(U)      (TS//NF) In addition to the foregoing, in or about August 2016, Sub-Source ▮ reported that the above-described leak of the DNC e-mails to WikiLeaks had been done, at least in part, as an attempt to swing supporters of an identified individual, who had been running against Candidate #2 for their political party's nomination, away from Candidate #2 and to Candidate #1. Sub-Source ▮ reported that this objective had been conceived and promoted by, among others, Page, who had discussed the objective directly with Sub-Source ▮

IV. (U)(S//NF) **Page's Denial of Cooperation with the Russian Government.**

(U)      (S//NF) On or about September 23, 2016, an identified news organization published an article (September 23rd News Article), which was written by the news organization's Chief Investigative Correspondent, alleging that U.S. intelligence officials are investigating Page with respect to suspected efforts by the Russian Government to influence the U.S. Presidential election. According to the September 23rd News Article, U.S. officials received intelligence reports that when Page was in Moscow in July 2016 to deliver the above-noted commencement address at the New Economic School, he met with two senior Russian officials. The September 23rd News Article stated that a "well-placed Western intelligence source" told the news organization that Page met with Igor Sechin, a longtime Putin associate and former

TOP SECRET//ORCON/NOFORN

SENATE-FISA2020-000022

TOP SECRET//NOFORN

Russian deputy minister who is now the executive chairman of Rosneft. At their alleged meeting, Sechin raised the issue of the lifting of sanctions with Page. According to the September 23rd News Article, the Western intelligence source also reported that U.S. intelligence agencies received reports that Page met with another top Putin aide - Igor Divyekin, a former Russian security official who now serves as deputy chief for internal policy and is believed by U.S. officials to have responsibility for intelligence collected by Russian agencies about the U.S. election. [18]

(U)    (S//NF) According to the September 23rd News Article, certain members of Congress were "taken aback" after being briefed on the alleged meetings and viewed the meetings as a possible back channel to the Russians that could undercut U.S. foreign policy. The September 23rd News Article also stated that, following the briefing, the Senate Minority Leader wrote to the FBI Director, and citing the reports

---

(U)  [18]  (S) As discussed above, Source #1 was hired by a business associate to conduct research into Candidate #1's ties to Russia. Source #1 provided the results of his research to the business associate, and the FBI assesses that the business associate likely provided this information to the law firm that hired the business associate in the first place. Source #1 told the FBI that he/she only provided this information to the business associate and the FBI. Given that the information contained in the September 23rd News Article generally matches the information about Page that Source #1 discovered during his/her research, the FBI assesses that Source #1's business associate or the law firm that hired the business associate likely provided this information to the press. The FBI also assesses that whoever gave the information to the press stated that the information was provided by a "well-placed Western intelligence source." The FBI does not believe that Source #1 directly provided this information to the press.

TOP SECRET//NOFORN

SENATE-FISA2020-000023

TOP SECRET//NOFORN

of meetings between an advisor to Candidate #1 [the advisor was unnamed in the letter, but the article indicated that the advisor is Page] and "high ranking sanctioned individuals" [in context, likely a reference to Sechin] in Moscow over the summer as evidence of "significant and disturbing ties" between Candidate #1's campaign and the Kremlin that needed to be investigated by the FBI.

(U)      (S//NF) Based on statements in the September 23rd News Article, as well as in other recent articles published by identified news organizations, Candidate #1's campaign repeatedly has made public statements in an attempt to create the appearance of distance between Page and Candidate #1's campaign.  For example, the September 23rd News Article noted that Page's precise role in Candidate #1's campaign is unclear.  According to the article, a spokesperson for Candidate #1's campaign called Page an "informal foreign advisor" who "does not speak for [Candidate #1] or the campaign."  In addition, another spokesperson for Candidate #1's campaign said that Page "has no role" and added "[w]e are not aware of any of his activities, past or present."  However, the article stated that the campaign spokesperson did not respond when asked why Candidate #1 had previously described Page as an advisor.  In addition, on or about September 25, 2016, an identified news organization published an article that was based primarily on an interview with Candidate #1's current campaign manager (the September 25th News

TOP SECRET//NOFORN

SENATE-FISA2020-000024

TOP SECRET//NOFORN

Article).  During the interview, the campaign manager stated, "[Page is] not part of the campaign I'm running."  The campaign manager added that Page is not part of Candidate #1's national security or foreign policy briefings since he/she became campaign manager.  In response to a question from the interviewer regarding reports that Page has been meeting with Russian officials to essentially attempt to conduct diplomatic negotiations with the Russian Government, the campaign manager responded, "If [Page is] doing that, he's certainly not doing it with the permission or knowledge of the campaign . . . ."  Although it appears that Candidate #1's campaign is attempting to publicly distance itself from Page, the FBI assesses based on the totality of circumstances described herein that Page is engaged in efforts to influence the U.S. Presidential election on behalf of the Russian Government.

(U)   (S//NF)  On or about September 25, 2016, Page sent a letter to the FBI Director.  In this letter, Page made reference to the accusations in the September 23rd News Article and denied them.  Page stated that the source of the accusations is nothing more than completely false media reports and that he did not meet this year with any sanctioned official in Russia.  Page also stated that he would be willing to

TOP SECRET//NOFORN

SENATE-FISA2020-000025

XXXXXXXXXXXXXXXXXXXXX

discuss any "final" questions the FBI may have.[19]

(U)      (XXXX)  Additionally, on or about September 26, 2016, an identified news organization published an article that was based on an interview with Page (September 26th News Article).  In the September 26th News Article, Page stated that all of the accusations are complete "garbage" and that he did not meet with Sechin or Divyekin.  Page also stated that he would be taking a leave of absence from his work with Candidate #1's campaign because the accusations are a "distraction."  Similar to the above-described comments from officials with Candidate #1's campaign, the FBI believes that Page's comments are self-serving and, based on the source reporting described above, untrue.  Notwithstanding public comments from officials affiliated with Candidate #1's campaign that distance the campaign from Page, Page's public denial about the accusations in the September 23rd News Article, and Page's subsequent statement about taking a leave of absence from his work with the campaign, because Page was one of the first identified foreign policy advisors for Candidate #1's campaign, Page has likely established close relationships with other members of Candidate #1's campaign, and the FBI believes that Page will likely continue to have access to members of

---

(U)   [19] (XXXX)  As a result of this letter, the FBI plans to contact Page and request an interview.

XXXXXXXXXXXXXXXXXXX

SENATE-FISA2020-000026

TOP SECRET//NOFORN

Candidate #1's campaign and attempt to exert influence on foreign policy matters, regardless of whatever formal role he plays in the campaign.

### V. (U) (S//NF) Page's Meeting with Another FBI Confidential Human Source.

(U)  (S//NF)  On or about October 17, 2016, Page met with an FBI confidential human source (Source #2),[20] which the FBI consensually monitored and recorded. According to the FBI's review of the recorded conversation, Source #2 made general inquiries about the media reporting regarding Page's contacts with Russian officials. Although Page did not provide any specific details to refute, dispel, or clarify the media reporting, he made vague statements that minimized his activities.  Page also made general statements about a perceived conspiracy against him mounted by the media.  However, notwithstanding these vague and general statements, Page admitted that he has had a "longstanding constructive relationship with the Russians, going back, throughout my life."  In addition to this statement, Page made comments that lead the FBI to believe Page continues to be closely tied to Russian

---

(U)  [20] (S) Source Description



TOP SECRET//NOFORN

SENATE-FISA2020-000027

~~TOP SECRET//NOFORN~~

officials.  Specifically, Page mentioned a foreign policy think tank project (but did not disclose the specifics of the project to Source #2).  With respect to funding the project, Page said, "I don't want to say there'd be an open checkbook, but the Russians would definitely [fund it] ... but, that has its pros and cons, right?"  The FBI believes this statement reflects Page's belief that he has significant relationships with Russian officials who will provide financial support for this foreign policy project.

(U)   (S//XX) During this meeting with Source #2, Page said that he was no longer officially affiliated with Candidate #1's campaign, but added that he may be appearing in a television interview within the next week when he travels to the United Kingdom.  According to Page, the interview will be discussing the potential change in U.S.  foreign policy as it pertains to Russia and Syria if Candidate #1 wins the election.  Accordingly, although Page claimed that he is no longer officially affiliated with the campaign, the FBI assesses that Page continues to coordinate with the Russian Government, and perhaps others, in efforts to influence the U.S. Presidential election.

~~TOP SECRET//NOFORN~~

SENATE-FISA2020-000028

TOP SECRET//NOFORN

VI. (U) (S)  <u>Facilities Used by Page</u>.



SENATE-FISA2020-000029



SENATE-FISA2020-000030

XXXXXXXXXXXXXXXXX

(U)   (X) ████ Sensitive Information ██████████████████

(U)   (X/XX) ███████████████████████████████████████



²² (U) ██████████████████████████████████████████

TOP SECRET//NOFORN

Sensitive Information

**VII.    (U) <u>Conclusion</u>.**

(U)    (S//NF)  As discussed above, the FBI believes that Page has been collaborating

and conspiring with the Russian Government, to include elements of the RIS, to

influence public opinion and affect the course of the U.S. Government.  Based on the

foregoing facts and circumstances, the FBI submits that there is probable cause to

believe that Page knowingly aids or abets other persons, who, pursuant to the

direction of an intelligence service or network of Russia, knowingly engage in

clandestine intelligence activities (other than intelligence gathering activities) for or

on behalf of such foreign power, or knowingly conspires with other persons to

engage in such activities and, therefore, is an agent of a foreign power as defined by

50 U.S.C. § 1801(b)(2)(E).

(U)    (S//NF)  As the activities discussed herein involve Page aiding, abetting, or

conspiring with Russian Government officials and elements of the RIS in clandestine

intelligence activities, the FBI submits that there is probable cause to believe that

such activities involve or are about to involve violations of the criminal statutes of

TOP SECRET//NOFORN

-32-

TOP SECRET//NOFORN

the United States, including 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 951 (Agents of

Foreign Governments) and 22 U.S.C. §§ 612, et seq. (Foreign Agents Registration

Act).

(U)   (X) ██████ Sensitive Information ██████████████████

████████████████████████████████████████████████████

████████████████████████████

(U) b.   (X)  **The premises or property to be searched contains foreign intelligence
information.**

50 U.S.C.
1823(a)(3)(B)]

(U)   (X)  The premises or property to be searched contains foreign intelligence

information, in that investigation by the FBI has determined that there is probable

cause to believe that Page is an agent of Russia, a foreign power, all as described

herein.  Based upon its investigations of this foreign power and its agents, the FBI

believes that this target maintains information, material, and/or property related to

such activities secreted in the premises or property specified herein.  Thus, the FBI

expects that foreign intelligence information, such as that described herein, will be

contained in the premises or property to be searched.

TOP SECRET//NOFORN

SENATE-FISA2020-000033

XXTOPXSECRETXXNOFORXX

(U) c.   (X)  The facilities or places at which electronic surveillance will be directed, and the premises or property to be searched.



50 U.S.C.
§ 1804(a)(3)(B)
and
1823(a)(3)(C)]

XXTOPXSECRETXXNOFORNX

-34-

████████████████

(U)   (X) ███ Sensitive Information ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

(U)   (X) ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ ████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████

████████

TOP SECRET//NOFORN

(U) (S) ██████ Sensitive Information ██████

██████████████████████

████████████████

██████████

██████████████████

████

(U) ████████████████
████

██████████████████ ████ █

████████████

█ ██████████████

██████████████████

██████████████████

████████████

4.(U)(S) **Proposed Minimization Procedures** As to all information acquired

50 U.S.C.
1804(a)(4)
.d
23(a)(4)]

through the authorities requested herein, the FBI will follow its ██████

████ ████ ██████ Sensitive Information ██████

██████████████████

TOP SECRET//NOFORN

-36-



SENATE-FISA2020-000037

TOP SECRET//NOFORN



TOP SECRET//NOFORN

SENATE-FISA2020-000038

TOP SECRET//NOFORN

5. (U//S) **Nature of the Information Sought** Through the authorities

requested herein, the United States is seeking foreign intelligence information with

respect to the activities of the target described above and detailed further in the

certification set forth below. As indicated by the facts set forth herein, the FBI is

seeking foreign intelligence information that relates and is necessary to the ability of

the United States to protect against clandestine intelligence activities by an

intelligence service or network of this foreign power or by agents of this foreign

power, and information with respect to a foreign power or foreign territory that

relates and is necessary to the national defense, security, and the conduct of the

foreign affairs of the United States. These same authorities may also incidentally

acquire other foreign intelligence information, as defined by the Act.

Sensitive Information

50 U.S.C.
§ 1804(a)(5)
nd
923(a)(5)]

TOP SECRET//NOFORN

SENATE-FISA2020-000039

XXXXXXXXXXXXXXXXXX



(U)

SENATE-FISA2020-000040

TOP SECRET//NOFORN

0 U.S.C.
§ 1804(a)(6)(A)-
)
nd
423(a)(6)(A)-(E)]

6. (U)(X)  **Certification**  The certification of the Assistant to the President for National Security Affairs or an Executive branch official duly designated by the President as a certifying official in Executive Order Numbers 12139 (electronic surveillance) and 12949 (physical search), as amended, is set forth below.



Sensitive Information

(U)  **The Purpose of the Authorities Requested**

(U)     (X)  The FBI's foreign intelligence goals for this investigation are set forth in the certification of the Executive Branch official contained herein.  However, the authorities requested in this application may produce information and material which might, when evaluated by prosecutive authorities, constitute evidence of a violation of United States law, and this investigation may result in an eventual

TOP SECRET//NOFORN

SENATE-FISA2020-000041

TOP SECRET//NOFORN

criminal prosecution of the target. Nevertheless, as discussed in the certification, at least a significant purpose of this request for electronic surveillance and physical search is to collect foreign intelligence information as part of the FBI's investigation of this target.



[50 U.S.C. 1804(a)(7)]   7. (U) ▮ ▮ Sensitive Information

[50 U.S.C. § 1804(a)(8) nd 1823(a)(8)]   8.   (U) **Previous Applications** None.

TOP SECRET//NOFORN

-42-

TOP SECRET//NOFORN
XXXXXXXXXXXXXXXXXXX

40 U.S.C.
1824(d)]
40 U.S.C.
1804(a)(9)]

### 9. (U)(S) Duration of the Authorities Requested (See also, 50 U.S.C. § 1824(d))

The authorities requested should not automatically terminate when foreign

intelligence information has first been obtained. Additional information of the same

type will be obtained on a continuous basis throughout the entire period requested.

The activities which the United States must identify and monitor are incremental

and continuous, and communications relating to such activities are often disguised

to appear innocuous. The type of foreign intelligence information being sought and

the fact that the activities of this target are ongoing preclude the conclusion that, at a

given time, all such information has been obtained and collection can be ended.

Accordingly, the United States requests the authorities specified herein **for a period**

**of ninety (90) days.**

10. ████ Sensitive Information ████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

TOP SECRET//NOFORN

-43-

TOP SECRET//NOFORN



TOP SECRET//NOFORN

SENATE-FISA2020-000044

TOP SECRET//NOFORN



Sensitive Information

12.(U)

TOP SECRET//NOFORN

SENATE-FISA2020-000045

Sensitive Information



13. (U//S)

SENATE-FISA2020-000046

TOP SECRET//NOFORN

██ █ Sensitive Information

████████████████████

████████████████

████████████████

███████████

████████████████

██████████████

████████████████

█████████████

(U) (S) **Specific Authorities Requested** Based upon the foregoing information, the United States requests that this Court authorize the FBI to conduct the activities described immediately below for the period requested herein.

   (U) (S) **Carter W. Page:**

   (a.) Sensitive Information

████

███████████

████████████

█████████████



TOP SECRET//NOFORN

-47-

XFOR SECRET/XOFORN



Sensitive Information

SENATE-FISA2020-000048

TOP SECRET//NOFORN



(d.)

(U)
(e.) (X)

(f.)

(U) (X)

NOFORN//NOFORN

-49-

TOP SECRET//NOFORN



Sensitive Information

0 U.S.C.
1805(j)]

See 50 U.S.C.
1842(d)(2)(C)]

TOP SECRET//NOFORN

SENATE-FISA2020-000050

TOP SECRET//NOFORN



- Sensitive Information

TOP SECRET//NOFORN

SENATE-FISA2020-000051

TOP SECRET//NOFORN

Sensitive Information

*----- The remainder of this page is intentionally left blank. -----*

TOP SECRET//NOFORN

SENATE-FISA2020-000052

TOP SECRET//NOFORN

(U)    (S) The FBI has reviewed this verified application for accuracy in accordance with its April 5, 2001 procedures, which include sending a copy of the draft to the appropriate field office(s). A copy of those procedures was previously provided to the Court.


----- *The remainder of this page is intentionally left blank.* -----

TOP SECRET//NOFORN

-53-

SENATE-FISA2020-000053

~~TOP SECRET//NOFORN~~

### (U)  VERIFICATION

(U)　　(X) I declare under penalty of perjury that the foregoing information

regarding **Carter W. Page** is true and correct.  Executed pursuant to Title 28, United

States Code, § 1746 on ___10/20/16___ .



Non-SES PII

I, LeeAnn Flynn Hall, Clerk, FISC,
certify that this document is
a true and correct copy
of the original.

~~TOP SECRET//NOFORN~~

-54-

SENATE-FISA2020-000054

TOP SECRET//NOFORN

## (U) CERTIFICATION

(U)   (S) I, the undersigned, having been designated as one of the officials authorized to make the certifications required by the Foreign Intelligence Surveillance Act of 1978, as amended, do hereby certify with regard to the electronic surveillance and physical search requested in this verified application targeting **Carter W. Page**, an agent of the Government of Russia, a foreign power, as follows:

50 U.S.C.
§ 1804(a)(6)(A)
and
323(a)(6)(A)]

(A) (U) The information sought through the authorities requested herein is foreign intelligence information.

50 U.S.C.
§ 1804(a)(6)(B)
and
323(a)(6)(B)]

(B) (U) At least a significant purpose of the authorities requested herein is to obtain foreign intelligence information and, notwithstanding the related criminal matters described in this application, the primary purpose of the authorities requested herein is **not** to obtain information for the prosecution of crimes other than those referred to in the Act, 50 U.S.C. § 1801(a)-(e), or related to such foreign intelligence crimes.

50 U.S.C.
§ 1804(a)(6)(C)
and
323(a)(6)(C)]

(C) (U) The foreign intelligence information sought by the authorities requested herein cannot be reasonably obtained by normal investigative techniques.

50 U.S.C.
§ 1804(a)(6)(D)
and
323(a)(6)(D)]

(D) (U) (S) The type of foreign intelligence information being sought through the authorities requested herein is that described in 50 U.S.C. § 1801(e)(1)(C), i.e.,

TOP SECRET//NOFORN

SENATE-FISA2020-000055

XXOPXSXXCXRXXX/XXXOXKXXXX

information that relates and is necessary to the ability of the United States to protect against clandestine intelligence activities by an intelligence service or network of this foreign power or by agents of this foreign power, and 50 U.S.C. § 1801(e)(2)(A)-(B), i.e., information with respect to a foreign power or foreign territory that relates and is necessary to the national defense or security, and the conduct of the foreign affairs of the United States. These same authorities may also incidentally acquire foreign intelligence information as defined by other subsections of 50 U.S.C. § 1801(e).

(U)
(E) (S) The basis for my certification that the information sought is the type of foreign intelligence information specified herein and that such information cannot be obtained by normal investigative techniques is as follows.

50 U.S.C. § 1804(a)(6)(E) and 323(a)(6)(E)]

(U)   (S) **Foreign Intelligence Information** The foreign intelligence information sought through the authorities requested herein is the type specified herein because it may, among other things, enable the U.S. Government to:



Sensitive Information

XXOPXSXXCXRXXX/XXXOXKXXX

-56-

TOP SECRET//NOFORN



Sensitive Information

(f)

(h)

(U)

TOP SECRET//NOFORN

-57-

SENATE-FISA2020-000057

Sensitive Information

(U)    (X) **Potential for Use in Criminal Proceedings** Another purpose of the

authorities requested herein is to obtain information which may assist at some

future time in the criminal prosecution of Page or others, including possibly

U.S. persons. Such assistance may include:

(1) obtaining information to support a prosecution, or a legitimate threat of

prosecution, of Page for federal foreign intelligence-related criminal offenses,

including, but not limited to, 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 951

TOP SECRET//NOFORN

(Agents of Foreign Governments) and 22 U.S.C. §§ 612, et seq. (Foreign

Agents Registration Act); and/or

(2) obtaining information to support prosecutions of others, including U.S.

persons, for federal foreign intelligence-related criminal offenses.

(U)      (X)  <u>Limitations of Normal Investigative Techniques</u>  ███████

███ Sensitive Information ████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████     ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████

      █████████████████████████████████████

██████████████████████████████████████████████

TOP SECRET//NOFORN

SENATE-FISA2020-000059



SENATE-FISA2020-000060

TOP SECRET//NOFORN



Sensitive Information

TOP SECRET//NOFORN

SENATE-FISA2020-000061

TOP SECRET//NOFORN

Sensitive Information

(U)  (S)  In short, none of these normal investigative techniques, or others like them, can provide the same kind of information, with the same reliability and safety, as the authorities requested herein.

(U)  (S)  Based upon the foregoing information, it is the Government's belief that the authorities requested herein targeting Page are critical investigative means for obtaining the foreign intelligence information identified herein.

----- *The remainder of this page is intentionally left blank.* -----

TOP SECRET//NOFORN

SENATE-FISA2020-000062

~~TOP SECRET//NOFORN~~

(U)   (X) Accordingly, I execute this certification regarding **Carter W. Page** in

accordance with the requirements of the Foreign Intelligence Surveillance Act of

1978, as amended.

James B. Comey
Director
Federal Bureau of Investigation

John F. Kerry
Secretary of State

Andrew G. McCabe
Deputy Director
Federal Bureau of Investigation

Antony J. Blinken
Deputy Secretary of State

John O. Brennan
Director of the Central
Intelligence Agency

Ash Carter
Secretary of Defense

James R. Clapper, Jr.
Director of National Intelligence

Susan E. Rice
Assistant to the President for
National Security Affairs

Stephanie O'Sullivan
Principal Deputy Director of
National Intelligence

10/20/16
Date

I, LeeAnn Flynn Hall, Clerk, FISC,
certify that this document is
a true and correct copy
of the original.

~~TOP SECRET//NOFORN~~

-63-

XXXXSXXXXXXXXXXXXXXX

## (U) APPROVAL

(U)    XXX I find that this application regarding **Carter W. Page** satisfies the

criteria and requirements for such applications set forth in the Foreign

Intelligence Surveillance Act of 1978, as amended, and hereby approve its filing

with this Court.

(Sensitive Information

XXXXXXXXXXXXXXXX

SENATE-FISA2020-000064

▓▓▓▓▓▓▓▓▓▓▓▓

(U) (§) ▓▓▓ Sensitive Information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

_____

Loretta E. Lynch
Attorney General of the United States

_____

Sally Quillian Yates
Deputy Attorney General of the United States

_____

Assistant Attorney General for National Security

10/21/16
_____
Date

I, LeeAnn Flynn Hall, Clerk, FISC,
certify that this document is
a true and correct copy
of the original.

▓▓▓▓▓▓▓▓▓▓▓▓

SENATE-FISA2020-000065

(U)    (S)  WHEREFORE, the United States submits that this application

regarding **Carter W. Page** satisfies the criteria and requirements of the Foreign

Intelligence Surveillance Act of 1978, as amended, and therefore requests that

this Court authorize the activities described herein, and enter the proposed

orders and warrants which accompany this application.

Respectfully submitted,

Non-SES PII

Attorney
U.S. Department of Justice

I, LeeAnn Flynn Hall, Clerk, FISC,
certify that this document is
a true and correct copy
of the original.

SENATE-FISA2020-000066

XXXXXXX

Filed
United States Foreign
Intelligence Surveillance Court

OCT 2 1 2016

LeeAnn Flynn Hall, Clerk of Court

UNITED STATES

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D. C.

| | |
|---|---|
| IN RE **CARTER W. PAGE**, A U.S. **PERSON** | Docket Number: **16 - 1 1 8 2** |

## PRIMARY ORDER AND WARRANT

1.  An application having been made by the United States of America

pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, 50

U.S.C. §§ 1801-1812 and 1821-1829 (FISA or the Act), for an order and warrant

(hereinafter "order") for **electronic surveillance and physical search**, and full

consideration having been given to the matters set forth therein, the Court finds

as follows:

50 U.S.C.
§ 1805(a)(1) and
824(a)(1)]

2.  The application has been made by a Federal officer and approved by the

Attorney General;

50 U.S.C.
§ 1805(a)(2) and
824(a)(2)]

3.  On the basis of the facts submitted in the verified application, there is

probable cause to believe that:

XXXXXX

XXXXXXXXXXXXXXXXXApplication to the USPISC
xx Xxxxxx Xxxxxxx xxxXxxxxxxxxxx
XXXXXXXXXX          XXXXXXX

Declassified by C28W34B64 on 2/5/2020 this redacted version only

XSECXREX

(A)  The Government of the Russian Federation (Russia) is a foreign

power and Carter W. Page is an agent of Russia, as defined by

50 U.S.C. § 1801(b)(2)(E);

(B)  as specified herein, the facilities or places at which electronic

surveillance will be directed are being used or are about to be used by,

and the premises or property to be searched is or is about to be owned,

used, possessed by, or is in transit to or from, this target;

50 U.S.C.
§ 1805(a)(3) and
824(a)(3)]

4.  The minimization procedures proposed in the application have been

adopted by the Attorney General and meet the definition of minimization

procedures under 50 U.S.C §§ 1801(h) and 1821(4);

50 U.S.C.
§ 1805(a)(4) and
824(a)(4)]

5.  The application contains all statements and certifications required by 50

U.S.C. §§ 1804 and 1823, and the certification is not clearly erroneous on the basis

of the statements made under 50 U.S.C. §§ 1804(a)(6)(E) and 1823(a)(6)(E), and

any other information furnished under 50 U.S.C. §§ 1804(c) and 1823(c).

WHEREFORE, IT IS HEREBY ORDERED, pursuant to the authority

conferred on this Court by the Act, that the application of the United States is

GRANTED, and it is

FURTHER ORDERED, as follows:

SECRET
-2-

SECRET

50 U.S.C.
§ 1805(c)(1) and
824(c)(1)]

1.   The United States is authorized to conduct electronic surveillance and

physical search of the target as follows; provided that the electronic surveillance

shall be directed only at the facilities and places described below, using for each

only the means specified below for such particular facility or place, and the

physical search shall be conducted only of the premises or property described

below, using for each only the manner specified below for such particular

premises or property.

(a.)   ███ Sensitive Information ██████████████████

SECRET

-3-

SECRET



Sensitive Information

SECRET

-4-

SENATE-FISA2020-000070

SECRET

Sensitive Information



SECRET

-5-

SECRET



Sensitive Information

80 U.S.C.
1805(j)]

See 50 U.S.C.
1842(d)(2)(C)]

SECRET

-6-

SENATE-FISA2020-000072

SECRET



Sensitive Information

SECRET

-7-

SENATE-FISA2020-000073

SECRET



Sensitive Information

50 U.S.C.
§ 1805(c)(1)(C)
and
1824(c)(1)(C)]

50 U.S.C.
1805(c)(1)(D)]

SECRET

-8-

SENATE-FISA2020-000074

SECRET



Sensitive Information

50 U.S.C.
§824(c)(1)(D)]

SECRET

-9-

XXXXXXXX
~~SECRET~~

Sensitive Information ███████ ████████████████

████████████████████████████████████

███████████████████████

██████████████████████████████

███████████

50 U.S.C.
§ 1805(c)(1)(F)
nd
824(c)(1)(E)]

6. The authorities approved are for the period indicated below unless otherwise ordered by this Court.

50 U S C
§ 1805(c)(2)(A)
nd
824(c)(2)(A)]

As to all information acquired through the authorities approved herein, the FBI shall Sensitive Information ████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████

██████████████████████████████████

█████████████████████████████

~~SECRET~~
XXXXXXX
-10-

SECRET



Sensitive Information

SECRET

-11-

SENATE-FISA2020-000077

XXXXXX



Sensitive Information

50 U.S.C.
§ 1805(c)(2)(B)-
(C)
and
824(c)(2)(B)-(D)]

XXXXXX
-12-

SECRET



Sensitive Information

50 U.S.C
1824(c)(2)(E)]

SECRET

-10-

SENATE-FISA2020-000079

SECRET



Sensitive Information

SECRET

14

SECRET



SECRET

-15-

XXSECRETXX



*----- The remainder of this page is intentionally left blank. -----*

SENATE-FISA2020-000082

~~SECRET~~

This authorization regarding **Carter W. Page** expires at **3:00 p.m. Eastern Time**

on the _____13ᵗʰ_____ day of January, 2017.

Signed     _____10-21-2016 P02:31_____    **Eastern Time**

                Date              Time

**ROSEMARY M. COLLYER**
Judge, United States Foreign
Intelligence Surveillance Court

I, LeeAnn Flynn Hall, Clerk, FISC,
certify that this document is
a true and correct copy
of the original.

~~SECRET~~

-17-