UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 8:20-cr-206-TPB-AEP

MUHAMMED MOMTAZ ALAZHARI

_____/

### MOTION TO RECONSIDER THE COURT'S ORDER DENYING THE DEFENSE MOTION TO DISMISS AS TO COUNT TWO AND COUNT THREE

**NOW COMES** Defendant, Muhammed Alazhari, by and through undersigned counsel, and moves this Court to reconsider its order denying his motion to dismiss as to Count Two and Count Three of the indictment (Doc. 109).

### MEMORANDUM OF LAW

In *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court provided a new definition for the meaning of "arms" in the Second Amendment that includes "modern instruments that facilitate armed self-defense." *Id*. at 2132 (citation omitted). This broad new definition encompasses so-called silencers, and so contradicts this Court's decision that silencers are not "arms" protected by the Second Amendment. Doc. 109 at 5-6. Further, the Supreme Court in *Bruen* jettisoned the "two-step" test applied by the Eleventh Circuit and this Court, and provided a new framework for Second Amendment rights under which "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

*Bruen*, 142 S. Ct. at 2127.  Because silencers are "modern instruments that facilitate armed self-defense," and because the Government cannot affirmatively prove that the National Firearms Act's (NFA) novel regulation of silencers is part of this country's historical tradition of arms regulation, this Court should reconsider its order and dismiss Count Two and Count Three.

## BACKGROUND

In Count Two and Count Three of the indictment, Mr. Alazhari is charged with receiving and possessing an unregistered silencer in violation of the NFA.  Mr. Alazhari moved to dismiss these counts, arguing inter alia that the NFA as applied to his silencer possession violates his Second Amendment right to keep and bear arms.  Doc. 71 at 11-25.  In its order denying the motion, this Court used the "two-step" analysis then employed by the Eleventh Circuit.  Doc. 109 at 5 (citing *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017)).  The Court ruled that "a silencer is not a bearable arm within the meaning of the Second Amendment."  *Id*. (citing *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018)).  The Court found "the reasoning in *Cox* persuasive" and therefore found that the NFA's regulation of silencers constitutional.  *Id*. at 6.

## ARGUMENT

*Bruen* flatly contradicts the reasoning of *Cox* and this Court, and so this Court

should reconsider its order denying Mr. Alazhari's motion. In *Bruen*, after describing the two-step approach adopted by most lower courts, the Supreme Court stated:

> Today, we decline to adopt that two-part approach. In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsburg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Elaborating on this new test, the Court explained that it will apply straightforwardly to many gun regulations, such as where "a general societal problem" has persisted since the Second Amendment's ratification, and historical evidence supports or contradicts a historical tradition of regulation in the manner at issue. *See id.* at 2131. In these cases, courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 2131-32 (quoting *Heller*, 554 U.S. at 631). However, the Court also explained that "a more nuanced approach" is required in cases "implicating unprecedented societal concerns or dramatic technological

3

changes . . . ." *Id*. at 2132. Just as the Constitution protects forms of speech or shields against forms of surveillance unknown at the founding, the Second Amendment protects the use of modern "arms." *See id*. (citing *Heller*, 554 U.S. at 582). "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers *modern instruments that facilitate armed self-defense*." *Id*. (citing *Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016) (per curiam)) (emphasis added). The Court added that historical reasoning by analogy may be permissible in determining the constitutionality of a modern firearm regulation, which involves determining whether a proposed historical precedent is "relevantly similar." *Id*. (citation omitted).

The Court reiterated *Heller*'s determination "that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id*. at 2143 (citing *Heller*, 554 U.S. at 627). Applying this new framework to the New York handgun-licensing law at issue, the Court explained that "handguns are weapons 'in common use' today for self-defense." *Id*. at 2134 (citing *Heller*, 554 U.S. at 580; *Caetano*, 577 U.S. at 411-12). Next, the Court determined that the Second Amendment's plain text covers the conduct at issue, the public carry of arms. *Id*. Shifting the burden to the government, the Court conducted an exhaustive historical review to determine

4

that no historical tradition supported New York's regulation. *Id*. at 2138-56.

Under *Bruen*, the burden shifts to the Government in this case to show a historical tradition of regulating silencers. Silencers are "modern instruments that facilitate armed self-defense." *Id*. at 2132 (citation omitted). They "facilitate armed self-defense" for the reasons in Mr. Alazhari's initial motion and expert declaration: they eliminate the need for ear protection by decreasing sound at the source, prevent injury, and enhance accuracy by reducing recoil, the firer's natural inclination to flinch in anticipation of the shot, and the firer's disorientation after the first shot. Doc. 71 at 1-2, Doc. 71-6. And, silencers are "in common use for self-defense today," again for the reasons Mr. Alazhari provided in his motion: there are 1,750,433 registered silencers in the United States; 42 states make silencer possession lawful; demand for silencers is increasing, and greater numerical possession is suppressed by the NFA provisions at issue here; and silencers are very rarely used to commit crimes. Doc. 71 at 14-15; *cf. Caetano*, 577 U.S. at 420 (Alito, J., concurring in the judgment) (finding stun guns to be protected by the Second Amendment because "hundreds of thousands" "have been sold to private citizens" and 45 states permit their possession).

Thus, *Cox*, on which this Court relied, is inconsistent with *Bruen*. *Cox* reasoned, "A silencer is a firearm accessory; it's not a weapon in itself . . . ." *Cox*, 906 F.3d at 1186. But under *Bruen*, the Second Amendment protects the possession

5

of any "instrument" that "facilitates" *armed* self-defense." *See* 142 S. Ct. at 2142 (citation omitted) (emphasis added). That is precisely what a silencer is: it facilitates the self-defense of one who is already armed. Whatever the merits of *Cox* when it was decided, the case has been abrogated by *Bruen*.

Mr. Alazhari's receipt and possession of a silencer is therefore presumptively protected by the Second Amendment. And the Government cannot meet its burden of showing that the regulation of silencers is part of a historical American tradition of firearm regulation. To the contrary, founding-era historical evidence indicates that militiamen were *obligated* to possess certain firearm "accessories," like match and a musket rest. *See United States v. Miller*, 307 U.S. 174, 179 (1939) (citation omitted). The silencer is an invention of the early 20th century, and it was predominantly used by law-abiding citizens. Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33, 41-46 (2015). In the NFA, Congress enacted what amounted to a 4,000% tax on silencers during the heart of the Great Depression, without findings suggesting any legitimate purpose for the law. *See id*. at 50. Compliance with the NFA's tax-and-registration regime imposes wait times of about seven months with a "perfected" application. Doc. 71-7; *cf. Bruen*, 142 S. Ct. at 2138 n.9 ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or

6

exorbitant fees deny ordinary citizens their right to public carry."). Federal law separately prohibits the possession of silencers by felons and other untrustworthy people, and harshly punishes criminal misuse of silencers, so that the burden of the NFA falls primarily on the law-abiding citizen. *See* Halbrook, *supra*, at 74. The Government cannot marshal historical evidence sufficient to show an American tradition of regulating the silencer that overcomes the presumption of Second Amendment protection under *Bruen*.

**WHEREFORE** Defendant, Mr. Alazhari, prays this Court will reconsider its order denying his motion to dismiss, and dismiss Count Two and Count Three.

DATED this 21st day of July 2022.

                                                        Respectfully submitted,

                                                        A. FITZGERALD HALL, ESQUIRE
                                                        FEDERAL DEFENDER

                                                        */s* **Samuel E. Landes**
                                                        Samuel E. Landes, Esq.
                                                        D.C. Bar No. 1552625
                                                        Assistant Federal Defender
                                                         400 North Tampa Street, Suite 2700
                                                        Tampa, Florida 33602
                                                        Telephone:  (813) 228-2715
                                                        Email:  Samuel_Landes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st of July 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA Patrick Scruggs.

/s **Samuel E. Landes**
Samuel E. Landes, Esq.
