UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:20-cr-206-TPB-AEP

MUHAMMED MOMTAZ ALAZHARI

**GOVERNMENT'S UNCLASSIFIED CONSOLIDATED RESPONSE TO
DEFENDANT'S MOTIONS FOR AN ORDER COMPELLING
DISCLOSURE OF MATERIALS UNDER THE
FOREIGN INTELLIGENCE SURVEILLANCE ACT**

ROGER B. HANDBERG
United States Attorney
Middle District of Florida

PATRICK D. SCRUGGS
Assistant United States Attorney
Middle District of Florida

JOSHUA CHAMPAGNE
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................1
  A.   Background ...............................................................3
  B.   Overview of the FISA Authorities.............................5
    1.   **[CLASSIFIED INFORMATION REDACTED]** ...........5
    2.   The FISC's Findings................................................5

II.   THE FISA PROCESS .................................................5
  A.   Overview of FISA ..................................................5
  B.   The FISA Application ............................................7
    1.   The Certification ...........................................10
    2.   Minimization Procedures ...............................10
    3.   Attorney General's Approval .........................11
  C.   The FISC's Orders...............................................11

III.   DISTRICT COURT'S REVIEW OF FISC ORDERS ...........16
  A.   The Review Is to Be Conducted *In Camera* and *Ex Parte* .................................................18
    1.   *In Camera, Ex Parte* Review Is the Rule.......21
    2.   *In Camera, Ex Parte* Review Is Constitutional..........26
  B.   The District Court's Substantive Review .............27
    1.   Standard of Review of Probable Cause..........28
    2.   Probable Cause Standard ................................30
    3.   Standard of Review of Certifications ..............33
    4.   FISA Is Subject to the "Good Faith" Exception .......35

IV.   THE FISA INFORMATION WAS LAWFULLY ACQUIRED AND THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL.......................37
  A.   The Instant FISA Application(s) Met FISA's Probable Cause Standard .................................37
    1.   **[CLASSIFIED INFORMATION REDACTED]** ...........37
    2.   **[CLASSIFIED INFORMATION REDACTED]** ...........37
      a.   **[CLASSIFIED INFORMATION REDACTED]** .........37
        i.   **[CLASSIFIED INFORMATION REDACTED]**.......37
        ii.   **[CLASSIFIED INFORMATION REDACTED]**.......38

    iii. [CLASSIFIED INFORMATION
      REDACTED]......................................38
    iv. [CLASSIFIED INFORMATION
      REDACTED]......................................38
    v. [CLASSIFIED INFORMATION
      REDACTED]......................................38
   b. [CLASSIFIED INFORMATION REDACTED] .........38
   c. [CLASSIFIED INFORMATION REDACTED] .........38
  3. [CLASSIFIED INFORMATION REDACTED] ...................38
   a. [CLASSIFIED INFORMATION REDACTED] ........38
   b. [CLASSIFIED INFORMATION REDACTED] ........38
   c. [CLASSIFIED INFORMATION REDACTED] ........38
   d. [CLASSIFIED INFORMATION REDACTED] ........38
   e. [CLASSIFIED INFORMATION REDACTED] ........39
   f. [CLASSIFIED INFORMATION REDACTED] ........39
   g. [CLASSIFIED INFORMATION REDACTED] ........39
   h. [CLASSIFIED INFORMATION REDACTED] ........39
   i. [CLASSIFIED INFORMATION REDACTED] .........39
   j. [CLASSIFIED INFORMATION REDACTED] .........39
 B. THE CERTIFICATION(S) COMPLIED WITH FISA .....................39
  1. Foreign Intelligence Information.................................39
  2. "A Significant Purpose"..........................................39
  3. Information Not Reasonably Obtainable Through
   Normal Investigative Techniques...............................39
 C. THE ELECTRONIC SURVEILLANCE AND PHYSICAL
  SEARCH WERE CONDUCTED IN CONFORMITY WITH
  AN ORDER OF AUTHORIZATION OR APPROVAL...................40
  1. The Minimization Procedures..................................40
  2. The FISA Information Was Appropriately Minimized.............45

V. THE COURT SHOULD REJECT THE DEFENDANT'S
 LEGAL ARGUMENTS ................................................................45
 A. The Defendant Has Not Established Any Basis for
  the Court to Disclose the FISA Materials...........................46
  1. Disclosure Is Not "Necessary" under FISA ............................47
  2. Due Process Does Not Require Disclosure .............................51
  3. *Franks v. Delaware* Does Not Require Disclosure of
   the FISA Materials .................................................................56
  4. A Security Clearance Does Not Entitle Defense
   Counsel Access to the FISA Materials ......................................60

B.    There Is No Basis for the Court to Suppress the FISA Information........................................................64

     1.    The Certification(s) Complied with FISA.................................64

     2.    The Government Has Satisfied the Probable Cause Standard....................................................................65

     3.    The Probable Cause Standard of FISA Satisfies the Fourth Amendment's Reasonableness Requirement.................66

     4.    The Defendant's Reliance on the Eleventh Circuit's Decision in *Colon* Is Misplaced as It Relates to the Definition of "International Terrorism" in FISA......................67

C.    The FISA Information Is Not Derived from Any Unlawfully Obtained Information, and a Ruling Against the Government on the Defendant's Suppression Motions Would Not Negate a Finding of Probable Cause under FISA..............................................69

D.    The Court Should Likewise Deny the Defendant's Motion for an Order Compelling Disclosures Regarding Section 702 Surveillance......................................................................71

VI.    CONCLUSION ..........................................................................77

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*ACLU Found. of So. Cal. v. Barr,*
  952 F.2d 457 (D.C. Cir. 1991)...............................................25, 26, 52

*Acosta v. Gonzales,*
  439 F.3d 550 (9th Cir. 2006) ...............................................76

*Ake v. Oklahoma,*
  470 U.S. 68 (1985)...............................................53

*Bloate v. United States,*
  130 S. Ct. 1345 (2010)...............................................76

*Brady v. Maryland,*
  373 U.S. 83 (1963)...............................................55, 72

*Brotherhood of Maintenance of Way Employees v. CSX Transp., Inc.,*
  478 F.3d 814 (7th Cir. 2007) ...............................................76

*CIA v. Sims,*
  471 U.S. 159 (1985) ...............................................24

*Colon v. Twitter, Inc., et al.,*
  14 F.4th 1213 (11th Cir. 2021) ...............................................*passim*

*Dean v. United States,*
  556 U.S. 568 (2009) ...............................................74

*Franks v. Delaware,*
  438 U.S. 154 (1978) ...............................................*passim*

*Global Relief Found. Inc. v. O'Neill,*
  207 F. Supp. 2d 779 (N.D. Ill. June 11, 2002), *aff'd,*
  315 F.3d 748 (7th Cir. 2002) ...............................................15

*Gozlon-Peretz v. United States,*
  498 U.S. 395 (1991) ...............................................76

*Halperin v. CIA,*
  629 F.2d 144 (D.C. Cir. 1980)...............................................25

*Hines v. Miller*,
   318 F.3d 157 (2d Cir. 2003) ............................................................. 52

*In re Grand Jury Investigation*,
   431 F. Supp. 2d 584 (E.D. Va. 2006) .............................................. 76

*In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury*,
   347 F.3d 197 (7th Cir. 2003) ................................................... *passim*

*In re Kevork*,
   634 F. Supp. 1002 (C.D. Cal. Aug. 5, 1985), *aff'd*,
   788 F.2d 566 (9th Cir. 1986) ..................................................... 23, 41

*In re Sealed Case*,
   310 F.3d 717 (FISA Ct. Rev. 2002) ......................................... *passim*

*Massachusetts v. Sheppard*,
   468 U.S. 981 (1984) ......................................................................... 36

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ............................................................. 52, 53, 55

*Medina v. California*,
   505 U.S. 437 (1992) ................................................................... 52, 53

*Pennsylvania v. Ritchie*,
   480 U.S. 39 (1987) ........................................................................... 72

*Phillippi v. CIA*,
   655 F.2d 1325 (D.C. Cir. 1981) ...................................................... 24

*Scott v. United States*,
   436 U.S. 128 (1978) ........................................................................ 43

*United States v. Abu-Jihaad*,
   531 F. Supp. 2d 299 (D. Conn. Jan. 24, 2008), *aff'd*,
   630 F.3d 102 (2d Cir. 2010) ................................................... *passim*

*United States v. Agurs*,
   427 U.S. 97 (1976) .......................................................................... 72

*United States v. Ahmed*,
   No. 1:06-CR-147, 2009 U.S. Dist. LEXIS 120007
   (N.D. Ga. Mar. 19, 2009) ..................................................29, 30, 36

*United States v. Alwan,*
   No. 1:11-CR-13, 2012 WL 399154 (W.D. Ky. Feb. 7, 2012)........................ 34, 58

*United States v. Amawi,*
   No. 3:06-CR-719, 2009 WL 961143 (N.D. Ohio Apr. 7, 2009) .......................... 62

*United States v. Aref,*
   285 F. App'x 784 (2d Cir. 2008) ........................................................................ 76

*United States v. Badia,*
   827 F.2d 1458 (11th Cir. 1987)..............................................................21, 33, 50

*United States v. Bagley,*
   473 U.S. 667 (1985) ........................................................................................... 72

*United States v. Belfield,*
   692 F.2d 141 (D.C. Cir. 1982).................................................................. *passim*

*United States v. Benkahla,*
   437 F. Supp. 2d 541 (E.D. Va. May 17, 2006) ............................................ 26, 65

*United States v. Bin Laden,*
   126 F. Supp. 2d 264 (S.D.N.Y. Dec. 5, 2000)............................................. 41, 61

*United States v. Campa,*
   529 F.3d 980 (11th Cir. 2008) ................................................................... 34, 35

*United States v. Canfield,*
   212 F.3d 713 (2d Cir. 2000) ............................................................................. 36

*United States v. Cavanagh,*
   807 F.2d 787 (9th Cir. 1987) ........................................................ 18, 30, 31, 33

*United States v. Chaves,*
   169 F.3d 687 (11th Cir. 1999) .......................................................................... 70

*United States v. Colkley,*
   899 F.2d 297 (4th Cir. 1990) ...................................................................... 57, 58

*United States v. Colon,*
   No. 97-CR-659, 1998 WL 214714 (N.D. Ill. Apr. 21, 1998)............................... 72

*United States v. Damrah,*
   412 F.3d 618 (6th Cir. 2005) .................................................................. *passim*

*United States v. Daoud*,
   No. 12-CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014) ...............................21

*United States v. Daoud*,
   755 F.3d 479 (7th Cir. 2014) ......................................................................*passim*

*United States v. Duggan*,
   743 F.2d 59 (2d Cir. 1984) .........................................................................*passim*

*United States v. Duka*,
   671 F.3d 329 (3d Cir. 2011) ........................................................ 18, 31, 36, 64

*United States v. El-Mezain*,
   664 F.3d 467 (5th Cir. 2011) .....................................................................*passim*

*United States v. Falcone*,
   364 F. Supp. 877 (D.N.J. Sept. 28, 1973), *aff'd*,
   500 F.2d 1401 (3d Cir. 1974)................................................................... 44, 45

*United States v. Falvey*,
   540 F. Supp. 1306 (E.D.N.Y. June 15, 1982) ........................................ 26, 33

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005) ..............................................................................35

*United States v. Gartenlaub*,
   No. 14-CR-00173-CAS, Doc. No. 114 (C.D. Cal. Aug. 6, 2015)................. 20, 28

*United States v. Gowadia*,
   No. 05-00486, 2009 WL 1649714 (D. Haw. June 8, 2009)........................... 22, 26

*United States v. Griebel*,
   312 F. App'x 93 (10th Cir. 2008)......................................................................72

*United States v. Hamide*,
   914 F.2d 1147 (9th Cir. 1990) .........................................................................19

*United States v. Hammoud*,
   381 F.3d 316 (4th Cir. 2004), *rev'd on other grounds*,
   543 U.S. 1097 (2005) ..............................................................................28, 41, 43

*United States v. Hassan*,
   742 F.3d 104 (4th Cir. 2014) ...........................................................................50

*United States v. Hassoun*,
  No. 04-CR-60001, 2007 WL 1068127 (S.D. Fla. Apr. 4, 2007) ................... 22, 60

*United States v. Isa*,
  923 F.2d 1300 (8th Cir. 1991) ................................................................22, 26, 44

*United States v. Ishak*,
  277 F.R.D. 156 (E.D. Va. 2011)........................................................................ 73

*United States v. Islamic Am. Relief Agency*,
  No. 07-00087-CR-W-NKL, 2009 WL 5169536
  (W.D. Mo. Dec. 21, 2009) ..................................................................... *passim*

*United States v. Jayyousi*,
  No. 04-60001, 2007 WL 851278, (S.D. Fla. Mar. 15, 2007), *aff'd*,
  657 F.3d 1085 (11th Cir. 2011)................................................................. 22, 26

*United States v. Joseph*,
  709 F.3d 1082 (11th Cir. 2013)........................................................................ 29

*United States v. Kabir*,
  No. 5:12-CR-00092-VAP, Doc. No. 277 (C.D. Cal. May 5, 2014) .................... 29

*United States v. Kashmiri*,
  No. 09-CR-830, 2010 WL 4705159 (N.D. Ill. Nov. 10, 2010) ..................... *passim*

*United States v. Ketzeback*,
  358 F.3d 987 (8th Cir. 2004) ........................................................................... 58

*United States v. Krupa*,
  658 F.3d 1174 (9th Cir. 2011) ......................................................................... 29

*United States v. Leon*,
  468 U.S. 897 (1984) ..........................................................................35, 36, 37

*United States v. Libby*,
  429 F. Supp. 2d 18 (D.D.C. Apr. 5, 2006) ....................................................... 63

*United States v. Londono-Cardona*,
  No. 05-10304-GAO, 2008 WL 313473 (D. Mass. Feb. 1, 2008)......................... 76

*United States v. Martin*,
  615 F.2d 318 (5th Cir. 1980) ........................................................................... 58

*United States v. Marzook,*
     435 F. Supp. 2d 778 (N.D. Ill. June 22, 2006) ........................................33, 36, 65

*United States v. Medunjanin,*
     No. 10-CR-19-1, 2012 WL 526428 (E.D.N.Y. Feb. 16, 2012) ........... 45, 50, 60, 62

*United States v. Megahey,*
     553 F. Supp. 1180 (E.D.N.Y. Dec. 1, 1982) ......................................................26

*United States v. Mihalik,*
     No. 11-CR-833(A), Doc. No. 108 (C.D. Cal. Oct. 3, 2012)...............................50

*United States v. Mohamud,*
     No. 10-CR-00475, 2012 WL 12952303 (D. Or. May 7, 2012) ..................... 20, 49

*United States v. Mubayyid,*
     521 F. Supp. 2d 125 (D. Mass. Nov. 5, 2007) ...........................................*passim*

*United States v. Nicholson,*
     No. 09-CR-40, 2010 WL 1641167 (D. Or. Apr. 21, 2010)............................*passim*

*United States v. Omar,*
     No. 09-242, 2012 WL 2357734 (D. Minn. June 20, 2012), *aff'd,*
     786 F.3d 1104 (8th Cir. 2015) ..................................................................*passim*

*United States v. Osmakac,*
     868 F.3d 937 (11th Cir. 2017) ..................................................................*passim*

*United States v. Ott,*
     827 F.2d 473 (9th Cir. 1987) ....................................................................*passim*

*United States v. Pelton,*
     835 F.2d 1067 (4th Cir. 1987) ..................................................................... 18, 33

*United States v. Phillips,*
     854 F.2d 273 (7th Cir. 1988) .............................................................................72

*United States v. Raddatz,*
     447 U.S. 667 (1980) ..........................................................................................53

*United States v. Rahman,*
     861 F. Supp. 247 (S.D.N.Y. Aug. 18, 1994), *aff'd,*
     189 F.3d 88 (2d Cir. 1999) .............................................................. 14, 34, 40, 42

*United States v. Robinson,*
  724 F.3d 878 (7th Cir. 2013) .................................................................29

*United States v. Rosen,*
  447 F. Supp. 2d 538 (E.D. Va. Aug. 14, 2006).............................*passim*

*United States v. Salameh,*
  152 F.3d 88 (2d Cir. 1998) ..................................................................41

*United States v. Sattar,*
  No. 02-CR-395, 2003 WL 22137012 (S.D.N.Y. Sept. 15, 2003)..........22

*United States v. Sherifi,*
  793 F. Supp. 2d 751 (E.D.N.C. June 22, 2011).....................................34

*United States v. Shnewer,*
  No. 07-459, 2008 U.S. Dist. LEXIS 112001 (D. N.J. Aug. 17, 2008) ...........57, 59

*United States v. Smith,*
  581 F.3d 692 (8th Cir. 2009) ...............................................................29

*United States v. Spanjol,*
  720 F. Supp. 55 (E.D. Pa. Aug. 22, 1989), *aff'd,*
  958 F.2d 365 (3d Cir. 1992) ...............................................21, 22, 26

*United States v. Squillacote,*
  221 F.3d 542 (4th Cir. 2000) .....................................................14, 51

*United States. v. Stewart,*
  590 F.3d 93 (2d Cir. 2009) ..................................................................22

*United States v. Thomas,*
  818 F.3d 1230 (11th Cir. 2016)........................................................70, 71

*United States v. Thomson,*
  752 F. Supp. 75 (W.D.N.Y. Oct. 24, 1990) ............................22, 23, 41, 43

*United States v. U.S. Gypsum Co.,*
  333 U.S. 364 (1948) ...........................................................................35

*United States v. United States District Court (Keith),*
  407 U.S. 297 (1972) ......................................................31, 32, 66, 67

*United States v. Warsame,*
  547 F. Supp. 2d 982 (D. Minn. Apr. 17, 2008) ............................*passim*

*United States v. Yunis,*
   867 F.2d 617 (D.C. Cir. 1989).............................................................24


**U.S. Constitution**

Amend. I......................................................................................14

Amend. IV............................................................................*passim*

Amend. V......................................................................................51


**Federal Statutes**

18 U.S.C. § 2333..............................................................67, 68, 69

18 U.S.C. § 2339B .................................................................4

18 U.S.C. § 3504..............................................................71, 75, 76

26 U.S.C. § 5861.................................................................4

50 U.S.C. § 1801.....................................................................*passim*

50 U.S.C. §§ 1801-1812.........................................................2

50 U.S.C. § 1803..................................................................5, 7

50 U.S.C. § 1804.....................................................................*passim*

50 U.S.C. § 1805.....................................................................*passim*

50 U.S.C. § 1806.....................................................................*passim*

50 U.S.C. § 1821..............................................................2, 11, 44

50 U.S.C. §§ 1821-1829.........................................................2

50 U.S.C. § 1823.....................................................................*passim*

50 U.S.C. § 1824.....................................................................*passim*

50 U.S.C. § 1825.....................................................................*passim*

50 U.S.C. § 1881 ................................................................................ 1

Fed. R. Crim. Proc. 12 ............................................................ 71, 72, 73

Fed. R. Crim. Proc. 16 ................................................................ 71, 72

Fed. R. Crim. Proc. 41 ...................................................................... 30

Organized Crime Control Act of 1970,
    Pub. L. No. 91-452, 84 Stat. 922 (1970) ....................................... 76

Uniting and Strengthening America by Providing Appropriate Tools
    Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT
    Act"), Pub. L. No. 107-56, 115 Stat. 272 (2001) ........................ 6, 64

**Other Authorities**

Exec. Order No. 12333 ..................................................................... 36

H.R. REP. NO. 95-1283, 95th Cong., 2d Sess. (1978) ........... 42, 44, 45, 66

S. REP. NO. 95-701, 95th Cong., 2d Sess. (1978), *reprinted in*
    1978 U.S.C.C.A.N. 3973 ........................................................... *passim*

## I.    **INTRODUCTION**

The government is filing this unclassified memorandum in opposition to defendant Muhammed Momtaz Alazhari's (Alazhari) "Motion for the Disclosure of Materials under the Foreign Intelligence Surveillance Act" (hereinafter, "the defendant's motion #1") and "Motion for an Order Compelling Disclosures Regarding Surveillance under Section 702 of the FISA Amendments Act of 2008" (hereinafter, "the defendant's motion #2") and memoranda of law in support thereof.  (Docs. 248 and 249.)  With respect to evidence obtained or derived from electronic surveillance and physical search conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801 *et seq.*, the defendant's motion #1 seeks disclosure of the underlying FISA application(s), order(s), and related materials (*i.e.*, "the FISA materials").[1]  The defendant's motion #2 seeks an order compelling disclosures regarding surveillance conducted pursuant to Section 702 of FISA, 50 U.S.C. § 1881a, and the use of any information obtained or derived therefrom.

The defendant's motion #1 has triggered this Court's review of the materials related to the FISA-authorized electronic surveillance and physical search to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were conducted in conformity with an

---

[1] **[CLASSIFIED INFORMATION REDACTED]**

order of authorization or approval.[2]  Whenever "a motion is made pursuant to subsection (e) . . . to discover or obtain applications or orders or other materials relating to electronic surveillance [or physical search] or to discover, obtain or suppress evidence or information obtained or derived from electronic surveillance [or physical search] under this Act, the United States district court . . . shall . . . if the Attorney General[3] files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance [or search] as may be necessary to determine whether the surveillance [or search] of the aggrieved person was lawfully authorized and conducted."  50 U.S.C. §§ 1806(f), 1825(g).[4]  The government is filing herewith such an affidavit in which the AAG/NS claims under oath that disclosure or an adversarial hearing would harm the national security of the United States, which is the prerequisite for the Court to review the

---

[2] The provisions of FISA that address electronic surveillance are found at 50 U.S.C. §§ 1801-1812; those that address physical search are found at 50 U.S.C. §§ 1821-1829. These two sets of provisions are in many respects parallel and almost identical.  Citations herein are generally to the two sets of provisions in parallel, with the first citation being to the relevant electronic surveillance provision, and the second citation being to the relevant physical search provision.  This memorandum references the statutory language in effect at the time relevant to this matter.

[3] As defined in FISA, "Attorney General" means the Attorney General of the United States (or Acting Attorney General), the Deputy Attorney General, or, upon the designation of the Attorney General, the Assistant Attorney General for National Security (AAG/NS). *See* 50 U.S.C. §§ 1801(g) and 1821(1).  Such designation was made by then-Attorney General Eric H. Holder, Jr., on April 24, 2009.

[4] Although the defendant has not yet moved to suppress the FISA information, this memorandum includes the government's response to the potential future argument that the FISA information should be suppressed.

2

FISA materials *in camera* and *ex parte*.[5]  Consequently, the government respectfully

submits that, for the reasons set forth herein, this Court must conduct an *in camera, ex*

*parte* review of the documents relevant to the defendant's motion #1 in accordance

with the provisions of 50 U.S.C. §§ 1806(f) and 1825(g).[6]

For the reasons set forth below, and as the Court's *in camera, ex parte* review of

the FISA materials will bear out, it is conclusively established that: (1) the electronic

surveillance and physical search at issue in this case were both lawfully authorized

and lawfully conducted in compliance with FISA; (2) disclosure to the defendant of

the FISA materials and the government's classified submissions is not authorized

because the Court can make an accurate determination of the legality of the FISA-

authorized electronic surveillance and physical search without disclosing the FISA

materials or portions thereof; (3) the FISA information should not be suppressed; (4)

the FISA information is not derived from any unlawfully obtained information; (5)

the government has complied with its notice and disclosure obligations; and (6) no

hearing is required.

A.     **Background**

**[CLASSIFIED INFORMATION REDACTED]**

On June 9, 2020, the United States notified the defendant and this Court, in

accordance with 50 U.S.C. §§ 1806(c) and 1825(d), that it "intends to offer into

---

[5] The AAG/NS's affidavit ("Declaration and Claim of Privilege") is both filed publicly and attached as part of the government's classified filing.  *See* Sealed Exhibit 1.

[6] **[CLASSIFIED INFORMATION REDACTED]**

evidence, or otherwise use or disclose in any proceedings in this matter, information obtained or derived from electronic surveillance and physical search conducted pursuant to [FISA]." (Doc. 26.)

On June 23, 2020, a grand jury in the Middle District of Florida returned an indictment charging the defendant with attempting to provide material support and resources to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1), and unlawful receipt and possession of a firearm, in violation of 26 U.S.C. § 5861(b) and (d).

On June 23, 2022, the defendant filed the instant motions. (Docs. 248 and 249.)

**[CLASSIFIED INFORMATION REDACTED]**[7]

In subsequent sections of this memorandum, the government will: (1) present an overview of the FISA authorities at issue in this case; (2) discuss the FISA process; (3) address the manner in which the Court should conduct its *in camera, ex parte* review of the FISA materials; (4) summarize the facts supporting the FISC's probable cause determinations at issue (all of which information is contained fully in the exhibits in the Sealed Appendix); (5) discuss the applicable minimization procedures; and (6) address the defendant's arguments in support of his motions. All of the government's pleadings and supporting FISA materials are being submitted

---

[7] As a result of the redactions, the pagination and footnote numbering of the classified memorandum and the unclassified memorandum are different.

not only to oppose the defendant's requests, but also to support the United States' request, pursuant to FISA, that this Court: (1) conduct the required *in camera*, *ex parte* review of the FISA materials; (2) find that the FISA information at issue was lawfully acquired and that the electronic surveillance and physical search were conducted in conformity with an order of authorization or approval; (3) find that the FISA information should not be suppressed; and (4) order that none of the FISA materials be disclosed to the defense, and instead, that they be maintained by the United States under seal.

    **B.**   **Overview of the FISA Authorities**

**[CLASSIFIED INFORMATION REDACTED]**

       **1.**   **[CLASSIFIED INFORMATION REDACTED]**

**[CLASSIFIED INFORMATION REDACTED]**

       **2.**   **The FISC's Findings**

**[CLASSIFIED INFORMATION REDACTED]**

**II.**   **THE FISA PROCESS**

    **A.**   **Overview of FISA**[8]

Enacted in 1978, and subsequently amended, FISA authorizes the Chief Justice of the United States to designate 11 United States District Judges to sit as judges of the FISC. *See* 50 U.S.C. § 1803(a)(1). The FISC judges are empowered to consider *ex parte* applications submitted by the Executive Branch for electronic

---

[8] This memorandum references the statutory language in effect at the time relevant to this matter.

surveillance and physical search when a significant purpose of the application is to obtain foreign intelligence information, as defined in FISA. Rulings of the FISC are subject to review by the Foreign Intelligence Surveillance Court of Review ("FISC of Review"), which is composed of three United States District or Circuit Judges who are designated by the Chief Justice. *See id.* § 1803(b).

As originally enacted, FISA required that a high-ranking member of the Executive Branch certify that "the purpose" of the FISA application was to obtain foreign intelligence information. In 2001, FISA was amended as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT Act"). *See* Pub. L. No. 107-56, 115 Stat. 272 (2001). One change to FISA accomplished by the USA PATRIOT Act is that a high-ranking official is now required to certify that the acquisition of foreign intelligence information is "a significant purpose" of the requested surveillance or search. *See* 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).

FISA provides that the Attorney General may authorize the emergency employment of electronic surveillance and physical search if the Attorney General

> (A) reasonably determines that an emergency situation exists with respect to the employment of electronic surveillance [or physical search] to obtain foreign intelligence information before an order authorizing such surveillance can with due diligence be obtained;
>
> (B) reasonably determines that the factual basis for the issuance of an order under this title to approve such electronic surveillance [or physical search] exists;

(C) informs, either personally or through a designee, a judge having jurisdiction under [50 U.S.C. § 1803] at the time of such authorization that the decision has been made to employ emergency electronic surveillance [or physical search]; and

(D) makes an application in accordance with this title to a judge having jurisdiction under section 103 as soon as practicable, but not later than seven days after the Attorney General authorizes such electronic surveillance [or physical search].

50 U.S.C. §§ 1805(e)(1), 1824(e)(1).[9]  Emergency electronic surveillance or physical search must comport with FISA's minimization requirements, which are discussed below.  *See id.* §§ 1805(e)(2), 1824(e)(2).[10]

## B.   The FISA Application

FISA provides a statutory procedure whereby the Executive Branch may obtain a judicial order authorizing the use of electronic surveillance, physical search, or both, within the United States where a significant purpose is the collection of

---

[9] **[CLASSIFIED INFORMATION REDACTED]**

[10] If no FISC order authorizing the electronic surveillance or physical search is issued, emergency surveillance or search must terminate when the information sought is obtained, when the FISC denies an application for an order, or after the expiration of seven days from the time of the emergency employment, whichever is earliest.  *See* 50 U.S.C. §§ 1805(e)(3), 1824(e)(3).  Moreover, if no FISC order is issued, absent a showing of good cause, the FISC shall cause to be served on any U.S. person named in the application, and others in the FISC's discretion, notice of the fact of the application, the period of the surveillance, and the fact that during the period information was or was not obtained.  *See id.* § 1806(j); *see also id.* § 1825(j)(1) (physical search).  In addition, if no FISC order is issued, neither information obtained nor evidence derived from the emergency electronic surveillance or physical search may be disclosed in any court or other proceeding, and no information concerning a U.S. person acquired from the electronic surveillance or physical search may be used in any other manner by Federal officers or employees without the person's consent, except with the approval of the Attorney General if the information indicates a threat of death or serious bodily harm.  *See id.* §§ 1805(e)(5), 1824(e)(5).

foreign intelligence information.[11] *See* 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).

Under FISA, "[f]oreign intelligence information" means:

> (1) information that relates to, and if concerning a United States person[12] is necessary to, the ability of the United States to protect against—

>> (A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

>> (B) sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power; or

>> (C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

> (2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to—

>> (A) the national defense or the security of the United States; or

>> (B) the conduct of the foreign affairs of the United States.

*Id.* § 1801(e); *see also id.* § 1821(1) (adopting the definitions from 50 U.S.C. § 1801).

With the exception of emergency authorizations, FISA requires that a court order be obtained before any electronic surveillance or physical search may be conducted.

An application to conduct electronic surveillance pursuant to FISA must contain, among other things:

> (1) the identity of the federal officer making the application;

> (2) the identity, if known, or a description of the specific target of the electronic surveillance;

---

[11] **[CLASSIFIED INFORMATION REDACTED]**

[12] **[CLASSIFIED INFORMATION REDACTED]**

(3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures to be followed;

(5) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification, discussed below, of a high-ranking official;

(7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance;
(8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and

(9) the proposed duration of the electronic surveillance.

50 U.S.C. § 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain

similar information as an application to conduct electronic surveillance except that

an application to conduct a physical search must also contain a statement of the facts

and circumstances that justify an applicant's belief that "the premises or property to

be searched contains foreign intelligence information" and that each "premises or

property to be searched is or is about to be, owned, used, possessed by, or is in transit

to or from" the target.  50 U.S.C. § 1823(a)(1)-(8), (a)(3)(B), (C).

### 1.   The Certification

An application to the FISC for a FISA order must include a certification from a high-ranking Executive Branch official with national security responsibilities that:

> (A) the certifying official deems the information sought to be foreign intelligence information;
>
> (B) a significant purpose of the surveillance [or search] is to obtain foreign intelligence information;
>
> (C) such information cannot reasonably be obtained by normal investigative techniques;
>
> (D) designates the type of foreign intelligence information being sought according to the categories described in [50 U.S.C. §] 1801(e); and
>
> (E) includes a statement of the basis for the certification that—
>> (i) the information sought is the type of foreign intelligence information designated; and
>>
>> (ii) such information cannot reasonably be obtained by normal investigative techniques.

50 U.S.C. §§ 1804(a)(6), 1823(a)(6).

### 2.   Minimization Procedures

The Attorney General has adopted, and the FISC has approved, minimization procedures that regulate the acquisition, retention, and dissemination of non-publicly available information concerning unconsenting United States persons obtained through FISA-authorized electronic surveillance or physical search, including persons who are not the targets of the FISA authorities.  FISA requires that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the particular surveillance [or physical search], to minimize the

> acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. §§ 1801(h)(1), 1821(4)(A).

In addition, minimization procedures also include "procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes."  50 U.S.C. §§ 1801(h)(3), 1821(4)(c).

[CLASSIFIED INFORMATION REDACTED]

### 3. Attorney General's Approval

FISA further requires that the Attorney General approve applications for electronic surveillance, physical search, or both, before they are presented to the FISC.

### C. The FISC's Orders

Once approved by the Attorney General, the application is submitted to the FISC and assigned to one of its judges.  The FISC may approve the requested electronic surveillance, physical search, or both, only upon finding, among other things, that:

> (1) the application has been made by a "Federal officer" and has been approved by the Attorney General;
>
> (2) there is probable cause to believe that (A) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (B) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power (or that the

premises or property to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power);

(3) the proposed minimization procedures meet the statutory requirements set forth in 50 U.S.C. § 1801(h) (electronic surveillance) and 50 U.S.C. § 1821(4) (physical search);

(4) the application contains all of the statements and certifications required by section 1804 or section 1823; and

(5) if the target is a United States person, that the certifications are not clearly erroneous.

50 U.S.C. §§ 1805(a)(1)-(4), 1824(a)(1)-(4).

(U) FISA defines "foreign power" to mean:

(1) a foreign government or any component, thereof, whether or not recognized by the United States;

(2) a faction of a foreign nation or nations, not substantially composed of United States persons;

(3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;

(4) a group engaged in international terrorism or activities in preparation therefor;

(5) a foreign-based political organization, not substantially composed of United States persons;

(6) an entity that is directed and controlled by a foreign government or governments; or

(7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

12

50 U.S.C. § 1801(a)(1)-(7); *see also id.* § 1821(1) (adopting definitions from 50 U.S.C. § 1801).

"Agent of a foreign power" means:

(1) any person other than a United States person, who—

(A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4);

(B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances of such person's presence in the United States indicate that such person may engage in such activities in the United States, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities;

(C) engages in international terrorism or activities in preparation therefore [*sic*];

(D) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor; or

(E) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor for or on behalf of a foreign power; or

(2) any person who –

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

13

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(E) knowingly aids or abets any person in the conduct of activities described in [the subparagraphs above] . . . or knowingly conspires with any person to engage in activities described in [the subparagraphs above].

50 U.S.C. § 1801(b)(1) and (2); *see also id.* § 1821(1) (adopting definitions from 50 U.S.C. § 1801).

FISA specifies that no United States person may be considered a foreign power or an agent of a foreign power solely on the basis of activities protected by the First Amendment to the Constitution of the United States. *See* 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A). Although protected First Amendment activities cannot form the sole basis for FISA-authorized electronic surveillance or physical search, they may be considered by the FISC if there is other activity indicative that the target is an agent of a foreign power. *See, e.g., United States v. Rosen*, 447 F. Supp. 2d 538, 548-49 (E.D. Va. Aug. 14, 2006); *United States v. Rahman*, 861 F. Supp. 247, 252 (S.D.N.Y. Aug. 18, 1994), *aff'd*, 189 F.3d 88 (2d Cir. 1999). The FISA application must establish probable cause to believe the target is acting as an agent of a foreign power at the time of the application. *See, e.g., United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000) (concluding that the FISA applications established "probable cause to believe that . . . [the targets] were agents of a foreign power at the

14

time the applications were granted"); *United States v. Abu-Jihaad*, 531 F. Supp. 2d 299, 310 (D. Conn. Jan. 24, 2008) (finding that the FISA collection was lawfully collected and finding specifically, *inter alia*, that "[e]ach application contained facts establishing probable cause to believe that, at the time the application was submitted to the FISC, the target of the FISA collection was an agent of a foreign power . . . ."), *aff'd*, 630 F.3d 102, 129 (2d Cir. 2010); *Global Relief Found. Inc. v. O'Neill*, 207 F. Supp. 2d 779, 790 (N.D. Ill. June 11, 2002) (concluding that "the FISA application established probable cause . . . at the time the search was conducted and the application was granted"), *aff'd*, 315 F.3d 748 (7th Cir. 2002).  However, FISA provides that "[i]n determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target."  50 U.S.C. §§ 1805(b), 1824(b).

If the FISC has made all of the necessary findings and is satisfied that the FISA application meets the statutory provisions, the FISC issues an *ex parte* order authorizing the electronic surveillance, physical search, or both, requested in the application.  *See* 50 U.S.C. §§ 1805(a), 1824(a).  The order must specify:

(1) the identity, if known, or a description of the specific target of the collection;

(2) the nature and location of each facility or place at which the electronic surveillance will be directed or of each of the premises or properties that will be searched;

(3) the type of information sought to be acquired and the type of communications or activities that are to be subjected to the electronic surveillance, or the type of information, material, or property that is to be seized, altered, or reproduced through the physical search;

(4) the manner and means by which electronic surveillance will be effected and whether physical entry will be necessary to effect that surveillance, or a statement of the manner in which the physical search will be conducted;

(5) the period of time during which electronic surveillance is approved and/or the authorized scope of each physical search; and

(6) the applicable minimization procedures.

*Id.* §§ 1805(c)(1) and 2(A), 1824(c)(1) and 2(A).

Under FISA, electronic surveillance or physical search targeting a United States person may be approved for up to 90 days, and those targeting a non-United States person may be approved for up to 120 days. *See* 50 U.S.C. §§ 1805(d)(1), 1824(d)(1). Extensions may be granted, but only if the United States submits another application that complies with FISA's requirements. An extension for electronic surveillance or physical search targeting a United States person may be approved for up to 90 days, and one targeting a non-United States person may be approved for up to one year.[13] *See id.* §§ 1805(d)(2), 1824(d)(2).

## III.   DISTRICT COURT'S REVIEW OF FISC ORDERS

FISA authorizes the use in a criminal prosecution of information obtained or derived from any FISA-authorized electronic surveillance or physical search, provided that advance authorization is obtained from the Attorney General, *see* 50

---

[13] The FISC retains the authority to review, before the end of the authorized period of electronic surveillance or physical search, the government's compliance with the requisite minimization procedures. *See id.* §§ 1805(d)(3), 1824(d)(3).

U.S.C. §§ 1806(b), 1825(c), and that proper notice is subsequently given to the court

and to each aggrieved person against whom the information is to be used.[14]  *See id.*

§§ 1806(c)-(d), 1825(d)-(e).  Upon receiving notice, an aggrieved person against

whom the information is to be used may move to suppress the use of the FISA

information on two grounds: (1) that the information was unlawfully acquired; or (2)

that the electronic surveillance or physical search was not conducted in conformity

with an order of authorization or approval.  *See id.* §§ 1806(e), 1825(f).  In addition,

FISA contemplates that a defendant may file a motion or request under any other

statute or rule of the United States to discover or obtain applications, orders, or other

materials relating to electronic surveillance or physical search, *i.e.*, the FISA

materials.  *See id.* §§ 1806(f), 1825(g).  When a defendant moves to suppress FISA

information under 50 U.S.C. §§ 1806(e) or 1825(f), or seeks to discover the FISA

materials under some other statute or rule, the motion or request is evaluated using

FISA's probable cause standard, which is discussed below, and not the probable

cause standard applicable to criminal warrants.  *See United States v. Osmakac*, 868 F.3d

937, 952 (11th Cir. 2017) ("[M]otions to discover FISA materials are evaluated using

FISA's probable-cause standard, not the probable-cause standard applicable to

---

[14] An "aggrieved person" is defined as the target of electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance," *id.* § 1801(k), as well as "a person whose premises, property, information, or material is the target of physical search" or "whose premises, property, information, or material was subject to physical search."  *Id.* § 1821(2).  Alazhari is an "aggrieved person" under FISA, and as noted above, was provided with notice of his status as such and of the government's intent to use FISA-obtained or -derived information against him at trial.

criminal warrants."); *see also United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011) ("[FISA's] probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power."); *United States v. Duka*, 671 F.3d 329, 336-37 (3d Cir. 2011) (rejecting appellant's challenge to FISA's probable cause standard because it does not require any indication that a crime has been committed); *United States v. Pelton*, 835 F.2d 1067, 1075 (4th Cir. 1987); *United States v. Cavanagh*, 807 F.2d 787, 791 (9th Cir. 1987) (rejecting appellant's argument for suppression that evidence of criminal conduct incidentally discovered as the result of FISA surveillance was not supported by probable cause of criminal activity).

## A. The Review Is to Be Conducted *In Camera* and *Ex Parte*

In assessing the legality of FISA-authorized electronic surveillance, physical search, or both, the district court

> shall, notwithstanding any other law, if the Attorney General files an affidavit or declaration under oath that disclosure or an adversary hearing would harm the national security of the United States, review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.[15]

50 U.S.C. §§ 1806(f), 1825(g).  On the filing of such an affidavit or declaration, as has been filed here by the AAG/NS, the court "may disclose to the aggrieved person,

---

[15] **[CLASSIFIED INFORMATION REDACTED]**

under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance [or physical search] only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]." *Id.* §§ 1806(f), 1825(g). Thus, the propriety of the disclosure of any FISA applications or orders to a defendant may not even be considered unless and until the district court has first concluded that it is unable to make an accurate determination of the legality of the acquired collection after reviewing the government's submissions (and any supplemental pleadings that the district court may request) *in camera* and *ex parte*. *See United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) ("Unless and until a district judge performs his or her statutory duty of attempting to determine the legality of the surveillance without revealing any of the fruits of the surveillance to defense counsel, there is no basis for concluding that disclosure is necessary in order to avert an erroneous conviction."); *see also Osmakac*, 868 F.3d at 954-55 (citing *Abu-Jihaad*, 630 F.3d at 129); *United States v. Omar*, 786 F.3d 1104, 1110-11 (8th Cir. 2015) (citing *United States v. Isa*, 923 F.2d 1300, 1306 (8th Cir. 1991)); *El-Mezain*, 664 F.3d at 565; *United States v. Hamide*, 914 F.2d 1147, 1149-1150 (9th Cir. 1990) (upon review of the FISA materials, the Court determined that "[disclosure] is not necessary, to the determination of the legality of the electronic surveillances submitted to the court to disclose those [FISA materials] to respondents"); *United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987) (the court "agree[d] with the district court that there [were] 'no indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or

surveillance records which include a significant amount of non-foreign intelligence information, or any other factors that would indicate a need for disclosure' in the case"); *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982); *United States v. Gartenlaub*, No. 14-CR-00173-CAS, Doc. No. 114, at 8 (C.D. Cal. Aug. 6, 2015) ("Disclosure to the defense . . . is not required because the Court was able to make an accurate determination of the legality of the [FISA materials]"); *United States v. Mohamud*, No. 10-CR-00475, 2012 WL 12952303, at *4 (D. Or. May 7, 2012) ("the court cannot make a disclosure to defendant unless the court first concludes that the [FISA materials] are inadequate for the court to make an 'accurate determination' of whether the FISA order was correctly obtained and the surveillance was in accord with the order"); *United States v. Kashmiri*, No. 09-CR-830, 2010 WL 4705159, at *2 (N.D. Ill. Nov. 10, 2010); *United States v. Nicholson*, No. 09-CR-40, 2010 WL 1641167, at *4 (D. Or. Apr. 21, 2010) ("After an *in-camera* review, the court 'has the discretion to disclose portions of the documents, under appropriate protective procedures, *only if [the court] decides that such disclosure is necessary to make an accurate determination of the legality of the surveillance.*'") (quoting *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984)) (emphasis in *Nicholson*); *United States v. Islamic Am. Relief Agency ("IARA")*, No. 07-00087-CR-W-NKL, 2009 WL 5169536, at *3-4 (W.D. Mo. Dec. 21, 2009) ("FISA provides that Courts must first review the challenged dockets *ex parte* and *in camera*").

1.    *In Camera, Ex Parte* **Review Is the Rule**

Federal courts have repeatedly and consistently held that FISA anticipates that an *ex parte*, *in camera* determination is to be the rule, while disclosure and an adversarial hearing are the exception, occurring *only* when necessary. *See Daoud*, 755 F.3d at 481 (finding that "the district judge must, in a non-public ('*in camera*'), nonadversarial ('*ex parte*') proceeding, attempt to determine whether the surveillance was proper"); *Belfield*, 692 F.2d at 147; *accord Omar*, 786 F.3d at 1110 (quoting *Isa*, 923 F.2d at 1306); *El-Mezain*, 664 F.3d at 567 ("disclosure of FISA materials is the exception and *ex parte*, *in camera* determination is the rule") (citing *Abu-Jihaad*, 630 F.3d at 129); *Duggan*, 743 F.2d at 78; *Nicholson*, 2010 WL 1641167, at *3-4; *Rosen*, 447 F. Supp. 2d at 546; *United States v. Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa. Aug. 22, 1989), *aff'd*, 958 F.2d 365 (3d Cir. 1992).

In fact, every court but one (whose decision was subsequently overturned by the Seventh Circuit)[16] that has addressed a motion to disclose FISA materials or to suppress FISA information has been able to reach a conclusion as to the legality of the FISA collection at issue based on its *in camera*, *ex parte* review. *See, e.g., United States v. Badia*, 827 F.2d 1458, 1463 (11th Cir. 1987); *In re Grand Jury Proceedings of the*

---

[16] The district court in *United States v. Daoud*, No. 12-CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014), ruled that it was capable of making the determination, but nevertheless ordered the disclosure of FISA materials. The government appealed the district court's order to the U.S. Court of Appeals for the Seventh Circuit, which overturned the district court's decision to disclose, stating, "[s]o clear is it that the materials were properly withheld from defense counsel that there is no need for a remand to enable the district judge to come to the same conclusion, because she would have to do so." 755 F.3d at 485.

*Special Apr. 2002 Grand Jury ("In re Grand Jury Proceedings")*, 347 F.3d 197, 203 (7th

Cir. 2003) (noting that no court has ever ordered disclosure of FISA materials);

*Omar*, 786 F.3d at 1110-11; *El-Mezain*, 664 F.3d at 566 (quoting district court's

statement that no court has ever held an adversarial hearing to assist the court);

*United States. v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *Isa*, 923 F.2d at 1306 ("study of

the materials leaves no doubt that substantial national security interests required the

*in camera, ex parte* review, and that the district court properly conducted such a

review"); *Abu-Jihaad*, 531 F. Supp. 2d at 310, *aff'd*, 630 F.3d at 129-30; *Kashmiri*,

2010 WL 4705159, at *2-3; *United States v. Gowadia*, No. 05-00486, 2009 WL

1649714, at *2 (D. Haw. June 8, 2009); *Spanjol*, 720 F. Supp. at 58-59; *United States v.*

*Mubayyid*, 521 F. Supp. 2d 125, 130 (D. Mass. Nov. 5, 2007); *United States v. Hassoun*,

No. 04-CR-60001, 2007 WL 1068127, at *4 (S.D. Fla. Apr. 4, 2007); *United States v.*

*Jayyousi*, No. 04-60001, 2007 WL 851278, at *7-8 (S.D. Fla. Mar. 15, 2007), *aff'd*,

657 F.3d 1085 (11th Cir. 2011)[17]; *Rosen*, 447 F. Supp. 2d at 546; *United States v. Sattar*,

No. 02-CR-395, 2003 WL 22137012, at *6 (S.D.N.Y. Sept. 15, 2003) (citing *United*

*States v. Nicholson*, 955 F. Supp. 588, 592 & n.11 (E.D. Va. Feb. 14, 1997)) (noting

"this court knows of no instance in which a court has required an adversary hearing

or disclosure in determining the legality of a FISA surveillance"); *United States v.*

*Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. Oct. 24, 1990).

---

[17] All citations to *Jayyousi* herein are to the Magistrate Judge's Report and
Recommendation, which was adopted and incorporated into the Court's Opinion.

As the exhibits in the Sealed Appendix make clear, there is nothing extraordinary about the instant FISA-authorized electronic surveillance and physical search that would justify the production and disclosure of highly sensitive and classified FISA materials or the suppression of FISA-obtained or -derived evidence. Here, the FISA materials are well-organized and easily reviewable by the Court *in camera* and *ex parte*, and they are fully and facially sufficient to allow the Court to make an accurate determination that the FISA information was lawfully acquired and that the electronic surveillance and physical search were conducted in conformity with an order of authorization or approval. In other words, the materials presented "are straightforward and readily understood." *In re Kevork*, 634 F. Supp. 1002, 1008 (C.D. Cal. Aug. 5, 1985), *aff'd*, 788 F.2d 566 (9th Cir. 1986). Moreover, as in other cases, "[t]he determination of legality in this case is not complex." *Belfield*, 692 F.2d at 147; *see also United States v. Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn. Apr. 17, 2008) (finding that the "issues presented by the FISA applications are straightforward and uncontroversial"); *Abu-Jihaad*, 531 F. Supp. 2d at 310; *Thomson*, 752 F. Supp. at 79. This Court, much like the aforementioned courts, is capable of reviewing the FISA materials *in camera* and *ex parte* and making the requisite legal determination without an adversarial hearing.

In addition to the specific harm that would result from the disclosure of the FISA materials in this case, which is detailed in the classified declaration of a high-ranking FBI official in support of the Declaration and Claim of Privilege of the AAG/NS, the underlying rationale for non-disclosure is clear: "In the sensitive area

of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized." *Ott*, 827 F.2d at 477 ("Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question."); *accord IARA*, 2009 WL 5169536, at *3-4.

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States "will be unable to maintain the confidentiality of its relationship to them, many [of those sources] could well refuse to supply information." *CIA v. Sims*, 471 U.S. 159, 175 (1985); *see also Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981). When considering whether the disclosure of classified sources, methods, techniques, or information would harm the national security, federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States. *See Sims*, 471 U.S. at 180; *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about

24

this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."); *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself").  An adversarial hearing is not only unnecessary to aid the Court in the straightforward task before it, but such a hearing would also create potential dangers that courts have consistently sought to avoid.

As the *Belfield* court explained:

> Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements.  The statute is meant to "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights."  In FISA the privacy rights of individuals are ensured not through mandatory disclosure, but through its provisions for in-depth oversight of FISA surveillance by all three branches of government and by a statutory scheme that to a large degree centers on an expanded conception of minimization that differs from that which governs law enforcement surveillance.

692 F.2d at 148 (footnotes and citations omitted); *see also Daoud*, 755 F.3d at 483 ("Everyone recognizes that privacy is a legally protectable interest, and it is not an interest of private individuals alone.  [FISA] is an attempt to strike a balance between the interest in full openness of legal proceedings and the interest in national security, which requires a degree of secrecy concerning the government's efforts to protect the nation."); *ACLU Found. of So. Cal. v. Barr*, 952 F.2d 457, 465 (D.C. Cir. 1991) (citing

*Belfield* for the proposition that section 1806(f) "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance").

### 2.   *In Camera, Ex Parte* Review Is Constitutional

The constitutionality of FISA's *in camera, ex parte* review provisions has been affirmed by every federal court that has considered the matter. *See, e.g., El-Mezain*, 664 F.3d at 567; *Abu-Jihaad*, 630 F.3d at 117; *Ott*, 827 F.2d at 476-77 (FISA's review procedures do not deprive a defendant of due process); *Belfield*, 692 F.2d at 148-49; *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process."); *ACLU Found. of So. Cal.*, 952 F.2d at 465; *Isa*, 923 F.2d at 1306 (upholding the district court's *in camera, ex parte* review as constitutional and stating that the process delineated under FISA "provides even more protection" than defendants receive in other contexts); *Nicholson*, 2010 WL 1641167, at *3-4; *Gowadia*, 2009 WL 1649714, at *2; *Jayyousi*, 2007 WL 851278, at *7-8; *United States v. Benkahla*, 437 F. Supp. 2d 541, 554 (E.D. Va. May 17, 2006); *Spanjol*, 720 F. Supp. at 58-59; *United States v. Megahey*, 553 F. Supp. 1180, 1194 (E.D.N.Y. Dec. 1, 1982) ("*ex parte, in camera* procedures provided in 50 U.S.C. § 1806(f) are constitutionally sufficient to determine the lawfulness of the electronic surveillance at issue while safeguarding defendant's fourth amendment rights"); *United States v. Falvey*, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. June 15, 1982) (a

"massive body of pre-FISA case law of the Supreme Court, [the Second] Circuit and others" supports the conclusion that the legality of electronic surveillance should be determined on an *in camera, ex parte* basis).

In summary, FISA mandates a process by which the district court must conduct an initial *in camera, ex parte* review of FISA applications, orders, and related materials in order to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were conducted in conformity with an order of authorization or approval. Such *in camera, ex parte* review is the rule in such cases, and that procedure is constitutional. In this case, the AAG/NS has filed the required declaration invoking that procedure, and has declared that disclosure or an adversarial hearing would harm national security. Accordingly, an *in camera, ex parte* review by this Court is the appropriate venue in which to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were conducted in conformity with an order of authorization or approval.

**B.   The District Court's Substantive Review**

In evaluating the legality of the FISA collection, the district court's review should determine: (1) whether the certification submitted by the Executive Branch in support of a FISA application was properly made; (2) whether the application established the probable cause showing required by FISA; and (3) whether the collection was properly minimized. *See Abu-Jihaad*, 630 F.3d at 130-31; *see also* 50 U.S.C. §§ 1806(f), 1825(g).

1.      **Standard of Review of Probable Cause**

Although federal courts are not in agreement as to whether the probable cause determinations of the FISC should be reviewed *de novo* or accorded due deference, the material under review here satisfies either standard of review. *See Omar*, 786 F.3d at 1112 ("[W]e have no hesitation in concluding that probable cause under FISA existed under any standard of review"); *Abu-Jihaad*, 630 F.3d at 130 ("Although the established standard of judicial review applicable to FISA warrants is deferential, the government's detailed and complete submissions in this case would easily allow it to clear a higher standard of review."); *Gartenlaub*, No 14-CR-00173-CAS, Doc. No. 114, at 8 ("[T]he Court finds that the materials that it has reviewed in camera, ex parte satisfy either standard."). Although the government understands that the Eleventh Circuit has not specifically addressed whether the probable cause determinations of the FISC should be reviewed *de novo* or accorded due deference, the court of appeals has noted that "FISA applications approved by the Attorney General . . . are subject only to 'minimal scrutiny.'" *Osmakac*, 868 F.3d at 953 (citing *United States v. Campa*, 529 F.3d 980, 993 (11th Cir. 2008), and *Badia*, 827 F.2d at 1463). The government respectfully submits that it is appropriate to accord due deference to the findings of the FISC, but notes that a number of courts, citing the *ex parte* nature of the proceedings, have instead reviewed the FISC's probable cause determination *de novo*.[18] While in the minority, other courts have afforded due

---

[18] *See, e.g., United States v. Hammoud*, 381 F.3d 316, 332 (4th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1097 (2005), *op. reinstated in pertinent part*, 405 F.3d 1034 (4th Cir. 2005);

deference to the findings of the FISC. *See Abu-Jihaad*, 630 F.3d at 130; *accord United States v. Ahmed*, No. 1:06-CR-147, 2009 U.S. Dist. LEXIS 120007 at *21-22 (N.D. Ga. Mar. 19, 2009) (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing *Gates*, 462 U.S. at 236).

In the analogous area of criminal searches and surveillance, the law in the Eleventh Circuit, as well as that in other federal circuits, accords great deference to a magistrate judge's probable cause determinations. *See, e.g.*, *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) ("we afford 'great deference' to the determination of a magistrate judge that a search warrant affidavit is supported by probable cause, and we uphold the determination of the magistrate judge so long as he 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing'" (quoting *Gates*, 462 U.S. at 236); *see also, e.g.*, *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013); *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009). It would thus be consistent for a court that is reviewing FISA-authorized electronic surveillance and physical search to adopt the same posture it would when reviewing the probable

---

*United States v. Kabir*, No. 5:12-CR-00092-VAP, Doc. No. 277, at 2 (C.D. Cal. May 5, 2014) (in which "the Court engaged in a *de novo* review of the [FISA] documents"); *Kashmiri*, 2010 WL 4705159, at *1; *Nicholson*, 2010 WL 1641167, at *5; *Warsame*, 547 F. Supp. 2d at 990-91 (the required showing is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability" that the search will be fruitful (citing *Illinois v. Gates*, 462 U.S. 231, 238 (1983))); *Rosen*, 447 F. Supp. 2d at 545. In each of these cases, the courts applied a *de novo* standard in reviewing the FISC's probable cause findings, and each court found that the application(s) before it contained probable cause.

cause determination of a criminal search warrant issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure. *See Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *21-22 (according the same deference to the FISC's probable cause determination as a magistrate's criminal probable cause determination); *cf. Cavanagh*, 807 F.2d at 790 (concluding that FISA order can be considered a warrant since it is issued by a detached judicial officer and is based on a reasonable showing of probable cause).[19]

## 2.   **Probable Cause Standard**

FISA requires a finding of probable cause that the target is a foreign power or an agent of a foreign power and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, or that the property or premises to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power. It is this standard – not the standard applicable to criminal search warrants – that this Court must apply. *See Osmakac*, 868 F.3d at 952 ("[M]otions to discover FISA materials are evaluated using FISA's probable-cause standard, not the probable-cause standard applicable to criminal warrants."); *El-Mezain*, 664 F.3d at 564 ("[t]his probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the

---

[19] *Ahmed* is not alone in analogizing FISA orders to search warrants. *See, e.g., In re Sealed Case*, 310 F.3d 717, 774 (FISA Ct. Rev. 2002) (declining to decide whether a FISA order constitutes a warrant, but noting "to the extent a FISA order comes close to meeting Title III, that certainly bears on its reasonableness under the Fourth Amendment"); *but cf. Warsame*, 547 F. Supp. 2d at 992 n.10 (noting that the need for foreign intelligence justifies an exception to the warrant requirement).

FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power"); *Omar*, 786 F.3d at 1111 ("[R]ather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power.") (quoting *El-Mezain*, 664 F.3d at 564) *Abu-Jihaad*, 630 F.3d at 130-31; *Duka*, 671 F.3d at 338; *Cavanagh*, 807 F.2d. at 790 (citing *United States v. United States District Court (Keith)*, 407 U.S. 297, 322 (1972)).

**[CLASSIFIED INFORMATION REDACTED]**

The probable cause threshold which the government must satisfy before receiving authorization to conduct electronic surveillance or a physical search under FISA complies with the Fourth Amendment's reasonableness standard. The argument that FISA's different probable cause standard violates the Fourth Amendment's reasonableness requirement has been uniformly rejected by federal courts. *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 120 (listing 16 cases that have ruled FISA does not violate the Fourth Amendment).

The Supreme Court has stated that "[d]ifferent standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of the Government for intelligence information and the protected rights of our citizens." *Keith*, 407 U.S. at 322-23 (recognizing that domestic security surveillance "may involve different policy and practical considerations than the surveillance of 'ordinary crime'"). In *Keith*, the Supreme Court acknowledged that: (1) the "focus of . . . surveillance [in domestic security investigations] may be less precise than that

directed against more conventional types of crime"; (2) unlike ordinary criminal investigations, "[t]he gathering of security intelligence is often long range and involves the interrelation of various sources and types of information"; and (3) the "exact targets of such surveillance may be more difficult to identify" than in surveillance operations of ordinary crimes under Title III. *Id.* Although *Keith* was decided before FISA's enactment and addressed purely domestic security surveillance, the rationale underlying *Keith* applies *a fortiori* to foreign intelligence surveillance, where the government's interest, at least from a national security perspective, would typically be more pronounced.

FISA was enacted partly in response to *Keith*. In constructing FISA's framework, Congress addressed *Keith*'s question of whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of government for intelligence information and the protected rights of our citizens," and "concluded that such departures are reasonable." *See* S. REP. NO. 95-701, 95th Cong., 2d Sess., at 11-12 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3980. Similarly, many courts, including the FISC of Review, have relied on *Keith* in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment. *See Ning Wen*, 477 F.3d at 898 (holding that FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime has been committed"); *Damrah*, 412 F.3d at 625 (denying the defendant's claim that FISA's procedures violate the Fourth Amendment); *In re Sealed Case*, 310 F.3d at 738, 746 (finding that while many of

32

FISA's requirements differ from those in Title III, few of those differences have constitutional relevance); *Pelton*, 835 F.2d at 1075 (finding FISA's procedures compatible with the Fourth Amendment); *Cavanagh*, 807 F.2d at 790-91 (holding that FISA satisfies the Fourth Amendment requirements of probable cause and particularity); *Duggan*, 743 F.2d at 74 (holding that FISA does not violate the Fourth Amendment); *Warsame*, 547 F. Supp. 2d at 993-94; *Mubayyid*, 521 F. Supp. 2d at 135-41 (rejecting claim that FISA violates the Fourth Amendment's judicial review, probable cause, notice, and particularity requirements); *United States v. Marzook*, 435 F. Supp. 2d 778, 786 (N.D. Ill. June 22, 2006) ("Courts uniformly have held that FISA procedures satisfy the Fourth Amendment's reasonableness requirement."); *Falvey*, 540 F. Supp. at 1311-14 (finding that FISA procedures satisfy the Fourth Amendment's warrant requirement).

### 3.    <u>Standard of Review of Certifications</u>

Certifications submitted in support of a FISA application should be "subject only to minimal scrutiny by the courts," *Badia*, 827 F.2d at 1463, and are "presumed valid." *Duggan*, 743 F.2d at 77 & n.6 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)); *see also Osmakac*, 868 F.3d 937 (citing *Campa*, 529 F.3d at 993, and *Badia*, 827 F.2d at 1463); *Turner*, 840 F.3d at 342 (finding that "our role 'is not to second-guess the executive branch official's certification'") (quoting *In re Grand Jury Proceedings*, 347 F.3d at 204); *United States v. Omar*, No. 09-242, 2012 WL 2357734, at *3 (D. Minn. June 20, 2012), *aff'd*, 786 F.3d 1104 (8th Cir. 2015) ("FISA warrants are

subject to 'minimal scrutiny by the courts,' both upon initial presentation and subsequent challenge" and "the reviewing court must presume as valid 'the representations and certifications' . . ."); *United States v. Sherifi*, 793 F. Supp. 2d 751, 760 (E.D.N.C. June 22, 2011); *Nicholson*, 2010 WL 1641167, at *5 (quoting *Rosen*, 447 F. Supp. 2d at 545); *Warsame*, 547 F. Supp. 2d at 990 ("a presumption of validity [is] accorded to the certifications"). When a FISA application is presented to the FISC, "[t]he FISA Judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Duggan*, 743 F.2d at 77. Likewise, Congress intended that the reviewing district court should "have no greater authority to second-guess the executive branch's certifications than has the FISA judge." *Id.; see also In re Grand Jury Proceedings*, 347 F.3d at 204-05; *Rahman*, 861 F. Supp. at 250; *IARA*, 2009 WL 5169536, at *4; *Kashmiri*, 2010 WL 4705159, at *1.

The district court's review should determine whether the certifications were made in accordance with FISA's requirements. *See Omar*, 2012 WL 2357734, at *3 ("the reviewing court must presume as valid 'the representations and certifications submitted in support of an application for FISA surveillance' . . . absent a showing sufficient to trigger a *Franks* hearing"); *see also Campa*, 529 F.3d at 993 ("in the absence of a *prima facie* showing of a fraudulent statement by the certifying officer, procedural regularity is the only determination to be made if a non-United States person is the target") (quoting *Badia*, 827 F.2d at 1463); *United States v. Alwan,* No.

34

1:11-CR-13, 2012 WL 399154, at *7 (W.D. Ky. Feb. 7, 2012) ("the [c]ourt is not to second-guess whether the certifications were correct, but merely to ensure they were properly made") (quoting *Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *20). When the target is a United States person, as is the case with Alazhari, then the district court "must ensure that the government's certifications are not 'clearly erroneous.'" *Campa*, 529 F.3d at 994; *see also Duggan*, 743 F.2d at 77. A "clearly erroneous" finding is established only when "although there is evidence to support it, the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005); *IARA*, 2009 WL 5169536, at *4 (identifying "clearly erroneous" standard of review for FISA certifications).

### 4.    FISA Is Subject to the "Good Faith" Exception

Even assuming *arguendo* that this Court determines that a particular FISC order was not supported by probable cause, or that one or more of the FISA certification requirements were not in fact met, the evidence obtained or derived from the FISA-authorized electronic surveillance and physical search is, nonetheless, admissible under the "good faith" exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897 (1984).[20] Numerous courts have stated that the

---

[20] "[E]ven if we were to conclude that amended FISA is unconstitutional, evidence derived from it would nevertheless have been admissible in the government's case. . . . The exclusionary rule precludes the admission of evidence tainted by a Fourth Amendment

good faith exception applies to FISA evidence. *See Ning Wen*, 477 F.3d at 897 (noting that federal officers were entitled to rely in good faith on a FISA warrant); *Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *25 n.8, 26-27 ("[t]he FISA evidence obtained . . . would be admissible under *Leon*'s 'good faith' exception to the exclusionary rule were it not otherwise admissible under a valid warrant"); *Mubayyid*, 521 F. Supp. 2d at 140 n.12 ("there appears to be no issue as to whether the government proceeded in good faith and in reasonable reliance on the FISA orders"); *Marzook*, 435 F. Supp. at 790-91 (holding, in an analogous context, that "the FBI's reliance on the Attorney General's approval under Executive Order No. 12,333 – an order that no court has found unconstitutional – was [] objectively reasonable because that order pertains to foreign intelligence gathering").

The FISA-authorized electronic surveillance and physical search at issue in this case, authorized by a duly enacted statute and an order issued by a neutral judicial officer, would fall squarely within this good faith exception. There is no basis to find that any declarations or certifications at issue in this case were deliberately or recklessly false. *See Leon*, 468 U.S. at 914-15; *see also Massachusetts v. Sheppard*, 468 U.S. 981 (1984); *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). Further, there are no facts indicating that the FISC failed to act in a neutral and detached manner in authorizing the electronic surveillance and physical search

---

violation" only in those cases where its application will deter police misconduct. *Duka*, 671 F.3d at 346 (citing *Leon*, 468 U.S. at 918).

at issue. *See Leon*, 468 U.S. at 914-15. Moreover, as the Court will see from its *in camera, ex parte* review of the FISA materials, facts establishing the requisite probable cause were submitted to the FISC, the FISC's orders contained all of the requisite findings, and well-trained officers reasonably relied on those orders. *See Leon*, 468 U.S. at 923. Therefore, in the event that the Court questions whether a particular FISC order was supported by sufficient probable cause, the information obtained pursuant to those orders would be admissible under *Leon*'s good faith exception to the exclusionary rule.

## IV. THE FISA INFORMATION WAS LAWFULLY ACQUIRED AND THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL

[CLASSIFIED INFORMATION REDACTED]

### A. The Instant FISA Application(s) Met FISA's Probable Cause Standard

[CLASSIFIED INFORMATION REDACTED]

#### 1. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

#### 2. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

##### a. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

###### i. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

   ii.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

   iii.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

   iv.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

   v.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  b.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  c.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

 3.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  a.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  b.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  c.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

  d.  [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

e.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

f.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

g.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

h.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

i.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

j.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

**B.      THE CERTIFICATION(S) COMPLIED WITH FISA**

[CLASSIFIED INFORMATION REDACTED]

1.      **Foreign Intelligence Information**

[CLASSIFIED INFORMATION REDACTED]

2.      **"A Significant Purpose"**

[CLASSIFIED INFORMATION REDACTED]

3.      **Information Not Reasonably Obtainable Through Normal Investigative Techniques**

[CLASSIFIED INFORMATION REDACTED]

### C. THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL

[CLASSIFIED INFORMATION REDACTED]

#### 1. The Minimization Procedures

Once a reviewing court is satisfied that the electronic surveillance and physical search were properly certified and that the information was lawfully acquired pursuant to FISA, it must then examine whether the electronic surveillance and physical search were lawfully conducted. *See* 50 U.S.C. §§ 1806(e)(2), 1825(f)(1)(B). In order to examine whether the electronic surveillance and physical search were lawfully conducted, the reviewing court must determine whether the government followed the relevant minimization procedures to appropriately minimize the information acquired pursuant to FISA.

[CLASSIFIED INFORMATION REDACTED]

FISA's legislative history and the applicable case law demonstrate that the definitions of "minimization procedures" and "foreign intelligence information" were intended to take into account the realities of collecting foreign intelligence because the activities of persons engaged in clandestine intelligence gathering or international terrorism are often not obvious on their face. *See Rahman*, 861 F. Supp. at 252-53. The degree to which information is required to be minimized varies somewhat given the specifics of a particular investigation, such that less minimization at acquisition is justified when "the investigation is focusing on what is thought to be a widespread conspiracy" and more extensive surveillance is necessary

"to determine the precise scope of the enterprise." *In re Sealed Case*, 310 F.3d at 741; *see also United States v. Bin Laden*, 126 F. Supp. 2d 264, 286 (S.D.N.Y. Dec. 5, 2000) ("more extensive monitoring and greater leeway in minimization efforts are permitted in a case like this given the world-wide, covert and diffuse nature of the international terrorist group(s) targeted" (internal quotation marks omitted)). Furthermore, the activities of foreign powers and their agents are often not obvious from an initial or cursory overhear of conversations.  To the contrary, agents of foreign powers frequently engage in coded communications, compartmentalized operations, the use of false identities, and other practices designed to conceal the breadth and aim of their operations, organization, activities, and plans.  *See, e.g., United States v. Salameh*, 152 F.3d 88, 154 (2d Cir. 1998) (noting that two conspirators involved in the 1993 bombing of the World Trade Center in New York referred to the bomb plot as the "study" and to terrorist materials as "university papers").  As one court explained, "[i]nnocuous-sounding conversations may in fact be signals of important activity; information on its face innocent when analyzed or considered with other information may become critical." *Kevork*, 634 F. Supp. at 1017 (quoting H.R. REP. NO. 95-1283, 95th Cong., 2d Sess., pt. 1, at 55 (1978)); *see also Hammoud*, 381 F.3d at 334 (citing *Salameh*, 152 F.3d at 154); *In re Sealed Case*, 310 F.3d at 740-41; *Thomson*, 752 F. Supp. at 81 (noting that it is permissible to retain and disseminate "bits and pieces" of information until the information's "full significance becomes apparent") (citing H.R. REP. NO. 95-1283, pt. 1, at 58); *Bin Laden*, 126 F. Supp. 2d at 286.  Likewise, "individual items of information, not apparently

41

significant when taken in isolation, may become highly significant when considered together over time." *Rahman*, 861 F. Supp. at 252-53 (citing H.R. REP. NO. 95-1283, pt. 1, at 55, 59). The government must be given flexibility where the conversations are carried out in a foreign language. *See Mubayyid*, 521 F. Supp. 2d at 134; *Rahman*, 861 F. Supp. at 252. As a result, "courts have construed 'foreign intelligence information' broadly and sensibly allowed the government some latitude in its determination of what is foreign intelligence information." *Rosen*, 447 F. Supp. 2d at 551.

The nature of the foreign intelligence information sought also impacts implementation of the minimization procedures at the retention and dissemination stages. There is a legitimate need to conduct a thorough post-acquisition review of FISA information that involves a United States person who is acting as an agent of a foreign power. As Congress explained:

> It is "necessary" to identify anyone working with him in this network, feeding him information, or to whom he reports. Therefore, it is necessary to acquire, retain and disseminate information concerning all his contacts and acquaintances and his movements. Among his contacts and acquaintances, however, there are likely to be a large number of innocent persons. Yet, information concerning these persons must be retained at least until it is determined that they are not involved in the clandestine intelligence activities and may have to be disseminated in order to determine their innocence.

H.R. REP. NO. 95-1283, pt. 1, at 58. Indeed, at least one court has cautioned that, when a U.S. person communicates with an agent of a foreign power, the government would be "remiss in meeting its foreign counterintelligence responsibilities" if it did

not thoroughly "investigate such contacts and gather information to determine the nature of those activities." *Thomson*, 752 F. Supp. at 82.

In light of these realities, Congress recognized that "no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." S. REP. NO. 95-701, at 39, 1978 U.S.C.C.A.N., at 4008 (quoting *United States v. Bynum*, 485 F.2d 490, 500 (2d Cir. 1973)). The Fourth Circuit reached the same conclusion in *Hammoud*, stating that the "mere fact that innocent conversations were recorded, without more, does not establish that the government failed to appropriately minimize surveillance." 381 F.3d at 334.

Accordingly, in reviewing the adequacy of minimization efforts, the test to be applied is neither whether innocent conversations were intercepted, nor whether mistakes were made with respect to particular communications. Rather, as the United States Supreme Court stated in the context of Title III surveillance, there should be an "objective assessment of the [agents'] actions in light of the facts and circumstances confronting [them] at the time." *Scott v. United States*, 436 U.S. 128, 136 (1978). "The test of compliance is 'whether a good-faith effort to minimize was made.'" *Mubayyid*, 521 F. Supp. 2d at 135; *see also Hammoud*, 381 F.3d at 334 ("[t]he minimization requirement obligates the Government to make a good faith effort to minimize the acquisition and retention of irrelevant information"); S. REP. NO. 95-701, at 39-40, 1978 U.S.C.C.A.N., at 4008-09 (stating that the court's role is to determine whether "on the whole, the agents have shown a high regard for the right of privacy and have done all they reasonably could do to avoid unnecessary

intrusion"); *IARA*, 2009 WL 5169536, at *6 (quoting S. REP. NO. 95-701, at 39-40, 1978 U.S.C.C.A.N., at 3990-91).

Moreover, as noted above, FISA expressly states that the government is not required to minimize information that is "evidence of a crime," whether or not it is also foreign intelligence information.  50 U.S.C. §§ 1801(h)(3), 1821(4)(c); *see also Isa*, 923 F.2d at 1304 (noting that "[t]here is no requirement that the 'crime' be related to foreign intelligence").  As a result, to the extent that certain communications of a United States person may be evidence of a crime or otherwise may establish an element of a substantive or conspiratorial offense, such communications need not be minimized.  *See Isa,* 923 F.2d at 1305.

Even if certain communications were not handled in a manner that fully complied with the applicable minimization procedures, suppression would not be the appropriate remedy with respect to other communications which were handled in accordance with such procedures.  *Cf. United States v. Falcone*, 364 F. Supp. 877, 886-87 (D.N.J. Sept. 28, 1973), *aff'd*, 500 F.2d 1401 (3d Cir. 1974) (Title III).  As discussed above, absent evidence that "on the whole" there has been a "complete" disregard for the minimization procedures, the fact that some communications should have been minimized does not affect the admissibility of others that were properly acquired and retained.  Indeed, Congress specifically intended that the only evidence that should be suppressed is the "evidence which was obtained unlawfully." H.R. REP. NO. 95-1283, pt. 1, at 93.  FISA's legislative history reflects that Congress intended only a limited sanction for errors of minimization:

> As the language of the bill makes clear, only that evidence which
> was obtained unlawfully or derived from information obtained
> unlawfully would be suppressed.  If, for example, some information
> should have been minimized but was not, only that information
> should be suppressed; the other information obtained lawfully
> should not be suppressed.

*Id.*; *see also Falcone*, 364 F. Supp. at 886-87; *accord United States v. Medunjanin*, No. 10-
CR-19-1, 2012 WL 526428, at *12 (E.D.N.Y. Feb. 16, 2012) (disclosure and
suppression not warranted where "failure to adhere to [the minimization] protocol
was *de minimis*").

### 2.    The FISA Information Was Appropriately Minimized

### [CLASSIFIED INFORMATION REDACTED]

Based upon this information, the government respectfully submits that the
FISA collection herein was conducted in a lawful manner.  Consequently, for the
reasons stated above, the Court should find that the FISA collection discussed herein
was lawfully conducted under the minimization procedures approved by the FISC
and applicable to the FISA collection discussed herein.

## V.    THE COURT SHOULD REJECT THE DEFENDANT'S LEGAL ARGUMENTS

In the following subsections, the government argues that: (A) the Court should
deny the defendant's motion #1 because the defendant has not established any basis
for the Court to disclose the FISA materials; (B) there is no basis for the Court to
suppress the FISA information; (C) the FISA information is not derived from any
unlawfully obtained information; and (D) the Court should likewise deny the

defendant's motion #2 for an order compelling disclosures regarding surveillance conducted pursuant to Section 702.

At the outset, the government notes that the defendant has not yet moved for suppression of the FISA information, but the defendant's motion #1 for disclosure of the FISA materials suggests that the defendant intends to file a suppression motion. *See, e.g.*, Doc. 248, at 2 (stating that the defendant "wishes to move to suppress any evidence obtained or derived from FISA surveillance or searches"), 12-13 (referring to "a motion to obtain FISA materials in aid of a motion to suppress (such as this motion)"). Indeed, the defendant's motion #1 for disclosure of the FISA materials relies in large part on the defendant's evaluation of the merits of a future motion to suppress the FISA information, *i.e.*, the legality of the electronic surveillance and physical search at issue. *See, e.g., id.* at 21-25. Accordingly, insofar as the defendant's motion #1 for disclosure of the FISA materials includes arguments challenging the legality of the electronic surveillance and physical search at issue, the government's responses to such arguments are included *infra* at section V.B.

### A.   The Defendant Has Not Established Any Basis for the Court to Disclose the FISA Materials

In support of his motion #1 to disclose the FISA materials, the defendant argues that: (1) disclosure of the FISA materials is "necessary" under 50 U.S.C. §§ 1806(f) and 1825(g) (*see* Doc. 248, at 12-14, 18-24); (2) due process requires the Court to order the disclosure of the FISA materials (*see id.* at 14-18); (3) if the Court's review of the FISA materials reveals that the application(s) at issue contain material

false statements or omissions, then the FISA materials should be disclosed so that the defendant can pursue a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (*see id.* at 15-16); and (4) the FISA materials may be disclosed to defense counsel because he holds a security clearance (*see id.* at 18).  For the reasons discussed below, the Court should reject these arguments and deny the defendant's motion #1 for disclosure of the FISA materials.

1.     <u>Disclosure Is Not "Necessary" under FISA</u>

The defendant argues that disclosure of the FISA materials is necessary "[b]ecause under the unique circumstances of this case the Court could not possibly make an accurate determination of the legality of the surveillance or search without the assistance of defense counsel."  (Doc. 248, at 2-3 (internal quotation marks omitted); *see also id.* at 23-24 ("[T]he FISC necessarily concluded that Mr. Alazhari was an agent of a foreign power.  That decision is doubtful, or at the very least presented an extremely close case.  On a motion to suppress by Mr. Alazhari, this Court must decide whether the FISC erred.  The closeness of this question means that the risk of error is high, as is the probable value of defense counsel's participation . . . .  Bare ex parte, in camera review is therefore inappropriate.").) For the reasons discussed below, the Court should reject this argument.

There is only one reason to disclose the FISA materials to defense counsel. The Court must conduct its review of those materials *in camera* and *ex parte*, and disclosure is within the Court's discretion only following that review and only if the Court is unable to determine the legality of the electronic surveillance, physical

search, or both, without the assistance of defense counsel. *See* 50 U.S.C. §§ 1806(f),

1825(g); *Daoud*, 755 F.3d at 482; *In re Grand Jury Proceedings*, 347 F.3d at 203; *Rosen*,

447 F. Supp. 2d at 546; *Duggan*, 743 F.2d at 78. This principle is fully supported by

the legislative history of 50 U.S.C. § 1806(f), which states: "The court may order

disclosure to [the defense] only if it finds that such disclosure is necessary to make an

accurate determination of the legality of the surveillance . . . Once a judicial

determination is made that the surveillance was lawful, a motion for discovery . . .

must be denied." S. REP. NO. 95-701, at 64-65, 1978 U.S.C.C.A.N., at 4034. As

this Court will see from its review, the FISA materials are presented in a well-

organized and straightforward manner that will allow the Court to make its

determination of the lawfulness of the FISA collection without input from defense

counsel.

   The defendant's request, which effectively calls for disclosure where defense

counsel could provide assistance, instead of where necessary, is merely an attempt to

circumvent the clear language of the statute. *See* 50 U.S.C. §§ 1806(f), 1825(g). As

the *Daoud* court stated, "the defendant's misreading of the statute" would circumvent

the required *in camera*, *ex parte* review whenever a defense counsel "believed

disclosure necessary, since if the judge does not conduct the *ex parte* review, she will

have no basis for doubting the lawyer's claim of necessity." 755 F.3d at 482; *see also*

*Belfield*, 692 F.2d at 146 ("Congress was adamant, in enacting FISA, that [its]

'carefully drawn procedure[s]' are not to be bypassed" (citing S. REP. NO. 95-701, at

63)). Even where defendants have alleged specific errors or misrepresentations in the

FISA applications, based on their analysis of the evidence in the case, courts have deemed disclosure unnecessary because they were able to rule on the legality of the surveillance, even in light of the alleged errors, through *in camera*, *ex parte* review. *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 130; *Rosen*, 447 F. Supp. 2d at 552 (denying disclosure despite minimization errors that were inadvertent, disclosed to the FISC, and promptly rectified).

The defendant argues for the same expansive definition of "necessary" advanced by the defense on appeal in *Daoud* and rejected by the Seventh Circuit, which held that, because the district court was capable of making the determination of legality on its own, disclosure was "not 'necessary' under any definition of that word." 755 F.3d at 485.  Other courts have rejected similarly expansive definitions, such as in *United States v. Mohamud*, where the defendant unsuccessfully argued that "necessary" in 1806(f) "means something closer to 'helpful' or 'appropriate' and not 'absolutely necessary' or 'essential.'" No. 3:10-CR-475, 2014 WL 2866749, *32 (D. Or. June 24, 2014).  The district court stated that while "[o]bviously it would be helpful to the court to have defense counsel review the materials prior to making arguments," Congress "did not put 'helpful' in the statute; it chose 'necessary.'" *Id.* The court specifically "interpret[ed] 'necessary' to be much closer to 'essential' than to 'helpful.'" *Id.*

The defendant is not entitled to the FISA materials for the purpose of challenging the lawfulness of the FISA authorities, as FISA's plain language precludes defense counsel from accessing the classified FISA materials to conduct a

fishing expedition.  In *Medunjanin*, the court noted that "[d]efense counsel . . . may

not inspect the FISA dockets to construct a better argument for inspecting the FISA

dockets.  Such a circular exercise would be patently inconsistent with FISA . . . ."

2012 WL 526428 at *10; *see also Badia*, 827 F.2d at 1462 (rejecting the defendant's

request for "disclosure of the FISA application, ostensibly so that he may review it

for errors"); *Mubayyid*, 521 F. Supp. 2d at 131.  One court referred to this as

"backwards reasoning" in denying a defendant's motion to suppress FISA-derived

evidence.  *United States v. Mihalik*, No. 11-CR-833(A), Doc. No. 108, at 2 (C.D. Cal.

Oct. 3, 2012).

As many courts have emphasized, "[d]isclosure and an adversary hearing are

the exception occurring *only* when necessary."  *Omar*, 786 F.3d at 1110 (quoting *Isa*,

923 F.2d at 1306) (emphasis in original); *see also In re Grand Jury Proceedings*, 347 F.3d

at 203 (finding that there was no need to disclose any of the FISA materials); *United

States v. Hassan*, 742 F.3d 104, 138 (4th Cir. 2014) (explaining that "where the

documents 'submitted by the government [are] sufficient' to 'determine the legality of

the surveillance,' the FISA materials should not be disclosed") (quoting *Squillacote*,

221 F.3d at 554); *El-Mezain*, 664 F.3d at 565-66 (court did not "need the assistance of

defense counsel").  Courts have addressed the meaning of "necessary" in this

context: "[t]he legislative history explains that such disclosure is 'necessary' only

where the court's initial review indicates that the question of legality may be

complicated" by factors such as factual misrepresentations, insufficient identification

of the target, or failure to comply with the minimization standards in the order, none

of which are present here. *Warsame*, 547 F. Supp. 2d at 987; *see also El-Mezain*, 664

F.3d at 567; *Abu-Jihaad*, 630 F.3d at 129; *Squillacote*, 221 F.3d at 554.

 The defendant has failed to present any colorable basis for disclosure, as this

Court is able to review and make a determination as to the legality of the FISA

collection without the assistance of defense counsel. Where, as here, defense

participation is not necessary, FISA requires that the FISA materials remain

protected from disclosure. Congress' clear intention was that FISA materials should

be reviewed *in camera* and *ex parte* and in a manner consistent with the realities of

modern intelligence needs and investigative techniques. There is nothing

extraordinary about this case that would prompt this Court to order the disclosure of

highly sensitive and classified FISA materials. *See Rosen*, 447 F. Supp. 2d at 546

("exceptional nature of disclosure of FISA material is especially appropriate in light

of the possibility that such disclosure might compromise the ability of the United

States to gather foreign intelligence information effectively") (citing *Belfield*, 692 F.2d

at 147).

### 2. Due Process Does Not Require Disclosure

 Alazhari also argues that he is entitled to disclosure of the FISA materials

under 50 U.S.C. §§ 1806(g) and 1825(h)[21] and the Due Process Clause of the Fifth

Amendment. (*See* Doc. 248, at 14-18.) Courts are in agreement, however, that

---

[21] 50 U.S.C. §§ 1806(g) and 1825(h) provide, in pertinent part: "If the court determines that the surveillance [or physical search] was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure."

FISA's *in camera*, *ex parte* review does not violate due process, nor does due process require that the defendant be granted access to the FISA materials except as provided for in 50 U.S.C. §§ 1806(f) and (g) and 1825(g) and (h). *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 117; *El-Mezain*, 664 F.3d at 567; *Damrah*, 412 F.3d at 624; *ACLU Found. of So. Cal.*, 952 F.2d at 465; *Ott*, 827 F.2d at 476-77; *Belfield*, 692 F.2d at 148-49.

Nevertheless, Alazhari appears to be arguing for disclosure under the balancing test applied by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires consideration of: (1) the defendant's private interest in disclosure of the materials; (2) the risk that the defendant will be erroneously deprived of his right to the materials; and (3) the government's interest in preventing disclosure of the materials. *See* 424 U.S. at 335; *see also El-Mezain*, 664 F.3d at 567. The defendant's arguments fail, however, because "it is inappropriate to employ the *Mathews* balancing test in criminal cases." *Hines v. Miller*, 318 F.3d 157, 161 (2d Cir. 2003).

The Supreme Court has questioned the appropriateness of the *Mathews* balancing test for analyzing due process claims in criminal cases. In *Medina v. California*, 505 U.S. 437 (1992), the Court stated that "the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process." *Id.* at 443. The Court explained that:

> [i]n the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly"

based on the recognition that, "[b]eyond the specific guarantees
enumerated in the Bill of Rights, the Due Process Clause has
limited operation." The Bill of Rights speaks in explicit terms to
many aspects of criminal procedure, and the expansion of those
constitutional guarantees under the open-ended rubric of the Due
Process Clause invites undue interference with both considered
legislative judgments and the careful balance that the
Constitution strikes between liberty and order.

*Id.* (internal citations omitted). The Court observed that it had "invoked *Mathews* in

resolving due process claims in criminal law cases on only two occasions," in *United*

*States v. Raddatz,* 447 U.S. 667 (1980), and *Ake v. Oklahoma*, 470 U.S. 68 (1985), and

"it is not at all clear that *Mathews* was essential to the results in those cases." *Medina*,

505 U.S. at 444. The decision in *Mathews*, therefore, identifies no due process right

that requires disclosure of FISA materials to the defendant, and this Court should

decline his invitation to use an inappropriate analytical framework to do so.

Because of the questionable application of the *Mathews* balancing test to due

process claims in criminal cases, federal courts have been reticent to apply it to the

disclosure of FISA materials. *See, e.g., El-Mezain*, 664 F.3d at 567 ("[a]ssuming

without deciding that that the *Mathews* balancing test is applicable"); *Warsame*, 547

F. Supp. 2d at 988 (court "not convinced that *Mathews* balancing test supplies an

appropriate framework for evaluating FISA procedures"); *Damrah*, 412 F.3d at 624

(stating that defendant's "reliance on *Mathews* is misplaced . . . because FISA's

requirement that the district court conduct an *ex parte, in camera* review of FISA

materials does not deprive a defendant of due process"). As discussed below, those

courts that have applied the test have consistently found that the three factors weigh

in favor of the *ex parte, in camera* determination of legality required by FISA and against disclosure of the FISA materials.

In *Warsame*, the court acknowledged the defendant's important privacy and liberty interests, and held that disclosure of the FISA materials was not "the appropriate response to this concern." 547 F. Supp. 2d at 988. The court stated that "FISA attempts to protect the rights of individuals not through mandatory disclosure but through 'in-depth oversight of FISA surveillance by all three branches of government and by a statutory scheme that to a large degree centers on an expanded conception of minimization that differs from that which governs law-enforcement surveillance.'" *Id.* at 988-89 (quoting *Belfield*, 692 F.2d at 148). The court found that, given these protections, and the court's careful review of the FISA materials in the case, "the probable value of disclosure, as well as the risk of nondisclosure, of the FISA materials to the defense [was] low." *Warsame*, 547 F. Supp. 2d at 989. Moreover, the court concluded that the government "has a substantial national security interest in preventing the disclosure of [the FISA materials]." *Id.*

Similarly, in *El-Mezain*, the Fifth Circuit agreed with the district court's assessment that "the *in camera* and *ex parte* review by the district court adequately ensured that the defendants' statutory and constitutional rights were not violated," and that "as a matter of national security, the Government [had] a substantial interest in maintaining the secrecy of the materials." 664 F.3d at 567. The court noted that "[t]his interest extends not only to the contents of the materials but also to the appearance of confidentiality in the operation of the intelligence services." *Id.* at

567-68 (citing *Sims*, 471 U.S. at 175) ("If potentially valuable intelligence sources come to think that the Agency will be unable to maintain confidentiality of its relationship to them, many could well refuse to supply information to the Agency in the first place.")  Thus, even under the *Mathews* test, the government's interest outweighs the defendant's interest in disclosure, consistent with the *El-Mezain* and *Warsame* decisions.

The plain intention of 50 U.S.C §§ 1806(g) and 1825(h) — allowing the Court to order disclosure of material to which the defendant would be entitled under the Due Process Clause, such as material that had not been previously disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963), even while ruling against the defendant's motion generally — cannot be interpreted to support Alazhari's demand for access to all of the FISA materials in advance of the Court's *in camera, ex parte* review and determination of the legality of the collection.  With respect to any claim that the FISA materials contain information that due process requires be disclosed to the defense, the request is premature since the Court will make that factual determination for itself during its *in camera, ex parte* review.  The government is confident that the Court's review of the challenged FISA materials will not reveal any material that due process requires be disclosed to the defendant, such as *Brady* material, as provided for in 50 U.S.C. § 1806(g).  Accordingly, Alazhari's claim that he is entitled to the disclosure of the FISA materials under 50 U.S.C. §§ 1806(g) and 1825(h) and due process should be rejected.

### 3.   *Franks v. Delaware* Does Not Require Disclosure of the FISA Materials

The defendant has not moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Instead, the defendant notes that "[t]he possibility of false statements or omissions in the applications to the FISC may require disclosure under *Franks*" and suggests that the Court "should order the Government to provide the FISC materials to the Defense under appropriate protective orders if the Court's in camera review provides a factual basis adequate to support a good faith belief by a reasonable person that the Government made material false statements or omissions before the FISC."  (Doc. 248, at 15-16 (internal quotation marks and citation omitted).)  As the Court's review of the FISA materials will demonstrate, no material false statements or omissions exist with respect to the information the government is using against the defendant.  Moreover, for the reasons discussed below, the Court should decline the defendant's suggestion to order the disclosure of the FISA materials so that the defendant can pursue a *Franks* hearing.

As background, to merit a *Franks* hearing, a defendant must make a "concrete and substantial preliminary showing" that the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit, and that the resulting misrepresentation was essential to the finding of probable cause.  *Franks*, 438 U.S. at 155-56.  Courts apply the same standard when a defendant seeks a *Franks* hearing as part of a challenge to FISA collection; to obtain a hearing, a defendant must "make 'a substantial preliminary showing that a false

56

statement knowingly or intentionally, or with reckless disregard for the truth, was included' in the application and that the allegedly false statement was 'necessary' to the FISA Judge's approval of the application." *Duggan*, 743 F.2d at 77 n.6 (quoting *Franks*, 438 U.S. at 155-56). A defendant must show that the agent lied or recklessly disregarded the truth with specific evidence in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Franks*, 438 U.S. at 171. The *Franks* threshold is not met even by an offer of proof of an impropriety that might have affected the outcome of the probable cause determination, but rather requires one that was "necessary to the finding of probable cause." *United States v. Colkley*, 899 F.2d 297, 301-02 (4th Cir. 1990); *see also United States v. Shnewer*, No. 07-459, 2008 U.S. Dist. LEXIS 112001, at *38 (D. N.J. Aug. 17, 2008) ("[E]ven if the Court were to determine there existed a reckless or intentional falsehood or omission in the FISA application materials, the evidence obtained still should not be suppressed unless the Court makes the further finding that the falsehood or omission was material to the probable cause determination.").

While many courts have acknowledged the difficulty for defendants to meet this burden in cases in which information obtained or derived from FISA is being used against them, they agree that the *Franks* evidentiary burden still must be met. *See Daoud*, 755 F.3d at 483-84 ("Defense counsel would like to mount [a *Franks*] challenge in this case. But that's hard to do without access to the classified materials. . . . The drafters of [FISA] devised a solution: the judge makes the additional determination, based on full access to all classified materials and the defense's proffer

of its version of events, of whether it's possible to determine the validity of the *Franks*

challenge without disclosure of any of the classified materials to the defense.");

*Belfield*, 692 F.2d at 148 ("Congress was also aware of these difficulties [faced by

defense counsel without access to FISA materials and] chose to resolve them through

means other than mandatory disclosure."); *see also Alwan*, 2012 WL 399154, at *8-10

("The Court is cognizant of the substantial difficulties [the defendant] has

encountered in trying to assert a *Franks* violation.  Regardless of the difficulties,

however, it does not change the evidentiary burden he must meet."); *Kashmiri*, 2010

WL 4705159, at *6.

Only after a defendant makes the requisite showing may the Court conduct a

*Franks* hearing to determine if there are material misrepresentations of fact, or

omissions of material fact, in the FISA applications sufficient to warrant suppression

of the FISA-obtained or -derived evidence.[22]  *See Franks*, 438 U.S. at 171.  Under the

relevant case law, "[w]ithout such a showing, he is foreclosed from obtaining a

hearing." *Kashmiri*, 2010 WL 4705159, at *6.[23]  The defendant in this case has only

cited the possibility that such misstatements or omissions exist in the FISA

---

[22] Indeed, even if a defendant offers sufficient proof to show that an affidavit involved false statements or omissions, a hearing should not be held if the affidavit would still provide probable cause if the allegedly false material were eliminated, or if the allegedly omitted information were included.  *See Franks*, 438 U.S. at 171; *Colkley*, 899 F.2d at 300; *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).

[23] Judge Rovner's concurring opinion in *Daoud*, cited by the defense, does not mandate a contrary conclusion.  Judge Rovner joined the unanimous panel opinion "in full," 755 F.3d at 485, and made clear that a potential *Franks* claim is not an automatic basis for disclosure of the classified FISA materials.  *Id.* at 494-95.

application(s) at issue. (*See* Doc. 248, at 15.) If this were determined to be sufficient, then Alazhari, and defendants in every case, would be permitted to obtain the FISA materials by merely alleging the possibility of impropriety. Disclosing FISA materials to defendants would then become the rule, violating Congress' clear intention, set forth in 50 U.S.C. §§ 1806(f) and 1825(g), that the FISA materials be reviewed *in camera* and *ex parte* in a manner consistent with the realities of modern intelligence needs and investigative techniques.

Courts have rejected other defendants' attempts to force a *Franks* hearing by positing unsupported speculation to challenge the validity of FISC orders, and this Court should do so here. *See Turner*, 840 F.3d at 341-42 (in reviewing the classified and unclassified record, the Court found that it made "a meaningful effort to confirm the accuracy of the [FISA] application") (quoting *Daoud*, 755 F.3d at 494-95 (Rovner, J. concurring)) (characterizing this review as serving "the same interest . . . that a *Franks* motion serves"); *see also Kashmiri*, 2010 WL 4705159, at *6 (noting that the court "has already undertaken a process akin to a *Franks* hearing through its *ex parte, in camera* review"); *Shnewer*, 2008 U.S. Dist. LEXIS 112001, at *37 ("This catch-22 has not troubled courts, however, and they defer to FISA's statutory scheme."); *Abu-Jihaad*, 531 F. Supp. 2d at 309; *Mubayyid,* 521 F. Supp. 2d at 131 ("The balance struck under FISA – which is intended to permit the gathering of foreign intelligence under conditions of strict secrecy, while providing for judicial review and other appropriate safeguards – would be substantially undermined if

criminal defendants were granted a right of disclosure simply to ensure against the possibility of a *Franks* violation."); *Hassoun*, 2007 WL 1068127, at *4.

Here, the defendant has failed to carry the burden of establishing the prerequisites for an adversarial hearing, and his attempt to obtain disclosure of the FISA materials to meet that burden is unprecedented and runs counter to FISA, *Franks*, and the intent of Congress.  For these reasons, the Court should reject the defendant's argument that disclosure of the FISA materials is necessary so that he can pursue a *Franks* hearing.  Moreover, the government respectfully submits that this Court's *in camera*, *ex parte* review of the FISA materials will demonstrate that "an adversary hearing in this case would be academic because there is no question the FISA application [or applications] passes [or pass] muster." *Medunjanin*, 2012 WL 526428, at *9.

### 4.    A Security Clearance Does Not Entitle Defense Counsel Access to the FISA Materials

In support of the defendant's motion for disclosure of the FISA materials, defense counsel notes that he "possesses a 'top secret' Department of Defense security clearance, the background investigation for which can easily be used for a Department of Justice clearance" and that he "has experience handling classified information in both litigation and non-litigation settings." (Doc. 248, at 18.)  As discussed above, the only statutory authorities that grant a court discretion to disclose the FISA materials at this stage are set out at 50 U.S.C. §§ 1806(f) and 1825(g), and these provisions permit disclosure only where the court finds that it is

unable to determine the legality of the electronic surveillance and physical search based on its *in camera, ex parte* review alone and without the assistance of defense counsel.  Defense counsel's security clearance does not affect the need to have an *ex parte, in camera* review to determine whether disclosure would harm national security.  *See Daoud*, 755 F.3d at 481-86; *see also Abu-Jihaad*, 630 F.3d at 129 (pursuant to FISA, a district court must review *in camera* and *ex parte* the FISA materials and may only order disclosure to the extent required by due process).

In the FISA context, courts have consistently held that while holding a valid security clearance is a necessary prerequisite to reviewing classified information, it is not a sufficient basis for a court to order disclosure of classified information to defense counsel.  Instead, cleared counsel only has a "need to know" if the court determining the legality of the surveillance concluded that disclosure is "necessary."  In *Bin Laden*, the court denied the disclosure of the FISA materials to cleared counsel, noting that "[d]efense counsel's assertion that, given their security clearances, they ought to have access to the sensitive documents is not persuasive to this Court.  As the Government explains, those security clearances enable attorneys to review classified documents, 'but they do not entitle them to see all documents with that classification.'"  126 F. Supp. 2d at 287 n.27, *aff'd by In re Terrorist Bombings in East Africa*, 552 F.3d 157 (2d Cir. 2008).  In *Ott*, the court found a similar argument unpersuasive, stating that "Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the

surveillance operation in question, whether or not she happens for unrelated reasons

to enjoy security clearance."  827 F.2d at 477 (emphasis in original); *accord El-Mezain*,

664 F.3d at 568; *Nicholson*, 2010 WL 1641167, at *4; *Warsame*, 547 F. Supp. 2d at

989 n.5.

Courts have repeatedly held that defense counsel are required to have more

than a security clearance – defense counsel must also have a need to know.  The

Seventh Circuit addressed the "need to know requirement" by stating:

> [i]t's also a mistake to think that simple possession of a security
> clearance automatically entitles its possessor to access to classified
> information that he is cleared to see. . . . So in addition to having
> the requisite clearance the seeker must convince the holder of the
> information of the seeker's need to know it.

*Daoud*, 755 F.3d at 484.[24]  "A clearance itself is not enough for access to classified

information: there is quite sensibly, also a 'need to know' requirement. . . .

Clearance simply qualifies counsel to view secret materials.  It does not, however,

*entitle* counsel to see anything and everything that the government has stamped

classified even if it has something to do with a client."  *United States v. Amawi*, No.

3:06-CR-719, 2009 WL 961143, at *1-2 (N.D. Ohio Apr. 7, 2009) (emphasis in

original); *see also Medunjanin*, 2012 WL 526428, at *9 ("Defense counsel's security

---

[24] As the Seventh Circuit explained in *Daoud*, disclosing state secrets to cleared
counsel could in fact harm national security because cleared counsel "might in their zeal to
defend their client, to whom they owe a duty of candid communication, or misremembering
what is classified and what is not, inadvertently say things that would provide clues to
classified material."  755 F.3d at 484.  The potential threat that classified information may
be disclosed to the defendant, even inadvertently, is further justification for the FISA
materials not to be disclosed.

clearances add little to the case for disclosure. . . . As the government persuasively argues, unsealing the FISA materials in this case would provide the defense with unnecessary details of an extraordinarily sensitive anti-terrorism investigation."); *United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. Apr. 5, 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses."). If this Court concludes from its *in camera*, *ex parte* review of the FISA materials that it is capable of accurately determining the legality of the FISA collection at issue, then no defense attorney, even one with an otherwise appropriate security clearance, would have a "need to know" any of the FISA materials.

The defendant's arguments in support of disclosure of the FISA materials have no basis in the law, and disclosure of the FISA materials would cause exceptionally grave damage to the national security. The government respectfully submits that there is nothing extraordinary about this case to justify an order to disclose highly sensitive and classified FISA materials under the applicable FISA standard. *See Rosen*, 477 F. Supp. 2d at 546 ("Review of the FISA applications, orders and other materials in this case presented none of the concerns that might warrant disclosure to the defense."). Accordingly, the defendant's motion for disclosure of the FISA materials should be denied.

**B.    There Is No Basis for the Court to Suppress the FISA Information**

As explained above, the defendant's argument regarding the necessity of disclosing the FISA materials relies in part on the defendant's evaluation of the merits of a future motion to suppress the FISA information, *i.e.*, the legality of the electronic surveillance and physical search at issue.  In calling into question the legality of the electronic surveillance and physical search at issue, the defendant (1) suggests that the FISA application(s) may lack proper certification(s), including an assertion that FISA's "significant purpose" standard is unconstitutional (*see* Doc. 248, at 24-29); (2) argues that the government could not have established probable cause to believe that the defendant was an agent of a foreign power (*see id.* at 21-24); and (3) relies on the Eleventh Circuit's decision in *Colon v. Twitter, Inc., et al.*, 14 F.4th 1213 (11th Cir. 2021), to argue the defendant could not have been engaged in international terrorism under the Eleventh Circuit's interpretation of that term in a different statute (*see id.* at 21-24).  For the reasons discussed below, the Court should reject these arguments.

**1.    The Certification(s) Complied with FISA**

**[CLASSIFIED INFORMATION REDACTED]**

As part of the USA PATRIOT Act, Congress amended FISA to require that an Executive Branch official now certify that "a significant purpose" of the requested surveillance and search was to obtain foreign intelligence information.  18 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).  The "significant purpose" standard has been repeatedly upheld as constitutional.  *See Duka*, 671 F.3d at 343 ("[T]he dispositive

issue is whether the 'significant purpose' test is reasonable. . . . We agree with our sister courts of appeals and the Foreign Intelligence Surveillance Court of Review that the amended FISA's 'significant purpose' standard is reasonable under the Fourth Amendment."); *Abu-Jihaad*, 630 F.3d at 128; *Mubayyid*, 521 F. Supp. 2d at 139-40; *Marzook*, 435 F. Supp. 2d at 786; *Benkahla*, 437 F. Supp. 2d at 554; *Damrah*, 412 F.3d at 625; *In re Sealed Case*, 310 F.3d at 746.

[CLASSIFIED INFORMATION REDACTED]

### 2. <u>The Government Has Satisfied the Probable Cause Standard</u>

[CLASSIFIED INFORMATION REDACTED]

FISA requires a finding of probable cause to believe that the target of the electronic surveillance and/or physical search is a foreign power or the agent of a foreign power. *See* 50 U.S.C. §§ 1805(a)(2) and 1824(a)(2). "Probable cause is more than a bare suspicion, but less than absolute certainty," and in making the probable cause determination, FISA permits a judge to "consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." *Rosen*, 447 F. Supp. 2d at 549 (quoting *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir. 1995) and 50 U.S.C. § 1805(b)). Furthermore, the FISA probable cause standard "does not necessarily require a showing of an imminent violation of criminal law" because Congress clearly intended a different showing of probable cause for these activities than that applicable to ordinary criminal cases. *Rosen*, 447

65

F. Supp. 2d at 549 (quoting *In re Sealed Case*, 310 F.3d at 738); *see also Ning Wen*, 477 F.3d at 898.

[CLASSIFIED INFORMATION REDACTED][25]

### 3.   The Probable Cause Standard of FISA Satisfies the Fourth Amendment's Reasonableness Requirement

As discussed *supra* at section III.B.2, the probable cause threshold which the government must satisfy before receiving authorization to conduct electronic surveillance under FISA complies with the Fourth Amendment's reasonableness standard. *See, e.g., Ning Wen*, 477 F.3d at 898 (holding that FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime has been committed"). Arguments that FISA's different probable cause standard violates the Fourth Amendment have been uniformly rejected by federal courts. *See, e.g., Abu-Jihaad*, 630 F.3d at 120 (listing 16 cases that have ruled FISA does not violate the Fourth Amendment).

In constructing FISA's framework, Congress addressed the question posed by the Supreme Court in *Keith* (discussed above) of whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of government for intelligence information and the protected rights of our

---

[25] In accordance with the plain statutory text, the legislative history explains that subsection 1801(b)(2)(E) requires probable cause to believe the target "knows both that the person with whom he is conspiring or whom he is aiding or abetting is engaged in the described activities as an agent of a foreign power and that his own conduct is assisting or furthering such activities." H.R. REP. NO. 95-1283, pt. 1, at 44; *see also* S. REP. NO. 95-604, pt. 1, at 29, 1978 U.S.C.C.A.N., at 3930; S. REP. NO. 95-701, at 27-28, 1978 U.S.C.C.A.N., at 3996-97.

citizens," and "concluded that such departures are reasonable." *See* S. REP. NO. 95-701, at 11-12, 1978 U.S.C.C.A.N., at 3980.  Similarly, many courts have relied on the Supreme Court's decision in *Keith* in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment.  *See, e.g.,* *Duggan,* 743 F.2d at 74 (holding that FISA does not violate the Fourth Amendment); *In re Sealed Case,* 310 F.3d at 738, 746 (finding that while many of FISA's requirements differ from those in Title III, few of those differences have constitutional relevance).  Accordingly, the Court should reject the defendant's assertion that the government failed to meet the probable cause standard.

### 4.   The Defendant's Reliance on the Eleventh Circuit's Decision in *Colon* Is Misplaced as It Relates to the Definition of "International Terrorism" in FISA

The defendant relies on the Eleventh Circuit's interpretation of the term "international terrorism" as used in a different statute to argue that he could not have been considered an agent of a foreign power within the meaning of FISA.  (*See* Doc. 248, at 21-24.)  In *Colon,* the court of appeals affirmed the district court's dismissal of claims brought by victims of Mateen's 2016 attack on an Orlando night club under the Anti-Terrorism Act (ATA), 18 U.S.C. §§ 2333(a) and (d)(2), because the plaintiffs did not sufficiently allege that the attack "transcended national boundaries" such that it could be considered an act of international terrorism as defined in that statute.  *See* 14 F.4th at 1218.  The court of appeals reasoned that the attack was committed in Orlando by a Florida resident; that the attack appeared to be intended to terrorize

American citizens and residents; that Mateen was self-radicalized on the Internet while living in Florida and came to identify with ISIS; and that nothing in the complaint alleged that ISIS had any contacts with Mateen or was aware of his planned attack before it took place. *See id.* at 1220-1222.

The defendant notes that the definition of "international terrorism" in FISA is "identical" to the definition of that term in the ATA,[26] and further notes that to be considered an agent of a foreign power under 50 U.S.C. § 1801(b)(2)(C), an individual must knowingly engage in international terrorism, or activities that are in preparation therefor, for or on behalf of the foreign power. (*See* Doc. 248, at 9-10, 21.) The defendant argues that the Eleventh Circuit's decision in *Colon* compels the same conclusion in this case. *See* Doc. 248, at 23 ("As in *Colon*, no evidence establishes that Mr. Alazhari was at any time engaged in international terrorism, because even assuming the Government's worst theories about him are correct, nothing he was purportedly planning would have primarily occurred overseas or transcended national boundaries in any way. . . . And just as Mateen's consumption of ISIS propaganda online and motivation to commit the attack to support ISIS's goals was insufficient to make the Pulse attack 'international terrorism' in *Colon*, the Government's similar evidence about Mr. Alazhari is likewise insufficient.").

---

[26] The government notes that the definitions of international terrorism in these two statutes are not identical, but the few respects in which they differ are not material to this case.

As an initial matter, the government notes that the court of appeals in *Colon* was careful to limit its decision to the facts at issue in that case. The defendant's memorandum of law fails to note that the court of appeals cited FISA specifically, among other federal statutes, in observing that "Congress has defined the term 'international terrorism' differently throughout the U.S. Code." *Id.* The court of appeals went on to note that the definition of international terrorism in the ATA "is the one that matters and our opinion is necessarily limited to the ATA." *Id.* at 1218.

[CLASSIFIED INFORMATION REDACTED][27]

**C.    The FISA Information Is Not Derived from Any Unlawfully Obtained Information, and a Ruling Against the Government on the Defendant's Suppression Motions Would Not Negate a Finding of Probable Cause under FISA**

The defendant also argues that "the Government may have used information gained through some other unlawful act to obtain or execute a FISA authorization, or may have decided to seek a FISA authorization because of information learned from a prior search or seizure." (Doc. 248, at 29.) Specifically, the defendant posits that illegal aerial surveillance occurred; that the defendant's unlawful arrest on state charges on May 1, 2020, provided an opportunity to search his vehicle and phone;

---

[27] The government also notes that the defendant's motion #2 includes the following assertion: "Mr. Alazhari hereby affirmatively asserts that the Government unlawfully surveilled him under FISA Section 702." (Doc. 249, at 3-4.) The defendant appears to be asserting that he was in contact with an individual who was being targeted by the government pursuant to Section 702. The government notes that if this were true, it would undermine his argument that there was not probable cause to believe that Alazhari was an agent of a foreign power because contact with a Section 702 target would be a significant factor in establishing such probable cause.

and that the FBI conducted an unlawful consent search of the defendant's home. *See id.* at 29-30. Each of those arguments is the subject of pending motions to suppress that the defendant has filed (*see* Docs. 174, 199, and 227), but which the Court has yet to decide. The defendant, who has not had access to the FISA applications at issue, appears to argue that disclosure of the FISA materials is necessary to allow the defense to make appropriate arguments about unlawfully derived evidence. Similarly, in each of his suppression motions, the defendant preserved an argument that any corresponding "fruit of the poisonous tree" analysis should extend to the government's FISA applications.

**[CLASSIFIED INFORMATION REDACTED]**

Lastly, even if the Court were to grant all three of the defendant's motions to suppress (or any one of them), the FISA application(s) at issue would still stand. Where a search warrant affidavit is based on information acquired as a result of unlawful police activity, the court must look to whether the other information provided in the affidavit is sufficient to support a finding of probable cause. *See United States v. Thomas*, 818 F.3d 1230, 1243 (11th Cir. 2016); *United States v. Chaves*, 169 F.3d 687, 692 (11th Cir. 1999). As a first step, the court will excise any information gained from the unlawful activity to determine whether the remaining information establishes probable cause. *See Thomas*, 818 F.3d at 1243. "Probable cause exists where, under the totality of the circumstances, there is a fair probability

that contraband or evidence of a crime will be found in a particular place." *Id.*[28]   If the remaining information supports a finding of probable cause, the court then determines whether the officers' decision to seek the warrant was prompted by what was gleaned from the unlawful activity. *See id.*  If the warrant would have been sought without the illegality, then the evidence seized pursuant to the warrant is admissible. *See id.*

[CLASSIFIED INFORMATION REDACTED]

For the foregoing reasons, the Court should reject the defendant's argument that the FISA information is derived from information that was obtained unlawfully.

### D.   The Court Should Likewise Deny the Defendant's Motion for an Order Compelling Disclosures Regarding Section 702 Surveillance

The defendant's motion #2 seeks an order compelling disclosures regarding surveillance under Section 702 of FISA. (Doc. 249.)  Specifically, the defendant moves the Court to order the government to: (1) affirm or deny whether it surveilled the defendant pursuant to Section 702; and (2) provide specific notice of whether it intends to admit evidence obtained or derived from Section 702 surveillance. *See id.* at 1.  In making this request, the defendant cites the Fourth Amendment to the Constitution and 18 U.S.C. § 3504.  (*See* Doc. 249, at 3, 11-12.)  The defendant's argument also implicates Rules 12 and 16 of the Federal Rules of Criminal

---

[28] As noted above, FISA requires a finding of probable cause that the target is a foreign power or an agent of a foreign power and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, or that the property or premises to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power. *See* 50 U.S.C. §§ 1805, 1824.

Procedure (hereinafter, "Rule 12" and "Rule 16").  As the Court will note from its *in camera, ex parte* review of the FISA materials, and for the reasons stated below, the government has complied with its notice and discovery obligations, and thus, the defendant's motion lacks merit and should be denied.

It is well settled that the government's discovery obligations in a criminal case are not limitless.  *See United States v. Agurs*, 427 U.S. 97, 106 (1976) (the government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor"); *United States v. Phillips*, 854 F.2d 273, 277 (7th Cir. 1988) (finding that discovery rules do "not grant criminal defendants unfettered access to government files"); *United States v. Griebel*, 312 F. App'x 93, 96 (10th Cir. 2008) (the government's discovery obligations "are defined by Rule 16, *Brady*, *Giglio*, and the Jencks Act"); *United States v. Colon*, No. 97-CR-659, 1998 WL 214714, at *7-9 (N.D. Ill. Apr. 21, 1998) (addressing the government's discovery obligations).  Further, there is no rule of discovery that requires the government to provide a defendant with a clear, concise narrative regarding the origins of the criminal investigation that led to his arrest.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files"); *United States v. Bagley*, 473 U.S. 667, 675 (1985) ("the prosecutor is not required to deliver his entire file to defense counsel").  Rather, the government is required to provide the defense with all discoverable material (including exculpatory information) described in Rule 16.

Notice concerning the government's intent to use evidence in a criminal case is generally governed by Rule 12 and Rule 16. Rule 12(b)(4)(B) provides, in relevant part:

> [T]he defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

The purpose of this rule is to "provide the defendant with sufficient information to file the necessary suppression motions." *United States v. Ishak*, 277 F.R.D. 156, 158 (E.D. Va. 2011). "Thus, the government's obligation under Rule 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the defendant to make informed decisions whether to file one or more motions to suppress." *Id.* The government has satisfied this obligation and provided the defendant with sufficient information and notice to file any necessary motions to suppress. No court has interpreted Rule 12(b)(4)(B) to require the government to give an accounting of every investigative technique used in the case, regardless of its relationship to admissible evidence. In a criminal case, defense counsel analyzes the discovery and is then free to advance any suppression arguments it wishes to make. That is precisely what has occurred in the instant case. Therefore, the defendant's request for more information than is legally required should be denied.

**[CLASSIFIED INFORMATION REDACTED]**

In the context of FISA collection, Congress made a decision to allow for greater protection of information than is normally afforded because of the need to

protect sensitive national security information, which includes classified sources and methods. Congress intended that FISA "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights." *See* S. REP. NO. 95-701, at 16, 1978 U.S.C.C.A.N., at 3985. As such, in recognition of "the nature of the national interests implicated in matters involving a foreign power or its agents," Congress provided for more limited disclosure than is ordinarily provided with regard to criminal evidence. *Belfield*, 692 F.2d at 148.

The defendant's contention that he is entitled to more information regarding FISA-authorized collection is further refuted by Congress' assignment of broader FISA notice requirements in certain circumstances, not to include in the context of criminal defendants. *See Dean v. United States*, 556 U.S. 568, 573 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."). Specifically, Congress identified three scenarios in which more specific notice regarding FISA surveillance was warranted. *See* 50 U.S.C. § 1806(j) (notice of particular information regarding surveillance required where the Attorney General approves emergency surveillance and the government does not later obtain authorization from the FISC); *id.* § 1825(b) (requiring notice identifying property seized, altered, or reproduced during physical search of a U.S. person's residence where the Attorney General has determined that there is no national security interest in continued secrecy); *id.*

§ 1825(j) (notice of particular information regarding physical search required where the Attorney General approves emergency physical search and the government does not later obtain authorization from the FISC).[29]  Notably, Congress elected not to require such broad disclosure in the situation where a defendant is charged in a criminal proceeding.  *See id.* §§ 1806(c) and 1825(d) (requiring only notice "that the United States intends" to use or disclose FISA-obtained or -derived information).

Nevertheless, the defendant argues that he is entitled to additional notice and discovery under 18 U.S.C. § 3504.  (*See* Doc. 249, at 3, 23-24.)  That section provides, in relevant part:

> In any trial, hearing, or other proceeding in or before any court . . . [u]pon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act.

Importantly, 18 U.S.C. § 3504 is not applicable in the instant matter because no "unlawful act" has occurred.  18 U.S.C. § 3504(a)(1) and (b).  The FISA-obtained or -derived evidence was not the product of an unlawful act; to the contrary, it was lawfully obtained pursuant to orders of the FISC.  Moreover, the government provided the notice required under the FISA statute (50 U.S.C. §§ 1806(c) and 1825(d)).  No court has held that in addition to the notice required under 50

---

[29] **[CLASSIFIED INFORMATION REDACTED]**

U.S.C. §§ 1806(c) and 1825(d), the government has an additional notice requirement under 18 U.S.C. § 3504.

A specific statutory provision normally controls over one of more general application. *See Bloate v. United States*, 130 S. Ct. 1345, 1353-54 (2010); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991). Moreover, 50 U.S.C. §§ 1806 and 1825 were enacted in 1978 and 1994, respectively, approximately eight and 24 years after 18 U.S.C. § 3504 was adopted in 1970. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 702, 84 Stat. 922, 935-36 (1970). "[A] later enacted statute may limit the scope of an earlier statute." *Brotherhood of Maintenance of Way Employees v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007); *see also Acosta v. Gonzales*, 439 F.3d 550, 555 (9th Cir. 2006) ("[C]onflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute.") (citations omitted). Thus, there is no basis for holding that 18 U.S.C. § 3504 trumps FISA's "later-enacted, more specific" notice provisions.[30]  Finally, Alazhari fails to establish a colorable basis to believe that he has been aggrieved by unlawful surveillance of any kind.[31]  For the foregoing reasons, the Court should deny Alazhari's motion #2.

---

[30] **[CLASSIFIED INFORMATION REDACTED]**

[31] Much of the defendant's arguments rest on bare assertions, precisely the kind of showing that courts have found insufficient to establish a colorable claim of illegality. *See, e.g., United States v. Aref*, 285 F. App'x 784, 793 (2d Cir. 2008) (summary order) (finding insufficient defendant's showing that consisted of statements "by unnamed sources in a newspaper article"); *United States v. Londono-Cardona*, No. 05-10304-GAO, 2008 WL 313473, at *2 (D. Mass. Feb. 1, 2008) (finding insufficient defendants' showing of proffered Drug Enforcement Agency teletype messages that referred "only to apparently *lawful*

## VI.   **CONCLUSION**

Based on the foregoing analysis, the government respectfully submits that the Court must conduct an *in camera*, *ex parte* review of the FISA materials and the government's classified submission, and should: (1) find that the electronic surveillance and physical search at issue in this case were both lawfully authorized and lawfully conducted in compliance with FISA; (2) deny the defendant's motion #1 and hold that disclosure of the FISA materials and the government's classified submissions to the defendant is not authorized because the Court is able to make an accurate determination of the legality of the electronic surveillance and physical search without disclosing the FISA materials or any portions thereof; (3) hold that the fruits of the electronic surveillance and physical search should not be suppressed; (4) deny the defendant's motion #2 for additional notice and disclosures; (5) deny the defendant's motions without an evidentiary hearing; and (6) order that the FISA materials and the government's classified submissions be maintained under seal by the Classified Information Security Officer or his or her designee.

A district court order granting motions or requests under 50 U.S.C. §§ 1806(g) or 1825(h), a decision that electronic surveillance or physical search was not lawfully authorized or conducted, and an order requiring the disclosure of FISA materials are

---

surveillance in Colombia," and a newspaper article discussing alleged warrantless domestic wiretapping that had "no relevance" to the defendants' case); *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 591 (E.D. Va. 2006) (finding insufficient defense showing of "bare allegations that the government has been intercepting communications through illegal electronic surveillance").

each a final order for purposes of appeal.  *See* 50 U.S.C. §§ 1806(h), 1825(i).  Should

the Court conclude that disclosure of any item within any of the FISA materials or

suppression of any FISA information may be required, given the significant national

security consequences that would result from such disclosure or suppression, the

government would expect to pursue an appeal.  Accordingly, the government

respectfully requests that the Court stay any such order pending an appeal by the

United States of that order.


Dated:  October 6, 2022

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

_____/s/_____
PATRICK D. SCRUGGS
Assistant United States Attorney
Middle District of Florida

JOSHUA CHAMPAGNE
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA